LAW OFFICES OF GARROTTO & GARROTTO
Greg W. Garrotto, State Bar #89542
1925 Century Park East, Suite 2000
Los Angeles, California 90067
Telephone (310) 229-9200
Fax (310)229-9209
jjggarrotto@msn.com

Attorneys for Plaintiff
Keanu Ethan Campos, a minor

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEANU ETHAN CAMPOS, a minor, by and through his Guardian ad Litem, Deniz Gonzalez<br><br>Plaintiff,<br>v.<br><br>COUNTY OF KERN, a public entity; Deputy Sheriff Jason Ayala, a public employee; Deputy Joshua Bathe, a public employee; and , DOES1-10, Inclusive | Case No.: 1:14-cv-01099-DAD-JLT<br><br>OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION OF ISSUES; PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED FACTS<br><br>Date: March 15, 2016<br>Time: 9:30 a.m.<br>Court: Robert E. Coyle United States Courthouse, 2500 Tulare St., Fresno, CA 93721<br>Judge: Hon. Dale A. Drozd, Judge |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiff Keanu Ethan Campos, a minor, by and through his Guardian ad

Litem, Deniz Gonzalez, responds to the Defendants' Separate Statement of

Additional Undisputed Facts in Support of the Motion for Summary Judgment

and/or Adjudication of Issues as follows:

OPPOSITION   TO   MSJ;   PLAINTIFF'S
RESPONSE   TO   STATEMENT   OF   ADDITIONAL
UNDISPUTED FACTS

| **Undisputed Material Facts** | **Plaintiff's Response and Supporting Evidence** |
|---|---|
| 8.  There was only one fan on B-Deck.  It would be kept in the same spot, along the B-3 and B-4 pipe chase.  Evidence: Deposition of Joshua Bathe, P. 20, L.16 to P.21 L.2.; Deposition of Sean Collier, P. 23: 25 to P. 24 L. 21, P. 24 L.16-21, P.24 L. 25 to P. 25 L. 5; P. 38 L.6-9; Deposition of Christopher Saldana, P. 24 L.7-24, P. 25 L. 4-9 | 8.  Undisputed. |
| 9.  The only electrical outlets on B-Deck were located behind the security desk and inside the pipe chase.  Evidence: Deposition of Jason Ayala, P. 81, L. 21-25. | 9.  Disputed.  The testimony of Jason Ayala indicates that there is an electrical plug through the door leading into the pipe chase; there are plugs behind the desk; and there is one to the left of the desk. |

OPPOSITION TO MSJ; PLAINTIFF'S
RESPONSE TO STATEMENT OF ADDITIONAL
UNDISPUTED FACTS

Evidence: Declaration of Greg W. Garrotto Re: Evidence ("Garrotto Dec"): Exhibit 1, Deposition of Jason Ayala, P.81 L.21 to P. 82 L. 12.

10.  There is approximately 6 feet between cells B4-1 and B3-1.

Evidence: Deposition of Jason Ayala P. 57 L. 9-20

10.  It is undisputed that this is Mr. Ayala's deposition testimony.

11.  The photograph marked as Ex. 5 shows the fan and where it is usually stored.  It also depicts the area where the fan was located on the date of the incident.

Evidence: Deposition of Joshua Bathe, P. 22 L. 10-22, P. 42, L. 12-20, Ex. 5

11. Disputed in that the Kern County Sheriffs Department Investigation Report indicates that the vertical pole of the fan was measured and determined to be 35 inches away from the cell bar walls of B4-1 and the closest part of the fan to cell B4-1 was approximately 18 inches away.

Evidence: Plaintiff's Statement of Further Disputed Facts, Facts Nos. 2-

OPPOSITION   TO   MSJ;   PLAINTIFF'S
RESPONSE TO STATEMENT OF ADDITIONAL
UNDISPUTED FACTS

3

12.  The photograph marked as Ex. 2 also shows the fan and where it is always located.

Evidence: Deposition of Christopher Saldana, P. 41 L. 15 to P. 42 L. 1; P. 42 L. 24 to P. 43 L. 5, Ex. 2.

12.  Disputed in that the Kern County Sheriffs Department Investigation Report indicates that the vertical pole of the fan was measured and determined to be 35 inches away from the cell bar walls of B4-1 and the closest part of the fan to cell B4-1 was approximately 18 inches away.

Evidence: Plaintiff's Statement of Further Disputed Facts, Facts Nos. 2-3

13.  The fan had been on B-Deck ever since the involved Deputies started working on B-Deck.

Evidence: Deposition of Joshua Bathe P. 46 L. 11-13; Deposition of Christopher Saldana, P. 25, L. 10-15

13.  Undisputed.

14.  From the security desk in the central area of B-Deck, one can see most of the interior of Cell B4-1. Evidence: Deposition of Jason Ayala, P. 42 L. 19 to P. 43 L. 7, P. 84 L. 1-7; Deposition of Joshua Bathe P. 23 L. 12 to P. 24 L. 6.

14.  Disputed.  There is a partitioning wall obstructs the majority of the view of the east portion of the cell to anyone on the west side of the cell. Evidence: Garrotto Dec., Exhibit 2, Incident Investigation Report, Bathe Statement, P.7 of 28.

15.  The view of cell B4-1, from the security desk, however is obscured by partition walls in the cell. Evidence: Deposition of Jason Ayala, P. 85, L.10-14, P. 51 L.3-5; Deposition of Joshua Bathe, P. 23 L. 12 to P. 24 L. 6; Deposition of Sean Collier, P. 36 L. 25 to P. 37 L. 22; Deposition of Christopher Saldana, P. 16 L. 11 to P. 17 L. 16.

15.  Undisputed.

16.  It is necessary to open the No. 4 Hall doorway to see the entirety of cell B4-1.

Evidence: Deposition of Sean Collier, P. 50 L. 21 to P. 51 L. 2.

16.  Disputed.  The testimony cited states that in order to see that portion of cell B4-1 that is behind the partitioning wall, one had to enter the fourth hallway.

17.  Inmate checks would include looking behind the partition wall of cell B4-1.

Evidence: Deposition of Christopher Saldana, P. 17, L.17-24.

17.  It is undisputed that this is the witness's testimony.

18.  Cell bars obscured the view of the floor fan from the deputies' desk in the central area.

Evidence: Deposition of Jason Ayala, P. 88 L. 12-20

18.  Undisputed that this is Mr. Ayala's deposition testimony.

OPPOSITION TO MSJ; PLAINTIFF'S RESPONSE TO STATEMENT OF ADDITIONAL UNDISPUTED FACTS

19. There is also one safety cell in the basement which is padded.

Evidence: Deposition of Sean Collier, P.19 L. 6-15; P.32 L. 5-9; Deposition of Christopher Saldana, P. 28 L. 15-19.

19. Undisputed.

20. At all relevant times, the KCSO has maintained policies and procedures on the handling of suicidal detainees and suicide watch protocols.

Evidence: Declaration of Michael Mahoney, Paragraph 5, KCSO, CRF, Policy No. D-400 (Ex. J), KCSO Detentions Bureau Policy No. C-200 (Ex. L) and KCSO, Lerdo Pretrial Section, Policy No. C-243 (Ex. P)

20. Undisputed.

OPPOSITION TO MSJ; PLAINTIFF'S RESPONSE TO STATEMENT OF ADDITIONAL UNDISPUTED FACTS

21. At all relevant times, the KCSO            21. Undisputed.

has maintained policies and

procedures on the appropriate use of a

safety cell.

Evidence: Declaration of Michael

Mahoney, Paragraph KCSO CRF,

Policy Nos. D-200 (Ex. H), D-300

(Ex I), KCSO Detention Bureau,

Policy Nos. D-100 (Ex. K), C-300

(Ex. M), KCSO, Lerdo Pretrial

Section, Policy Nos. C-135 (Ex. O)


22. Suicidal prisoners are required to         22. Undisputed.

be checked on, twice every thirty

minutes. The observations are logged

on the suicide watch sheet for the

inmate.

Evidence: Deposition of Joshua

Bather, P. 12 L. 23 to P.13 L. 6, P.18

L.25 to P.19 L. 8; Deposition of Sean

Collier, P. 22 L.18-25; Deposition of

Christopher Saldana, P.16 L. 5-10

P. 29 L.21-24; KCSO Detentions

Bureau

| | |
|---|---|
| 23.  Deputies Collier and Saldana observed Campos twice every 30 minutes, and logged their observations.<br><br>Evidence:  Deposition of Paul Myron, P. 28 L.6 to P.29 L. 20; Mahoney Declaration Paragraph 6, Ex. Q. | 23.  It is undisputed that there are notations on the Inmate Observation Log which indicate that Deputies Saldana and Collier made notations concerning observations of Mr. Campos twice every 30 minutes. |
| 24.  Suicidal inmates wear paper clothing.<br><br>Evidence: Deposition of Jason Ayala, P. 79 L. 20 to P. 80 L. 6; Deposition of Sean Collier, P.22 L. 18-25. | 24.  Undisputed. |

25.  Deputies Sean Collier and Christopher Saldana worked the shift immediately prior to the incident on B-Deck.

Evidence: Deposition of Jason Ayala, P. 46 L.5-10

25. Undisputed.

26.  Deputies Ayala and Bathe worked the morning shift on B-deck on the day of the incident.

Evidence: Deposition of Jason Ayala, P. 45 L. 20-23; Deposition of Joshua Bathe, P. 25 L. 15-17; P.26 L.5-14.

Undisputed.

27.  Deputy Ayala has been employed as a KCSO deputy since August 11, 2012.

Evidence: Deputy of Jason Ayala, P.10 L. 5-11

27.  It is undisputed that Deputy Ayala was employed by the Kern County Sheriff's Department for approximately one year before Mr. Campos committed suicide.  He began working in the Central

OPPOSITION   TO   MSJ;   PLAINTIFF'S
RESPONSE   TO   STATEMENT   OF   ADDITIONAL
UNDISPUTED FACTS

Receiving Facility in December, 2012.

Evidence: Garrotto Dec., Ex. 1 Ayala Depo, P. 10 L.9 to P.11 L.18.

28.  Deputy Ayala has worked at CRF since December '12 or January '13.

Evidence: Deposition of Jason Ayala P. 11 L. 16-18.

28.  It is undisputed that Deputy Ayala worked at CRF for about 8 months prior to the Campos' suicide.

29.  At CRF, Ayala was trained on Title 15 and suicidal inmates.  He was tested on suicidal inmate policy.

Evidence: Deposition of Jason Ayala, P.12 L.1-22.

29.  Disputed.  The training with regard to suicidal inmates consisted of going over policy.

Evidence: Deposition of Jason Ayala, P. 12 L. 17-22.

30.  Deputy Bathe has been employed as a deputy for KCSO for three years.

Evidence: Deposition of Joshua Bathe, P. 9 L.4-8, P.9 L.16-17

30.  At the time of the Campos Suicide, Deputy Bathe had worked at Central Receiving Facility for 6 months; he had been employed by

Kern County Sheriffs Department since 2012.

Evidence: Garrotto Dec., Exhibit 3, Deposition of Joshua Bathe, P. 9 L. 6 to P. 10 L. 16.

31.  Deputy Bathe had received training on suicidal inmates and policies and procedures regarding the same, during his detentions training period as well as at the academy. Deposition of Joshua Bathe, P.11 L.24 to P.12 L.8.

31.  The testimony cited indicates that Deputy Bathe received some instructions regarding inmate suicide during the detention training period as well as a review of policy and procedure.

32.  Deputy Collier has been employed as a KCSO deputy since February 9, 2013.

Evidence: Deposition of Sean Collier, P. 10 L.7-9

32.  Undisputed.

33.  Deputy Collier was assigned as a bailiff for two months and then worked at CRF.

Evidence: Deposition of Sean Collier P. 11 L.16-25.

33.  The cited testimony indicates that Deputy Collier started as a deputy in the jail in April, 2013.

34.  Deputy Collier's academy training included an eight hour block on mentally ill prisoners.

Evidence: Deposition of Sean Collier, P. 13 L.5 to P.14 L.6.

34.  Undisputed.

35.  Deputy Collier's six week detention training at CRF covered suicidal inmates.

Evidence: Deposition of Sean Collier, P.15 L.6-20

35.  Undisputed.

36.  Deputy Saldana has been with the KCSO for two and one half years. He

36.  Disputed in that Deputy Saldana had been a deputy in Kern County

was hired in February 2013.

Evidence: Deposition of Christopher
Saldana, P.9 L.16-23.

Sheriffs Department since early 2013,
had worked as a baliff since March,
2013 and moved to the Central
Receiving Facility in April or May,
2013.

Evidence: Garrotto Dec., Exhibit 4,
Depo of Christopher Saldana, P. 10
L.1 to 25.

37.  Deputy Saldana transferred to
CRF in approximately April or May
of 2013.

Evidence: Deposition of Christopher
Saldana P.10 L.16-25.

37.  Undisputed.  See Plaintiff's
Response as to Fact No. 36.

38.  Saldana had received training on
working in CRF.  It included policy
and procedures regarding the jail and
how everything works.

Evidence: Deposition of Christopher

38.  It is undisputed that this is
Christopher Saldana's deposition
testimony.

Saldana P.11 L.1-11.

39.  Deputy Saldana also received training at CRF on the observation log, policies and procedures regarding suicide watch inmates, and identifying actively suicidal inmates who are likely to hurt themselves. Evidence: Deposition of Christopher Saldana P.12 L.22 to P.13 L.19.

39.  Disputed in that the referenced testimony indicated that training at the CRF facility involving identifying actively suicidal prisoners involved "Just that they were going to be, you know, likely to hurt themselves, hurt you, and just maintain their safety and security." P. 13, L. 10-19.

40.  Deputy Collier performed his last check of Campos at 6:40 a.m.  At that time, Campos was lying down and appeared to be asleep. Evidence: Deposition of Sean Collier P. 42 L.2 to P. 44 L.10

40.  Undisputed that this information was placed on the Inmate Observation Log.

41.  Inmate observations of Campos were logged by Deputies Saldana and

41.  Undisputed.

Collier during their shift on August

10.

Evidence: Deposition of Christopher

Saldana P.33 L.14 to P.35 L.7;

Mahoney Deposition Paragraph 6, Ex.

Q.

42.  The last shift check of Campos
was performed at 6:52 a.m. by Deputy
Saldana.  At that time, Campos was
standing the cell (sic).

Evidence: Deposition of Christopher

Saldana, P.35 L.8-18.

42.  Undisputed that this information
is logged on the Inmate Observation
Log

43.  At the end of shift, Deputy
Saldana spoke with Campos.  Campos
appeared to be calm and peaceful.  He
told Campos that they were leaving
and for Campos to be good.

Evidence: Deposition of Christopher

43.  Undisputed that this is Deputy
Saldana's testimony.

Saldana, P. 35 L.19 to P.36 L.2

44.  Deputy Collier's last conversation with Campos was when Collier was leaving.  He told Campos that he would see him in 16 hours. Campos thanked him.  Campos was standing at the time.

Evidence: Deposition of Sean Collier, P.45 L.3-24.

44.  Undisputed that this is Deputy Collier's deposition testimony.

45.  Collier left before 7:00 a.m. as the oncoming shift was arriving.

Evidence:   Deposition of Sean Collier, P. 48 L.18 to P.49 L. 4.

45.  Undisputed that this is Deputy Collier's deposition testimony.

46.  The only strange behavior that Deputy Collier had noted was that Campos would repeat himself when talking, mainly about family and

46.  Undisputed that this is Deputy Collier's deposition testimony.

stress.

Evidence: Deposition of Sean Collier,

P.49 L.19 to P.50 L.10

47.  Deputy Saldana also had conversations with Campos during his last shift.  Campos spoke about his charges, his children and about wanting to hurt himself.  However, Campos did not say that he wanted to kill himself.

Evidence: Deposition of Christopher Saldana, P.22 L.25 to P.24 L.6, P.26 L.19-22.

47.  Undisputed that this is Deputy Saldana's deposition testimony.

48.  On the last shift before the incident, Deputy Collier interacted with Campos.  Collier was aware that Campos had been in a safety cell.  Campos was brought to B-deck

48.  The referenced testimony also indicates that Deputy Collier was aware that Mr. Campos had been in the safety cell because he had hit his head on the cell bars.

halfway through the shift.  Deputy believes this was his first contact with Campos.

Evidence: Deposition of Sean Collier, P.29 L.3 to P.31 L. 10.

Deposition of Collier, P. 29 L.25 to P.30 L. 5

49.  Deputy Collier spoke to Campos about Campos' case, his family and his release date.  Campos told Collier that he was stressing out.

Evidence: Deposition of Sean Collier, P. 35 L.23 to P.36 L.14.

49.  The referenced testimony also indicated that Deputy Collier also told Mr. Campos that "he needed to be evaluated by a psychiatrist and they would determine when it was okay for him to come off of suicide watch.

Deposition of Deputy Collier, P.35 L.23 to P.36 L.4

50.  When Ayala arrived on B-deck at 7:00 a.m. he first did a face card count of the inmates on the deck.

Evidence: Deposition of Jason Ayala, P.48 L.11 to P.49 L.5

50.  Disputed.  The testimony indicates that "I have a blurry image of Collier on the deck"; and "I think I went and got the face cards".

Deposition of Jason Ayala, P. 48 L.

51.  The face card count went quickly.

Evidence: Deposition of Jason Ayala,

P.50 L.6-7

14-17, P. 48 L. 22-24.

52.  As part of the face card count,

Deputy Ayala looked at Campos.

Campos was lying on the bed and

appeared to be sleeping.  There was

no conversation.

Evidence: Deposition of Jason Ayala,

P. 50 L.19 to P.51 L.12.

52.  Disputed.  Deputy Ayala arrived

for his shift on B-Deck at 7:00 a.m.

However, Deputy Saldana had

reported in the Inmate Observation

Log that at 6:52 a.m., 8 minutes

earlier, that Mr. Campos was

standing, awake and talking.

Evidence: Garrotto Dec., Ex. 1, Ayala

Depo, P. 48 L. 11-17; Ex.4, Saldana

Depo. P. 35 L. 8 to P.36 L.5, Exhibit

1 to said deposition.

53.  After the face card count, Deputy

Ayala called the nurse for the nursing

call list.  The list arrived quickly.

Campos was first on the list.

53.  Undisputed that this was Mr.

Ayala's deposition testimony.

Evidence: Deposition of Jason Ayala,

P.63 L.2 to P.65 L. 18

54.  Deputy Ayala went to ask
Campos if he wanted to see a nurse.
Evidence: Deposition of Jason Ayala,
P.63 L.2 to P.65 L.18

54.  Undisputed that this is Deputy
Ayala's deposition testimony.

55.  When Deputy Ayala saw
Campos, he now was sitting in a
corner of the cell with a cord tied to
the cell bars at Campos head level.
Evidence: Deposition of Jason Ayala,
P. 68 L.18 to P.70 L.5, Ex. 6 and
Ex.7.

55.  Disputed.  When Deputy Ayala
went to talk to Mr. Campos, he did
not see Mr. Campos.  He was not in
the open area and could not been
seen.  Deputy Ayala finally found him
in a seated position facing the inside
of the cell with a cord around his
neck.
Evidence: Garrotto Dec., Ex. 1, Ayala
Depo., P. 65 L.14 to P.71 L.15, Ex. 6-
8 of said deposition.

56. Campos was discovered at 7:07 a.m.

Evidence: Deposition of Jason Ayala, P.70 L.14-24; Deposition of Sean Collier, P.26 L.20 to P.27 L.2

56. Undisputed that Deputy Collier looked at his report to derive that time. The deposition testimony of Deputy Ayala cited, does not reference that time.

57. Campos was found in a seated position facing the bed with a cord around his neck.

Evidence: Deposition of Jason Ayala, P.71 L.6-15.

57. Undisputed.

58. Deputy Ayala could see the side of Campos face. It looked dark blue or purple. Ayala didn't notice any breathing, nor any signs of life.

Evidence: Deposition of Jason Ayala, P. 71 L.24 to P.72 L.18.

58. Undisputed.

59.  Deputy Ayala immediately radioed for a medical priority at cell B4-1.

Evidence: Deposition of Jason Ayala, P.71 L.19-23; P.72 L.21-P.73 L.3

59.  Undisputed.

60.  When Deputy Bathe arrived on B-deck, Deputy Ayala had already started the face card count.

Evidence: Deposition of Joshua Bathe, P. 26 L.5-14.

60.  Undisputed.

61.  On arrival to B-deck, Deputy Bathe went to the bathroom.  When he came out, Deputy Ayala was done with the face count and was trying to get the list for the sick call.

Evidence: Deposition of Joshua Bathe, P. 26 L.23 to P.27 L.17.

61.  Undisputed that this is Deputy Bathe's deposition testimony.

62.  After leaving this restroom, Deputy Bathe went toward the elevators to respond to a code yellow. A code yellow requires a deputy, if available, to respond as quickly and safely as possible.

Evidence: Deposition of Joshua Bathe, P. 28 L.9 to P.29 L.1

62.  Undisputed that this is Deputy Bathe's testimony.

63.  Before Deputy Bathe got to the elevator, Deputy Ayala had radioed a medical priority.

Evidence: Deposition of Joshua Bathe, P.29 L.11-19.

63.  Undisputed that this is Deputy Bathe's deposition testimony.

64.  Deputy Bathe hadn't been on B-deck very long before Deputy Ayala called the medical priority.

Evidence: Deposition of Joshua Bathe, P. 31 L.13-18.

64.  In way of clarification, the cited testimony indicates that Deputy Bathe had been on B Deck less than 15 minutes at the time that he responded to Deputy Ayala's call.

65. Deputy Ayala was yelling to Deputy Bathe from outside the cell doors to cell B4-1. He told Bathe to open the cell door.

Evidence: Deposition of Joshua Bathe, P. 31 L.19-25; P.32 L.24 to P.33 L.5; Deposition of Jason Ayala, P.73 L. 7-24.

65. Undisputed that this is the Deputies' testimony.

66. Deputy Bathe went to the control panel and popped open the door to cell B4-1.

Evidence: Deposition of Joshua Bathe, P.35 L.4-11.

66. Undisputed that this is Deputy Bathe's testimony.

67. Deputy Bathe opened the cell door and Deputy Ayala went inside the cell.

Evidence: Deposition of Jason Ayala P. 74 L.22 to P.75 L.1

67. Undisputed that this is Deputy Ayala's testimony.

68.  When the door was open, Deputy Bathe also went in the cell, walked around the partition, and saw Campos with a noose around his neck, sitting near the wall.  Deputy Bathe picked up Campos under the arm pits, and Deputy Ayala took the noose off of Campos.

Evidence: Deposition of Joshua Bathe, P. 38 L.3-10; Deposition of Jason Ayala, P.75 L.4-11.

68.  Undisputed that this was the Deputies' testimony.

69.  Campos' face was purple. Deputies Bathe and Ayala did not see any breathing, nor recall seeing any signs of life.

Evidence: Deposition of Joshua Bathe, P.38 L.11-18; Deposition of Jason Ayala, P.71 L.24 to P.72 L.18

69.  Undisputed that this is the Deputies' testimony.

70. Campos was laid on the floor.
Bathe check pulse, looked for
breathing and then started chest
compressions. Before he had finished
the first set, Nurse Morgan arrived
from IRC in the basement of CRF.
Evidence: Deposition of Jason Ayala,
P. 75 L.22 to P.76 L.6, P.76 L.24-
P.77 L.19; Deposition of Joshua
Bathe P.40 L.6 to P.41 L.12.

70. Undisputed that this is the
Deputies' Deposition testimony.

71. The noose was fashioned from an
electrical cord.
Evidence: Deposition of Jason Ayala,
P. 76 L.ll-16 Ex.7

71. Undisputed.

72. Deputy Ayala had not noticed
any repairs to the fan.
Evidence: Deposition of Jason Ayala,
P. 36 L. 11-17

72. Undisputed that this is Deputy
Ayala's deposition testimony.

73.  Deputy Ayala didn't recall having seen duct tape on the fan's cord.

Evidence: Deposition of Jason Ayala P. 41 L.5-7

73.  Undisputed that this is Deputy Ayala's deposition testimony.

74.  Deputy Bathe had never plugged in the fan.  He did not recall ever seeing duct tape on the cord.

Evidence: Deposition of Joshua Bathe P.22 L.10-22.

74.  Undisputed that this is Deputy Bathe's deposition testimony.

75.  Deputy Bathe didn't ever recall noticing that the cord had been repaired.

Evidence: Deposition of Joshua Bathe, P. 44 L.17-21.

75.  Undisputed that this is Deputy Bathe's testimony.

76.  Deputy Saldana didn't know of any duct tape on the cord and didn't

76.  Undisputed that this is the Deputy's testimony.

know if the fan had ever been

repaired.

Evidence: Deposition of Christopher

Saldana, P.26 L.3-9

77.  Deputy Collier was aware of the duct tape on the cord, but didn't know why it was there.

Evidence: Deposition of Sean Collier, P. 25 L.8-17

77.  For clarification, the Deputy was aware of the presence of the fan from the time he had first worked on B Deck and the fact that duct tape had always been on the cord.  He first started working in jails in April 2013 and during the detention period worked on B Deck.

Evidence: Garrotto Dec., Exhibit 5, Deposition of Sean Collier, P. 11 L.21 to P.12 L.9.; P. 23 L.9-15; P.24 L.5 to P.25 L.14.

78.  There had been no other reported suicides, or attempts, by a detainee,

78.  The declaration of Michael Mahoney is objected to on the basis

occurring in Cell B4-1 prior to
Campos.

Evidence: Declaration of Mahoney,
Paragraph 7; Declaration of Plugge,
Paragraph 3.

that there is no foundation for his
testimony. There is no indication in
his declaration as to what time period
the records he reviewed comprised; to
wit; the period when said records
began and when they ended and the
reasons that records were not
reviewed before that start date.

79.  There had been no other claims
or lawsuits against the County for any
suicide in Cell B4-1 prior to Campos.

Evidence: Declaration of Newell,
Paragraph 4.

79.  The deposition of Tom Newell is
objected as there is no foundation for
his testimony.  There is no indication
in his declaration as to what time
period the records he reviewed
comprised; to wit; the period when
said records began and when they
ended and the reasons that records
were not reviewed before that start
date.

80.  Decedent Luis Campos, had two          80.  Undisputed.

other children, besides plaintiff,

Fidelia Isabel Campos, approximately

age 12 and Robert Gabriel Campos,

approximate age 10.  Their mother is

Amy Flores.

Evidence: Deposition of Deniz

Gonzalez, P.22 L.1 to P.23 L. 24


Dated: 2/28/2016                            GARROTTO & GARROTTO

                                           /s/ Greg W. Garrotto
                                           GREG W. GARROTTO