LAW OFFICES OF GARROTTO & GARROTTO
Greg W. Garrotto, State Bar #89542
1925 Century Park East, Suite 2000
Los Angeles, California 90067
Telephone (310) 229-9200
Fax (310)229-9209
jjggarrotto@msn.com

Attorneys for Plaintiff
Keanu Ethan Campos, a minor

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEANU ETHAN CAMPOS, a minor, by and through his Guardian ad Litem, Deniz Gonzalez<br><br>    Plaintiff,<br>v.<br><br>COUNTY OF KERN, a public entity; Deputy Sheriff Jason Ayala, a public employee; Deputy Joshua Bathe, a public employee; and , DOES1-10, Inclusive | Case No.: 1:14-cv-01099-DAD-JLT<br><br>OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S STATEMENT OF FURTHER DISPUTED FACTS<br><br>Date: March 15, 2016<br>Time: 9:30 a.m.<br>Court: Robert E. Coyle United States Courthouse, 2500 Tulare St., Fresno, CA 93721<br>Judge: Hon. Dale A. Drozd, Judge |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiff, Keanu Ethan Campos, a minor, by and through his Guardian ad Litem, Deniz Gonzalez, presents Plaintiff's Statement of Further Disputed Facts in Opposition to Defendants' Motion for Summary Judgment:

| **Plaintiff's Further Disputed Facts** | **Supporting Evidence** |
|---|---|
| 1. Luis Campos was a 35 year old Hispanic male, who was found hanging in his cell in the Kern County Jail Central Receiving Facility by an electric cord taken from a fan that was outside the decedent's cell. | 1. Evidence: Garrotto, Dec., Ex. 6, Kern County Sheriff/Coroner Final Report, P. 3. |
| 2. In the course of the Kern County Sheriffs Department investigation, conducted on the date of the death, the investigator described the fan as a "large fan" with black electrical cord attached to the back of the fan. The cord was 27 inches long. The end with the electrical plug was not attached to the fan. The end was frayed with wires exposed. The frayed end had gray duct tape wrapped around it. The vertical pole | 2. Evidence: Garrotto Dec., Exhibit 2, Incident Investigation Report SR13-22293, P. 8 of 28. |

of the fan was measured and determined to be 35" away from the cell bar walls of B4-1, the cell where Campos was housed at the time of his death.

3. At the time of the suicide, the closest portion of the cell B4-1 to the fan was approximately 18 inches.

3. Evidence: Garrotto Dec., Ex. 7, Deposition of Paul Myron, P. 21, L. 4-14.

4. During the investigation of the decedent's suicide by members of the Kern County Sheriffs Department, a black electrical cord was found hung over the metal bars of the south wall of cell B4-1, which appeared to be from the fan located outside the cell. The thickness of the cord appeared to be consistent with the ligature marks on Campos neck.

4. Evidence: Garrotto Dec., Exhibit 2, Incident Investigation Report SR13-22293, P. 8 of 28.

OPP. TO MSJ; PLAINTIFF'S FURTHER DISPUTED FACTS

| | |
|---|---|
| 5.  Deputy Bathe indicated that the noose was made out of a black electrical cord. | 5. Evidence: Garrotto Dec., Exhibit 2, Incident Investigation Report SR13-22293, P. 12 of 28. |
| 6.  There is a partitioning wall that obscures the view of the majority of the east portion of the cell from anyone on the west part of the cell. From the vantage point of the desk where the deputies on B Deck sat while on duty, they could not see the half of the cell where the toilet and bed were located as well as where Mr. Campos' body was found. | 6.  Evidence: Garrotto Dec., Exhibit 2, Incident Investigation Report SR13-22293, P. 7 of 28. |
| 7.  The large floor fan had always been in the same position where it was at the time of Mr. Campos death for as long as the two deputies had worked there. | 7.  Evidence: Garrotto Dec., Exhibit 2, Incident Investigation Report SR13-22293, P. 23 of 28. |

The fan was used because it would get very hot and the air conditioning was not working in the Central Receiving Facility. The purpose of the fan was to point it at the deputies' desk and cool the deputies, rather than the inmates of the jail. The cord had always had the duct tape around it.

8. The large floor fan, at the time of Mr. Campos death, would have been about 12-15 feet from the desk and in full view of the deputies.

8. Evidence: Garrotto Dec., Ex. 7, Depo. of Myron, P. 23 L.12 to P. 24 L. 1

9. Mr. Campos had been actively suicidal and self destructive since he had been arrested on August 8, 2013. It was known to jail custody staff including the two custody officers on

9. Evidence: Garrotto Dec., Ex. 8, Recorded Interview of Deputy Christopher Saldana, P. 2 L. 23 to P.6 L.9; Ex. 9, Incident Narratives for the dates 8/8/2013 and 8/9/2013; Ex. 13,

the shift immediately before the early morning shift on which Mr. Campos committed suicide that they needed to be "extra cautious" about Mr. Campos that he had injured himself twice by hitting himself on cell bars and had to be placed in the safety cell, which is in the basement.

Recorded Interview of Sean Collier, P. 3 L. 13 to P. 5 L.16.

10. During the detention where he committed suicide, Mr. Campos was taken on August 9, 2013 to Kern County Medical Center for a medical evaluation which was head laceration which was self-inflicted. He was not taken there for a mental health evaluation even though he had been on suicide watch on August 8 and August 9 up to the time of his transfer and known to be suicidal.

10. Evidence: Garrotto Dec., Ex. 10, Medical Records of Luis Campos produced by the Defendants, P. 3, 4, 5 67, 107.

11.  According to Kern County Sheriffs Department procedures, Mr. Campos was to be evaluated by Mental Health Staff at the facility when he was removed from the safety cell.

11.  Evidence, Garrotto Dec., Ex.10, Kern County Sheriffs Department Central Receiving Facility, Policies and Procedures Manual, Policy D-200, Use of Safety Cell; Use of the Safety Cell, Policies and Procedures, Policy C-100; Garrotto Dec., Ex.12, Kern County Sheriffs Office-Inmate Observation Log.

12.  At 0306 hrs. on August 10, 2013, the day he committed suicide, Mr. Campos was removed from the safety cell.

12.  Evidence: Garrotto Dec., Ex. 10, Kern County Correctional Facilities Medical Record, P. 3, entry for 8/9/2013 at 0306 hrs.

13.  At no time during his incarceration at Central Receiving Facility in August, 2013 was Mr. Campos seen by Mental Health Staff. The only "Mental Health Screening"

13.  Evidence: Garrotto Dec., Ex. 10, Kern County Correctional Facilities Medical Record. P. 107-108.

that Mr. Campos underwent during the incarceration of August 8, 2013 to August 10, 2013 was one prepared by a Licensed Vocational Nurse.  The California Vocational Nursing Practices Act does not allow Licensed Vocational Nurses to perform psychological or psychiatric or mental health evaluations.  California Business & Professions Code, Div. 2, Chapter 6.5, Section 2840 et. seq.

| | |
|---|---|
| 15.  During previous incarcerations at Kern County Jail, occurring over the period of May, 2012 to August, 2012, it was known by both jail custodial and medical staff that Mr. Campos was actively suicidal. | 15.  Evidence: Garrotto Dec., Ex. 10, Kern County Correctional Facilities Medical Record P. 14, 17, 18, 19, 24, 26, 28, 29, 33, 37, 40, 42, 90, 93, 94 |

| | |
|---|---|
| 16. At no time, during his previous detentions, even though he was actively suicidal, was he seen by a Mental Health personnel. | 16. Evidence: Garrotto Dec., Ex. 10, Kern County Correctional Facilities Medical Record. |
| 17. The Policies and procedures of Kern County Sheriffs Department requires that custody personnel conduct a cell search of the new housing location and remove any contraband or unapproved suicide housing items. There is no evidence that custody personnel ever conducted a search of Mr. Campos cell. | 17. Evidence: Garrotto Dec., Ex. 11, Kern County Sheriff's Department, Central Receiving Facility, Policies and Procedures Manual, Policy D-400; Garrotto Dec., Ex. 2, Incident/Investigation Report |
| 18. The fan was on B-Deck was for the purpose of cooling the deputies in the summer when the air-conditioning was broken. It would be pointed in | 18. Evidence: Garrotto Dec., Ex. 12, Interview of Deputy Collier taken on August 10, 2013 |

the direction of the security desk on the floor. It stayed in one spot, which is where it was at the time of Mr. Campos' suicide.

| | |
|---|---|
| 19. At the time of Mr. Campos suicide, there were three Suicide Watch cells on the B Deck of the Kern County Central Receiving Facility (CRF). The other two Suicide Watch cells (2 and 3) had loop cameras monitoring the entire cells with the monitors in an area where the deck control officers are stationed. The Suicide Cell B4-1 had no such loop camera or monitoring. | 19. Evidence: Garrotto Dec., Ex. 7, Myron Depo. P. 26 L.3 to P.27 L.3. |
| 20. From the desk on the B-Deck, a deputy, either standing or sitting, could not see the location where Mr. | 20. Evidence: Garrotto Dec., Ex. 7, Myron Depo. P. 31 L. 20-24. |

Campos hanged himself.

21. There is no evidence that a sweep of Cell B4-1 was performed between 3:06 a.m. (when Mr. Campos returned from the Safety Cell) and the time he hanged himself. Proper Law Enforcement practices required that a sweep be done of the cell before Mr. Campos was placed in the Suicide Watch Cell.

21. Evidence: Garrotto Dec., Ex. 7, Myron Depo. P. 18 L.20 to P. 19 L. 9

22. Custodial Staff on the B Deck knew that they were to be extra-cautious about Mr. Campos because of his past suicidal and or self-destructive behavior. None of the deputies, either night or morning shift recalls any communication about Mr. Campos and the need for "extra

22. Evidence: Garrotto Dec., Ex. 13 Declaration of Sean Collier, P. 3 L. 13 to P. 5, L. 19; Ex. 3, Depo. of Bathe, P.25 L. 18 to P.26 L. 4.; Ex. 1, Depo. of Ayala, P. 48 L. 11-21; Ex.5, Depo. of Collier, P. 45 L.25 to P.46 L.25; Ex.4, Depo. of Saldana, P. 32 L. 25 to P.33 L.13.

caution".

Dated: 2/27/2016                    GARROTTO & GARROTTO

/s/ Greg W. Garrotto
Greg W. Garrotto