GREG W. GARROTTO ESQ. SBN 89542
LAW OFFICES OF GARROTTO & GARROTTO
1925 CENTURY PARK EAST SUITE 2000
LOS ANGELES, CA 90067
Telephone 310-229-9200
Fax 310-229-9209
jjggarrotto@msn.com

Attorneys for Plaintiff, Keanu Campos

THERESA A. GOLDNER, COUNTY COUNSEL
By: Marshall S. Fontes, Deputy (SBN 139567)
Kern County Administrative Center
1115 Truxtun Avenue, Fourth Floor
Bakersfield, CA 93301
Telephone 661-868-3800
Fax 661-868-3805

Attorneys for Defendants
County of Kern, Deputy Jason Ayala
and Deputy Joshua Bathe

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEANU ETHAN CAMPOS, a minor, by and through his Guardian ad Litem, Deniz Gonzalez,<br><br>    Plaintiffs,<br><br>    vs.<br><br>COUNTY OF KERN, a public entity; DEPUTY JASON AYALA, a public employee; DEPUTY JOSHUA BATHE, a public employee; and DOES 1 - 10, Inclusive<br><br>    Defendants. | CASE NO. 1:14-cv-01099-DAD-JLT<br><br>JOINT PRETRIAL CONFERENCE REPORT<br><br>ALL PARTIES REQUEST A JURY TRIAL<br><br>COUNSEL TO APPEAR TELEPHONICALLY<br><br>Date:    May 18, 2016<br>Time:    8:30 a.m.<br>Ctrm:    4<br><br>Complaint filed: July 14, 2014 |

TO THE HONORABLE COURT:

1

1    As required by L.R. 218 and the Scheduling Order, entered by the Honorable Jennifer L.

2    Thurston, United States Magistrate Judge, Plaintiff, KEANU ETHAN CAMPOS, a minor, by

3    and through his Guardian ad Litem, DENIZ GONZALEZ, and Defendants, COUNTY OF

4    KERN, DEPUTY JASON AYALA and DEPUTY JOSHUA BATHE, hereby submit this JOINT

5    PRETRIAL STATEMENT:

6                               **JOINT STATEMENT OF THE CASE**

7    This case involves a wrongful death claim arising from a jail house suicide which

8    occurred in the early morning hours of August 10, 2013, at the County's downtown jail, Central

9    Receiving Facility ("CRF") in Bakersfield, California.  Plaintiff is the son of the decedent, Luis

10   Campos.  Plaintiff asserts a survival claim for the alleged violation of the decedent's rights under

11   the 4th amendment and substantive due process rights under the 14th amendment.  Plaintiff also

12   asserts a wrongful death claim under California state law.  Plaintiff has sued the deputies

13   responsible for supervising the decedent in the jail and the County of Kern, who operated the jail.

14   The primary issues to be evaluated by the trier of fact concern the reasonableness of the

15   deputies' supervision of the decedent, the reasonableness of training of the involved deputies, the

16   reasonableness of protocols and procedures in effect to ensure the protection of prisoners who

17   are a danger to themselves, and whether the underlying constitutional violations, if any, were the

18   result of an unconstitutional custom, policy, or practice, and whether the Defendants are shielded

19   from liability by any state or federal immunity.

20                               **JURISDICTION AND VENUE**

21   Plaintiff's causes of action arise, in part, under 42 U.S.C. § 1983, making subject matter

22   jurisdiction proper under 28 U.S.C. § 1343.  There is no dispute concerning jurisdiction or venue

23   regarding the 42 U.S.C. § 1983 causes of action.

24                               **JURY - NON-JURY**

25   The parties have demanded a jury trial of all of the issues in this action.

26                               **UNDISPUTED FACTS**

27   It is undisputed that, on August 10, 2013, the decedent, Luis Campos, committed suicide,

28   by using an electrical cord to hang himself from the cell bars while he was being housed in a

Joint Pretrial Statement

1    suicide watch cell, No. B-4-1, in the Kern County Jail.

2          It is also undisputed that at the time of the incident, Deputies Bathe and Ayala were

3    employed by Defendant County of Kern, and were acting under color of law and within the

4    course and scope of their employment with Defendant County of Kern, and had been assigned to

5    supervise the B-deck of the jail where Campos was being housed, at the time of the incident.

6                                    **<u>DISPUTED FACTUAL ISSUES</u>**

7          The Parties submit the following issues are in dispute:

8          1.      Whether Defendants violated the Decedent's Substantive Due Process Rights;

9          2.      Whether Defendants violated the Plaintiff's Substantive Due Process Rights;

10         3.      Whether Defendants Bathe and/or Ayala were deliberately indifferent to a serious

11   medical need of the decedent;

12         4.      Whether Defendants Bathe and Ayala's supervision of decedent was reasonable;

13         5.      Whether Defendants Bathe and/or Ayala failed to summon immediate medical aid

14   for decedent;

15         6.      Whether the County's policies, practices and/or customs were unconstitutional;

16         7.      Whether the County's policies, practices and/or customs were a moving force

17   behind the decedent's suicide;

18         8.      Whether the County's policymakers were deliberately indifferent to the County's

19   policies, practices and customs;

20         9.      Whether the decedent was comparatively negligent;

21         10.     Whether any negligence or wrongful conduct on the part of Defendants or the

22   decedent caused harm to Plaintiffs;

23         11.     Whether defendants are immune from liability;

24         12.     The nature and extent of Plaintiffs' damages, if any;

25         13.     Whether the individual defendants acted in willful or reckless disregard of

26   federally guaranteed rights, such that exemplary damages are appropriate; and

27         14.     Whether Plaintiff's attorneys are entitled to attorney fees.

28   ///

                                                3

_____

Joint Pretrial Statement

1       Plaintiff also submits, pursuant to L.R. 281(B)(6)(iv), the following "Special Factual

2  Information – Wrongful Death":

3       On August 10, 2013, Decedent Luis Campos, a 35 year old Hispanic male, a pre-trial

4  detainee in the Central Receiving Facility of the Kern County Jail, was housed in one of three

5  suicide cells, Cell No. B4-1.  A little after 7:00 a.m., he was found hanging in his cell.  The

6  noose had been fashioned from an electrical cord taken from a large floor fan that was just

7  outside and within easy reach from the Decedent's cell.  At the time of his suicide, he had been

8  in jail since August 8, 2013.  He had exhibited actively suicidal behavior since his arrest.

9       The basis of 42 U.S.C. 1983 liability as to the individual defendants as well as the County

10  of Kern is that they violated Plaintiff and the Decedent's constitutional rights by failing to

11  address the Decedent's serious medical needs; to wit, suicide prevention; it being clear that he

12  was at serious risk for suicide.  There is also a claim under state law predicated on wrongful

13  death law; whether the negligence of the Defendant(s) was a substantial factor in the death of the

14  Decedent.

15       The Plaintiff is Keanu Ethan Campos born on March 28, 2012.  The Decedent

16  contributed a combination of monetary amounts towards the support of the child, as well as

17  purchased clothing and baby items such as the stroller and car seat.  He also contributed support

18  by way of purchasing groceries and gas.  The Decedent, at the time of his death, was 35 years of

19  age.  He was trained as an electrician.  He was in apparently good physical health; there is some

20  suggestion that he had a bipolar disorder.

21                    **DISPUTED EVIDENTIARY ISSUES**

22  Plaintiff's Statement:

23       Plaintiff believes that evidentiary issues will arise relating to whether any or all of

24  Decedent's Luis Campos criminal convictions and or criminal charges including but not limited

25  to the charges for which he was being detained at the time he killed himself are admissible.  The

26  Plaintiff also believes that evidentiary issues will arise as to the facts regarding the relationship

27  of Plaintiff's mother Deniz Gonzalez and the Decedent.

28  ///

Joint Pretrial Statement

1    Plaintiff also intends to file a motion in limine and or make appropriate objection with

2  regards to Defendants' retained expert's (Paul Myron) qualifications to provide expert testimony

3  in this case under <u>Daubert v Merrell Dow Pharmaceuticals</u> (1993) 509 <u>U.S.</u> 579.

4  <u>Defendants' Statement</u>:

5    On the following issues, Defendants intend to file motions in limine, submit a trial brief,

6  and/or seek the Court's direction and assistance in their resolution:

7    1.    Whether any state cause of action that was not included in Plaintiff's California

8  Tort Claim, filed with Kern County, may be introduced;

9    2.    Whether any cause of action not contained in Plaintiff's complaint may be

10  pursued at trial;

11    3.    Whether photographs of the decedent's injuries, and particularly autopsy

12  photographs are admissible, since Defendants contend they are irrelevant and are extremely

13  prejudicial due to their inflammatory nature;

14    4.    Whether past or subsequent complaints or investigations into personnel matters

15  pertaining to Defendants Bathe or Ayala are admissible since Defendants contend they are

16  irrelevant and are extremely prejudicial;

17    5.    Whether Plaintiff may introduce expert testimony from witnesses who were not

18  disclosed pursuant to Federal Rules of Civil Procedure, Rule 26;

19    6.    Whether Plaintiff may introduce evidence not disclosed in discovery;

20    7.    Whether Plaintiff may introduce evidence of the County of Kern's wealth or its

21  insurance coverage; and

22    8.    Whether Plaintiff may introduce evidence of future special damages which are

23  speculative in nature.

24  **RELIEF SOUGHT**

25  <u>Plaintiff's Statement</u>:

26    Plaintiff seeks compensatory and punitive damages, as well as attorney fees, under 42

27  U.S.C. Section 1988; and compensatory damages as to the state law claim.

28  ///

5

Joint Pretrial Statement

1   Defendants' Statement:

2        Defendants seek a defense verdict, costs and attorney fees for defense of this action.

3                                    **POINTS OF LAW**

4   Plaintiff's Points of Law:

5        Plaintiff raises the following points of law:

6        In order to prevail on their 1983 claim against the defendants, the plaintiffs must prove

7   each of the following elements by a preponderance of the evidence: 1) the defendant acted under

8   the color of law; 2) the acts of the defendant deprived the plaintiffs of their particular rights

9   under the laws of the United States Constitution.  A person acts under the color of law when a

10  person acts or purports to act in the performance of official duties under any state, county or

11  municipal law, ordinance or regulation.  (9th Circuit Model Jury Instruction 9.2)

12       In order to establish that the act or failure to act of the defendant deprived the plaintiff of

13  their rights under the United States Constitution, the plaintiff must prove by a preponderance of

14  the evidence that the acts or failures to act were so closely related to the deprivation of the

15  plaintiff's rights to be the moving force that caused the ultimate injury.  (9th Circuit Model

16  Instruction 9.8)

17       The courts have long analyzed claims under 42 U.S.C. 1983 that correctional facility

18  officials violated pretrial detainee's constitutional rights by failing to address their medical

19  needs, including suicide prevention, under a "deliberate indifference" standard.  A prison official

20  cannot be liable for deliberate indifference unless he or she knows of and disregards an excessive

21  risk to inmate health and safety; the official must both be aware of facts from which an inference

22  could be drawn that a substantial risk of serious harm exists and he must also draw that

23  inference.  Farmer v Brennan (1994) 511 U.S. 825.  The Plaintiff must show that the official was

24  subjectively aware of the serious medical need and failed to respond.  A heightened suicide risk

25  can present a serious medical need.  Conn v City of Reno (2010 9th Cir.) 591 F.3d 1081.

26       Under California State Law, in order to hold the defendants liable for the death of the

27  decedent, the trier of fact must find them to be negligent and that said negligence is a substantial

28  factor in causing plaintiff's injury.  California Government Code 844.6(a)(2) states that a public

6

1   entity is not liable for any injury "to any prisoner".  Said immunity does not apply to public

2   employees.  California Government Code Section 844.6(a).

3         Furthermore, both the public entity and the public employee are liable for a failure to

4   summon medical care when they are on notice that the prisoner is in need of medical care and the

5   employee fails to take reasonable action to summon such medical care.  California Government

6   Code Section 845.6.  Whether the governmental entity had actual or constructive knowledge of

7   an immediate need for medical care and whether the action of the governmental entity and or

8   employee was reasonable are generally questions of fact.  Zeilman v County of Kern (1985) 168

9   Cal.App.3d 1174.

10   Defendant's Points of Law:

11         1.    Decedent's Due Process Claim (Survival Action):

12         The analysis of a 1983 claim for deliberate indifference to a serious medical need

13   involves an examination of two elements: (1) a prisoner's serious medical needs and (2) a

14   deliberately indifferent response by the defendants to those needs.  McGuckin v. Smith, 974

15   F.2d 1050, 1059 (9th Cir., 1992).  For purposes of the settlement conference only, Defendants

16   will recognize that mental illness and suicidal ideation would qualify as a serious medical need.

17   Nevertheless, Plaintiff cannot establish "deliberate indifference" to that need in this case.

18         A jailor is deliberately indifferent if he or she knows that an inmate or detainee prisoner

19   faces a substantial risk of serious harm and willfully disregards that risk by failing to take

20   reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994).  A

21   defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical

22   need in order for deliberate indifference to be established.  McGuckin v Smith, supra, 974 F.2d

23   at1060.  Mere negligence, without more, does not violate a prisoner's constitutional rights.

24   Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir., 2004).

25         2.    Plaintiff's Due Process Claim:

26         Parents and children may assert a Fourteenth Amendment substantive due process claim

27   if they are deprived of the companionship of their child or parent through official conduct.

28   Lemire v. Cal. Dept. of Corrections and Rehabilitation,726 F.3d 1062,1075 (9th Cir., 2013).

7

1    The Due Process Clause is violated only when the official conduct can be properly

2    characterized as arbitrary, or conscious shocking.  County of Sacramento v. Lewis, 523

3    U.S.833, 845-7 (1998); Lemire, 726 F.3d at 1075.  Liability turns on whether there was conduct

4    evincing a purpose of causing harm.  County of Sacramento v. Lewis, 523 U.S. at 852-3.

5    "Purpose to harm" in this context means acting with a purpose to harm the decedent for reasons

6    unrelated to legitimate law enforcement objectives.  Porter v. Osborn, 546 F.3d 1131, 1137 (9th

7    Cir., 2008).

8         3.    Qualified Immunity:

9         The defense of qualified immunity protects government officials from civil damages

10   "insofar as their conduct does not violate clearly established statutory or constitutional rights of

11   which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818

12   (1982).  The purpose of this defense is to protect governmental officials from suit for reasonable

13   mistakes made in the course of duty.  Moore v. Lamarque, 2007 U.S. LEXIS 16163 (9th Cir.,

14   2007).  Qualified immunity will protect all but the "plainly incompetent or those who

15   knowingly violate the law."  KRL v. Moore, 384 F.3d 1043 (9th Cir., 2004).

16        The first step in evaluating qualified immunity is to determine if the plaintiff has shown

17   conduct that violates his constitutional rights.  Galvan v. Hay, 374 F3d 739, 745 (9th Cir.,

18   2004); Butler v. Elle, 281 F.3d 1014, 1021 (9th Cir., 2002).  The next step is to determine

19   whether the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the

20   plaintiff demonstrates the violation of a right that was clearly established, then the officer must

21   show that a reasonable officer could have believed the particular conduct at issue to have been

22   lawful.  Butler, 281 F.3d at 1021; Schwenk v. Harford, 204 F.3d 1187, 1196 n.5 (9th Cir.,

23   2000).

24        With respect to reasonable belief, the test is whether it would be clear to a reasonable

25   officer that his conduct was unlawful in the particular situation.  The inquiry is not dependent

26   upon the subjective thoughts of the particular officer.  Washington v. Lambert, 98 F.3d 1181,

27   1192 (9th Cir., 1996).  If the officer could have reasonably believed his conduct was lawful,

28   then the officer should prevail on the qualified immunity defense.  Romero v. Kitsap County,

Joint Pretrial Statement

1  931 F.2d 624, 627 (9th Cir., 1991).

2      4.    _Monell_ Liability:

3      The basis for municipal liability under 42 U.S.C. § 1983 for civil rights violations is

4  distinct from the individual officer's actions.  There is no *respondeat superior* liability for the

5  unconstitutional actions of a municipal employee.  Monell v. Dep't of Soc. Services of City of

6  New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Connick v. Thompson*

7  (2011) –U.S.--, 131 S. Ct. 1350, 1359).  Liability against the County for a violation of civil

8  rights under Section 1983 requires Plaintiff to show that the constitutional violation was the

9  result of a municipal policy or custom, or where it fails to train its officers.  Monell v. Dep't of

10  Soc. Services of City of New York, 436 U.S. at 694; *City of Canton v. Harris*, 484 U.S. 378,

11  388.

12      Plaintiff may prove a municipal policy by presenting evidence of: (1) express adoption

13  of a policy by the municipality [See, *Monell*, 436 U.S. at 690]; (2) a "longstanding practice or

14  custom which constitutes the 'standard operating procedure' of the local government entity,"

15  [Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989);

16  Pembaur v. City of Cincinnati, 475 U.S. 469, 485–87, 106 S.Ct. 1292, 89 L.Ed.2d 452) (1986);

17  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996)]; (3) a constitutional violation was caused by

18  a municipal employee with final policy-making authority, see *Pembaur*, 475 U.S. at 480–81;

19  see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107

20  (1998)]; or (4) a municipal employee with final policy-making authority ratified a subordinate's

21  unconstitutional action and the basis for it [See *Praprotnik*, 485 U.S. at 127 (1998); Gillette v.

22  Delmore, 979 F.2d 1342, 1348 (9th Cir.1992)]; (5) a policy of inaction demonstrating a

23  deliberate indifference to a plaintiff's constitutional rights, such as a need to train or correct

24  subordinates of which the municipality is or should be aware.  See City of Canton v. Harris,

25  489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

26      Plaintiffs must also identify evidence of direct and proximate causation.  Id. at 918.  The

27  United States Supreme Court has repeatedly cautioned that 42 U.S.C. § 1983 culpability and

28  causation requirements must be applied rigorously, so as to avoid "serious federalism concerns"

9

Joint Pretrial Statement

1   and a collapse into *respondeat superior* liability.  <u>Bryan County v. Brown</u>, *supra*, 520 U.S. at

2   405-406, 415.  The Court has also emphasized that Congress did not intend that liability could be

3   established under § 1983 based on a mere failure to act or to control others.  Rather, there must

4   be a "direct causal link" between the injury and the defendant's deliberate conduct.  <u>Id</u>. at 404.

5        5.    <u>State Wrongful Death Claim</u>:

6        Under California law, a cause of action for wrongful death is a statutory claim.  *See*,

7   <u>Code of Civil Procedure</u>, Section 377.60 et seq.  Its purpose is to compensate heirs of the

8   decedent for loss of companionship, and other losses suffered as a result of the death, caused by

9   the wrongful act of another or neglect.  *Jackson v. Fitzgerald*, 127 Cal.App.4th 329, 335 (2005).

10       <u>California Government Code</u>, Section 845.6, provides a basis for liability where there is

11  a failure to summon medical aide, and the employee knows, or has reason to know, that the

12  prisoner is in need of immediate medical care.  The need for care must be immediate.  <u>Watson</u>

13  <u>v. State of California</u>, 21 Cal.App.4th 836, 841; <u>Kinney v. Contra Costa County</u>, 8 Cal.App.3d

14  761, 770 (1970); <u>Lucas v. City of Long Beach</u>, 60 Cal.App.3d 341, 350 (1976).  Liability under

15  <u>California Government Code</u>, Section 845.6, envisions injuries or damages resulting from a

16  failure to treat a physical condition that requires immediate treatment.  <u>Lucas v. City of Long</u>

17  <u>Beach</u>, 60 Cal.App.3d 341, 350 (1976).

18       The mere presence of an inmate in a suicide watch cell does not establish knowledge of

19  a risk of <u>imminent</u> suicide.  <u>Simmons v. Navajo County</u>, 609 F.3d 1011, 1017-18 (9th Cir.,

20  2010).  Likewise, there is no general duty owed to prevent suicide.  *Lucas, supra*, 60

21  Cal.App.3d at 350.  The *Lucas* Court also noted that the suicide was an intentional, intervening

22  act that extinguished causation.  *Lucas*, *supra*, 60 Cal.App.3d at 351.

23       6.    <u>State Immunities</u>:

24       A County is immune from liability under state law for injury to a prisoner.  <u>California</u>

25  <u>Government Code</u>, Sections 844.6(a)(2); <u>Reed v. County of Santa Cruz</u>, 37 Cal.App.4th 1274

26  (1995): [Summary judgment based on Section 844.6(a)(2) appropriate where pretrial detainee

27  sought damages for personal injuries against a public entity].  The only exception to this

28  immunity is for dangerous condition liability, where the injured party was not a prisoner.

Joint Pretrial Statement

California Government Code, Section 844.6(c).

A County is also immune from liability for any injuries proximately caused by a failure to provide "sufficient equipment, personnel or facilities" within a prison, jail or penal or correctional facility. California Government Code, Section 845.2. A principal purpose of Section 845.2 is to extend immunity to public entities for discretionary decisions about whether to provide prison, jail, penal or correctional facilities, and about the extent to which those facilities are to be staffed and equipped. Taylor v. Buff, 172 Cal.App.3d 384 (1985); *See also*, Legislative Committee Comments to 845.2.

## ABANDONED ISSUES

Plaintiff's Statement:

The Plaintiff does not intend to abandon any issues at this time.

Defendants' Statement:

Defendants do not intend, at this time, to abandon any issues.

## WITNESSES

The Parties may call one or more of the following witnesses at the trial of this matter:

1.    Jason Ayala

2.    Joshua Bathe

3.    Christopher Saldana

4.    Sean Collier

5.    Cynthia Morgan, R.N.

6.    Davinda Randhawa, R.N.

7.    Sgt. Abel Lombera

8.    Detective Michael Dorkin

9.    Detective Graham

10.    Sgt. Nord

11.    Deputy Jeff Colbert

12.    David Hubbard, T.I.

13.    Adam Rickles, T.I.

11

14.     Mark Riehle, T.I.

15.     Slayton, T.I.

16.     Robert E. Whitmore, M.D. Asst. Coroner

17.     Zuzet Medina, Deputy Coroner

18.     Lt. Adam Plugge

19.     Tom Newell

20.     Michael Mahoney

21.     Paul Myron- Defendants' expert witness

22.     Deniz Gonzalez

23.     Jeff Tolle

24.      Tammie Martinez R.N. M5740

25.      Custodian of Records of Medical Records from Kern County Jail

26.      Catherina F. Munoz RN (#1371)

27.       David Contreras RS, LVN

28.      Custodian of Records of Grimmway Enterprises, Inc.

All of the witnesses listed above, save Jeff Tolle, Paul Myron, Defendants' retained expert witness, Deniz Gonzalez, Plaintiff's mother and Guardian ad Litem, and the Custodian of Records of Grimmway Enterprises, Inc., were agents and or employees of Defendant County of Kern at the time of the incident.

## **EXHIBITS - SCHEDULES AND SUMMARIES**

Plaintiff's List of Exhibits:

Plaintiffs expect to offer the following exhibits at the trial of this matter:

In addition to those documents and or tangible things set forth in Defendants' List of Exhibits, Plaintiff may seek to introduce the following documents and or tangible things at the time of trial:

1.      Luis Campos' Medical Records from Kern County Jail (111 pages)

2.      Kern County Sheriff's Office Policies and Procedures "Use of a Safety Cell" Policy No. 135, Lerdo Pre-Trial Section

12

3.    Kern County Sheriff's Office Policies and Procedures "Suicide Cell", Policy No. C-243, Lerdo Pre-Trial Section

4.    Kern County Sheriff's Office, Policies and Procedures "Use of the Safety Cell", Policy No. C-100, Maximum-Medium Facility Policies and Procedures

5.    Kern County Sheriff's Office, Policies and Procedures, "Suicidal Inmates", Policy No. C-200, Maximum Medium Facility Policies and Procedures

6.    Lerdo Minimum Detention Facility Policies and Procedures "Suicidal and Mentally Disordered Inmates", Policy No. F-115

7.    Kern County Sheriff's Office Policies and Procedures, "Use of the Safety Cell", Policy No. C-100, Maximum-Medium Facility Manager, Revised 2-16-08

8.    Kern County Sheriff's Office, Policies and Procedures, "Use of a Safety Cell" Policy No. D-200, Central Receiving Facility, Policies and Procedures Manual

9.    Kern County Sheriff's Office, Policies and Procedures, "Suicide Watch",  Policy No. D-400, Central Receiving Facility Policies and Procedures Manual

10.   Decedent's employment records from Grimmway Enterprises, Inc. (63 pages)

11.   Photographs of Decedent and Plaintiff.

12.   Card from Decedent to Plaintiff

Defendants' List of Exhibits:

Defendants intend to offer some, or all, of the following exhibits:

1.    Kern County Sheriff's Office, Incident/Investigation Report & Supplemental reports, Case No. SR13-22293 (28 pages);

2.    Crime Scene Access Log;

3.    Inmate Observation Log (Suicide Watch Log);

4.    B-Deck Red Log Book -  Book B-Deck: Shifts 2300-700 and 700-1500;

5.    Bathe Interview by Colbert - JC1: Compact Disk;

6.    Ayala Interview by Dorkin - MD1: Compact Disk;

7.    Tolle Interview by Dorkin - MD1:Compact Disk;

8.    Morgan Interview by Dorkin - MD1:Compact Disk;

13

9.      Collier Interview by Dorkin - MD1:Compact Disk;

10.     Saldana Interview by Dorkin - MD1:Compact Disk;

11.     TI photographs – scene;

12.     Autopsy Report;

13.     CJIS records/booking records; and

14.     Kern County Sheriff's Office policies, identified by Plaintiff above.

**DISCOVERY DOCUMENTS**

Plaintiff's Statement:

The Plaintiff anticipates that he may introduce portions of depositions and or written discovery responses for impeachment and or substantive purposes during the course of the trial.

Defendants' Statement:

Defendants reserve the right to introduce Plaintiff's responses to interrogatories, document requests and depositions as admissions of a party opponent.  Defendants also intend to use the depositions taken in this matter for all purposes allowed under the Federal Rules of Civil Procedure and Evidence.

**FURTHER DISCOVERY OR MOTIONS**

Plaintiff's Requests:

The Plaintiff does not anticipate requesting any further discovery or proceeding with any other motions other than Motions in Limine.

Defendants' Requests:

Defendants do not anticipate filing any motions other than normal pretrial motions and motions in limine.  However, defendants currently have a motion for summary judgement and/or adjudication under submission.  The resolution of this motion may alter the issues and evidence that Defendants seek to present at trial.

**STIPULATIONS**

The parties are not requesting or offering any stipulations for pretrial or trial purposes at this time.

///

14

**AMENDMENTS - DISMISSALS**

Plaintiff's Requests:

There are no requested amendments and or dismissals by Plaintiff.

Defendants' Requests:

Defendants do not anticipate any further amendment of pleadings, addition of parties, or dismissal of parties.

**SETTLEMENT NEGOTIATIONS**

Plaintiff's Position:

A settlement conference has not been conducted by the Magistrate Judge as the Parties believed that it would be desirous to have a Motion for Summary Judgment heard and ruled upon in advance of any settlement discussions.  There have been no settlement discussions other than a demand and offer being exchanged.  They were so distant from each other that it was futile to pursue settlement further.

The Plaintiff would be willing to attend a settlement conference conducted by the Magistrate Judge.

Defendants' Position:

Defendants do not believe that either further settlement negotiations between themselves and Plaintiffs, or a court settlement conference, would be helpful to a resolution of this action, prior to the Court's ruling on Defendants' motion for summary judgment and/or summary adjudication of issues.

**AGREED STATEMENTS**

Plaintiff's Position:

The Plaintiff does not believe that the case could be presented by way of "Agreed Statement."

Defendants' Position:

Defendants do not believe that the presentation of all or part of this case upon an Agreed Statement of Facts is feasible or advisable

///

15

Joint Pretrial Statement

1                             **SEPARATE TRIAL OF ISSUES**

2          The Plaintiff does not request a separate trial of any issue.

3          Defendants request bifurcation of the *Monell* liability issues and the punitive damage

4 claims against the Defendant deputies.

5                  **IMPARTIAL EXPERTS - LIMITATION OF EXPERTS**

6 Plaintiff's Position:

7          The Plaintiff does not believe that the Court should appoint any impartial experts.

8 Defendants' Position:

9          Defendants do not believe that either the appointment of impartial expert witnesses or a

10 limitation on the number of expert witnesses expected to testify at trial is advisable in this case.

11                              **ATTORNEYS' FEES**

12 Plaintiff's Statement:

13          If Plaintiff prevails on the 42 U.S.C. § 1983 causes of action alleged in the First

14 Amended Complaint, Plaintiff will file a motion for an award of attorneys' fees pursuant to 42

15 U.S.C. § 1988 within twenty-eight days after entry of final judgment.

16 Defendants' Statement:

17          Defendants are also seeking costs and attorney fees pursuant to 42 U.S.C. §1988 should

18 they prevail in this action.

19                              **TRIAL EXHIBITS**

20 Plaintiff's Position:

21          The Plaintiff does not believe that there should be any special handling of trial exhibits.

22 Defendants' Position:

23          Defendants do not anticipate that any special handling of trial exhibits will be required.

24 Defendants are amenable to the Court retaining the trial exhibits pending any appeal and decision

25 on appeal.

26                        **TRIAL PROTECTIVE ORDER**

27 Plaintiff's Statement:

28          No Trial Protective Order will by sought by Plaintiff.

Joint Pretrial Statement

1  Defendants' Statement:

2       Defendants will not be seeking a trial protective order pursuant to L.R. 141.1(b)(2).

3                                    **MISCELLANEOUS**

4  Plaintiff's Statement:

5       Plaintiff has no miscellaneous items.

6  Defendants' Statement:

7       Defendants have no further comments, suggestions, or information that would aid in the

8  disposition of this action.

9

10  Dated: May 9, 2016                    THERESA A. GOLDNER,
                                          COUNTY COUNSEL
11

12
                                          By:   /s/ Marshall S. Fontes              .
13                                              Marshall S. Fontes, Deputy
                                                Attorneys for Defendants, County of Kern, Deputy
14                                              Jason Ayala and Deputy Joshua Bathe

15

16

17

18  Dated: May 9, 2016                    LAW OFFICES OF
                                          GARROTTO & GARROTTO
19

20
                                          By:   /s/ Greg Garrotto              .
21                                              Greg Garrotto, Esq.
                                                Attorney for Plaintiff, Keanu Ethan Campos, a
22                                              minor, by and through his Guardian ad Litiem,
                                                Deniz Gonzalez
23

24

25  #22N7339

26

27

28

                                          17

Joint Pretrial Statement