1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEANU ETHAN CAMPOS,                         No.  1:14-cv-01099-DAD-JLT

12                  Plaintiff,

13            v.                                  ORDER GRANTING DEFENDANTS'
                                                 MOTION FOR SUMMARY JUDGMENT IN
14   COUNTY OF KERN, et al.,                     PART AND DENYING IN PART

15                  Defendants.                  (Doc. No. 36)

16

17

18          This matter came before the court on March 15, 2016, for hearing of defendants' motion

19   for summary judgment.  At that hearing, Deputy County Counsel Marshall Fontes appeared

20   telephonically on behalf of the defendants, County of Kern, Jason Ayala, and Joshua Bathe, and

21   attorney Greg W. Garotto appeared telephonically on behalf of plaintiff, Keanu Ethan Campos.

22   Oral argument was heard and defendants' motion was taken under submission.

23          For the reasons set forth below, defendants' motion for summary judgment will be granted

24   in part and denied in part.

25                                 FACTUAL BACKGROUND

26          The evidence before the court on summary judgment establishes the following.  On

27   August 8, 2013, plaintiff's father, Luis Gabriel Campos ("decedent"), was arrested and booked

28   into the Kern County Jail Receiving Facility ("Kern County Jail") as a pre-trial detainee.  (Doc.

                                                1

No. 19 at 3.)  Decedent had a history of exhibiting suicidal behavior, and had been placed on suicide watch during his prior incarcerations at the Kern County Jail which occurred in 2012. (Doc. No. 40-10.)  After being arrested and booked into the county jail on August 8, 2013, the decedent harmed himself by intentionally hitting his head against his cell bar doors, and was subsequently moved to a padded cell located in the basement of the Kern County Jail.  (Doc. No. 36-5 at 90–91.)

On the morning of August 10, 2013, decedent was moved to the Kern County Jail B-Deck.  (*Id.* at 90.)  B-Deck is an area of the jail that houses both general population inmates and detainees on suicide watch.  (*Id.* at 97–98.)  The area has three primary suicide cells designated as: B4-1, B4-2, and B4-3, located along the No. 4 hallway of the facility.  (*Id.* at 87.)  Cells B4-2 and B4-3 have loop cameras that monitor those cells, but cell B4-1 does not.  (Doc. No. 40-7 at 8.)  Decedent was placed in cell B4-1.  (Doc. No. 36-5 at 90–91.)

Kern County Jail has policies in place addressing procedures with respect to suicidal detainees.  (Doc. No. 38 at 8, ¶ 20.)  Those policies require that such inmates wear paper clothing and that Kern County Jail officers monitor suicidal prisoners twice every thirty minutes, recording their observations in an inmate observation logbook.  (*Id.* at 9–10, ¶¶ 22, 24.)

Deputies Sean Collier and Christopher Saldana were working in the B-Deck area from 11 p.m. August 9, 2013, to 7 a.m. August 10, 2013, when decedent was transferred to cell B4-1.  (*Id.* at 11, ¶¶ 25–26.)  Deputies Collier and Saldana monitored decedent twice every thirty minutes and noted their observations of him in an inmate observation logbook.  (*Id.* at 16, ¶ 41.)  Deputy Saldana performed the last shift check of decedent in his cell at 6:52 a.m. on August 10, 2013. (*Id.* at 17, ¶ 42.)

At 7:00 a.m., Deputies Ayala and Bathe relieved Deputies Saldana and Collier on the B-Deck.  (*Id.* at 21, 24, ¶¶ 52, 60.)  Deputy Ayala performed a face count of all detainees on B-Deck at the beginning of that shift, and has declared that he observed decedent laying on his bed, apparently asleep, at that time.  (Doc. No. 36-5 at 25–28.)  Deputy Ayala then obtained the nursing call list, and went to visit decedent's cell to ask if he still wanted to be seen by a nurse. (*Id.* at 32.)  At that time, approximately 7:07 a.m. on August 10, 2013, Ayala found decedent

1    sitting in his cell with a cord noose fastened around his neck and tied to the cell bars.  (*Id.* at 36;

2    Doc. No. 40-2 at 3–4.)  The noose was fashioned from a section of the electrical cord of a fan

3    located in the hallway outside of decedent's cell.  (Doc. No. 40-2 at 9.)  The fan had part of a

4    black electrical cord attached to it, but the end not attached to the fan was frayed with the wires

5    exposed and had grey duct tape wrapped around it.  (Doc. No. 40-2 at 9.)  The cell bars of

6    decedent's cell were measured to be thirty five inches from the vertical pole of the fan, (Doc. No.

7    40-2 at 9), and eighteen inches from the portion of the fan closest to the cell, (Doc. No. 40-7 at 5).

8    Deputy Ayala immediately called a medical priority and, together with Deputy Bathe, unfastened

9    the cord from decedent's neck and lowered him to the floor.  (Doc. Nos. 38 at 24, 27–28, ¶¶ 59,

10   68, 70; 40-2 at 5.)  Deputy Bathe began administering CPR until the nurse arrived at 7:26 a.m.

11   and took over resuscitative measures.  (Doc. Nos. 38 at 27–8, ¶¶ 68, 70; 40-2 at 4.)  Decedent was

12   declared dead at 7:43 a.m.  (Doc. No. 40-2 at 5.)

13                                    PROCEDURAL HISTORY

14          On October 9, 2014, plaintiff filed his First Amended Complaint ("FAC") in this action,

15   bringing claims against the County of Kern as well as deputies of the Kern County Sheriff's

16   Department.  (Doc. No. 19.)  Therein, plaintiff asserts claims against individual defendant

17   deputies under 42 U.S.C. § 1983 premised on alleged infringement of decedent's Eighth[1] and

18   Fourteenth Amendment rights, as well as violations of plaintiff's own Fourteenth Amendment

19   right to be free from unwarranted interference in family relationships.  (*Id.* at 1, 8–9.)  In addition,

20   plaintiff's FAC includes a § 1983 claim for municipality liability against Kern County.  (*Id.* at 7.)

21   Finally, the FAC asserts a wrongful death claim against all defendants under California Code of

22   Civil Procedure § 377.60.  (*Id.* at 8.)

23

24   [1]  In his FAC plaintiff alleges that defendants deprived decedent of "his constitutional rights
     guaranteed under the Fourth Amendment to the United States Constitution which prohibit (sic)
25   cruel and unusual punishment."  (Doc. No. 19 at 7, ¶ 28.).  In so alleging, plaintiff misidentifies
     the basis of his constitutional claims.  As will be addressed in more detail below, plaintiff's
26   actionable § 1983 claim arises under the Due Process Clause of the Fourteenth Amendment and
     the pending motion will be addressed in light of the law governing such a claim.  *See Castro v.*
27   *County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc) (citing *Bell v. Wolfish*,
28   441 U.S. 520, 535 (1979)).

1      Plaintiff seeks to recover funeral and burial expenses, special damages, and punitive

2  damages pursuant to California's survival statute, California Civil Procedure Code § 377.34.  (*Id.*

3  at 9.)  Plaintiff also seeks damages under California's wrongful death statute, California Civil

4  Procedure Code § 377.61, and the award of attorney's fees pursuant to 42 U.S.C. § 1988.  (*Id.*)

5      On February 10, 2016, defendants filed a motion for summary judgment.  (Doc. No. 36.)

6  Plaintiff filed his opposition on February 29, 2016.  (Doc. Nos. 37–39.)  Defendants filed their

7  reply on March 8, 2016.  (Doc. No. 41.)  Following the hearing on March 15, 2016, the court

8  directed the parties to file additional briefing clarifying their positions on summary judgment with

9  respect to plaintiff's wrongful death claims.  (Doc. No. 44.)  Defendants filed their supplemental

10  brief on March 24, 2016, (Doc. No. 45), and plaintiff filed their opposition thereto on March 30,

11  2016, (Doc. No. 48).

12                           PARTIES' ARGUMENTS

13      Defendants advance six arguments in support of their motion for summary judgment.

14  First, defendants seek summary judgment in their favor as to plaintiff's survival claims based on

15  alleged violations of the decedent's constitutional rights, arguing that the evidence on summary

16  judgment establishes that the individual defendants did not demonstrate deliberate indifference to

17  decedent's condition.  (Doc. No. 41.)  Second, defendants seek judgment in their favor on

18  plaintiff's § 1983 claims based on violations of plaintiff's own Fourteenth Amendment right to

19  familial association, arguing that there is no evidence that defendants had the requisite purpose to

20  harm.  (Doc. No. 36-1 at 2.)  Third, defendants argue that, even if plaintiff could demonstrate a

21  violation of constitutional rights, the individual defendants are entitled to qualified immunity.

22  (*Id.*)  Fourth, defendants argue that plaintiff has not come forward on summary judgment with

23  any evidence of unconstitutional policies, practices, or customs, sufficient to support a claim of

24  municipal liability against defendant Kern County.  (*Id.*)  Finally, defendants argue that summary

25  judgment should be granted in their favor as to plaintiff's state law wrongful death claims.  (Doc.

26  No. 45.)[2]

27

28  [2]  In their supplemental brief, defendants clarify this latter argument as follows.  First, defendants argue plaintiff has not come forward with sufficient evidence on summary judgment to

1    In opposing defendants' motion for summary judgment, plaintiff advances the following

2 arguments.  (Doc. No. 37.)  First, plaintiff contends that the evidence on summary judgment

3 reflects that defendants did demonstrate deliberate indifference to decedent's constitutional rights

4 by failing to adequately monitor him while he was on suicide watch.  (*Id.* at 8–10.)  Second,

5 plaintiff argues that the individual defendants are not entitled to qualified immunity because a

6 constitutional right was violated and no reasonable officer could believe that defendants' actions

7 were lawful.  (*Id.* at 15–16.)  Third, plaintiff asserts there was a longstanding custom or practice

8 of failing to follow Kern County Jail policies with respect to suicidal inmates, as well as an

9 inadequate training program for Kern County Sheriff's officers overseeing suicidal detainees at

10 the jail and suggests that the county's policies and jail design was deficient.  (*Id.* at 13–15.)

11 Finally, in the supplemental opposition brief, plaintiff refutes defendants' arguments concerning

12 the wrongful death claims, arguing that the evidence before the court on summary judgment

13 establishes that defendants Ayala and Bathe were negligent, and that liability against these

14 defendants is not precluded by state law immunity for public entities under either California

15 Government Code § 844.6(a)(2) or § 845.2.  (Doc. No. 48 at 3–5.) [3]

16                                LEGAL STANDARDS

17    Summary judgment is appropriate when the moving party "shows that there is no genuine

18 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

19 Civ. P. 56(a).

20    On a motion for summary judgment, the moving party "initially bears the burden of

21 proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Securities Litigation*,

---

23 demonstrate a breach of a duty owed by defendants. (Id. at 3.)  In addition, defendants argue that
plaintiff cannot prove causation, since the decedent's suicide was an intentional, intervening act.

24 (Id. at 4.)  Third, defendants argue that liability against the county is precluded by California
Government Code § 844.6(a)(2) (providing public entity immunity for injury to prisoners) and §

25 845.2 (providing public entity immunity from liability for injuries proximately caused by a failure
to provide "sufficient equipment, personnel or facilities" within a prison, jail, or penal or

26 correctional facility).  (Id. at 3.)

27

28 [3] In opposing the pending motion for summary judgment plaintiff does not address defendants'
arguments concerning the Fourteenth Amendment right to familial association.  (*Id.*)

5

1    627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

2    The moving party may meet its burden by "citing to particular parts of materials in the record,

3    including depositions, documents, electronically store information, affidavits or declarations,

4    stipulations (including those made for purposes of the motion only), admission, interrogatory

5    answers, or other materials" or by showing that such materials "do not establish the absence or

6    presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

7    support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

8        When the non-moving party bears the burden of proof at trial, "the moving party need

9    only prove that there is an absence of evidence to support the nonmoving party's case."  *Oracle

10   Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

11   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

12   against a party who fails to make a showing sufficient to establish the existence of an element

13   essential to that party's case, and on which that party will bear the burden of proof at trial.  *See

14   Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

15   nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a

16   circumstance, summary judgment should be granted, "so long as whatever is before the district

17   court demonstrates that the standard for entry of summary judgment, . . ., is satisfied."  *Id.* at 323.

18       If the moving party meets its burden, the burden then shifts to the opposing party to

19   demonstrate the existence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v.

20   Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this

21   factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings

22   but is required to tender evidence of specific facts in the form of affidavits, and/or admissible

23   discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P.

24   56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

25   contention is material, i.e., a fact that might affect the outcome of the suit under the governing

26   law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v.

27   Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

28   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

When evaluating the evidence to determine whether there is a genuine issue of fact, the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa Cty. Transit Authority*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

ANALYSIS

**I.     <u>Standing</u>**

In dismissing plaintiff's original complaint with leave to amend, the previously assigned district judge concluded that plaintiff had failed to state a claim that he had suffered a constitutional injury. (Doc. No. 17 at 6.) Accordingly, before turning to defendants' motion for summary judgment, the court will first address the question of plaintiff's standing. "Standing is the determination of whether a specific person is the proper party to bring a particular matter to the court for adjudication," and a federal court is obliged to examine plaintiffs' standing pursuant to Article III of the United States Constitution regardless of whether or not the issue is raised by the litigants. *See* Erwin Chemerinsky, Federal Jurisdiction § 2.3, at 48 (1989); *see also Juidice v. Vail*, 430 U.S. 327, 331 (1977).

/////

7

Plaintiffs generally have standing to assert claims for the violation of their own legal rights and do not have standing to assert claims for the violations of the legal rights of other persons. *See Ollier v. Sweetwater Union High School Dist*, 768 F.3d 843 (9th Cir. 2014) (noting that, to establish Article III standing, a plaintiff must allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by the requested relief); *United States v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2006) (explaining that "[p]rudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights'") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  However, there are exceptions to this general rule.  For instance, an heir has standing to bring a § 1983 claim on a deceased person's behalf if permitted by the law of the state embracing the federal district court where the action is commenced.  *See Ramírez–Lluveras v. Pagan-Cruz*, 833 F. Supp. 2d 151, 157 (D. P. R. 2011) (citing *Robertson v. Wegmann*, 436 U.S. 584 (1978)).  The party seeking to bring a survival action bears the burden of demonstrating that the applicable state's law authorizes a survival action, and that plaintiff meets that state's requirements for bringing such an action.  *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Under California law, a survival action may be commenced by a decedent's successor in interest.  Cal. Civ. Proc. Code § 377.30 (stating that "[a] cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest"); *see also Schwarder v. United States*, 974 F.2d 1118, 1123 n.3 (9th Cir. 1992).  A decedent's heir may therefore bring an action based upon claims the decedent would have been entitled to file for the decedent's own injuries.  *See* Cal. Civ. Proc. Code § 377.10.  To bring such an action, a plaintiff must allege that they are bringing the survival claim in their representational capacity.  *Hayes v. Cnty. Of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013) (dismissing case, in part, because plaintiff claimed to be decedent's "sole surviving heir," but "failed to allege [being] her father's personal representative or successor in interest"); *Moreland*, 159 F.3d at 371 (dismissing case because "appellants did not allege in their complaint that they brought their claims in a representative capacity").  Additionally, once a plaintiff brings a survival cause of action, the plaintiff may properly join that action with a claim for wrongful death arising out of

1  the same wrongful act or neglect, California Civil Procedure Code § 377.62(a), and may thereby

2  bring claims to recover for injuries of the plaintiff caused by decedent's death.  Cal. Civ. Proc.

3  Code § 377.60.

4  In his FAC, plaintiff brings § 1983 claims alleging violations of his own rights.  (Doc. No.

5  19.)  Plaintiff also brings survival claims alleging violations of decedent's legal rights under

6  § 1983, specifically noting that he brings such claims as "the child, next of kin, heir at law, and

7  Successor in Interest" of the decedent.  (*Id.* at 1.)  Plaintiff has joined a wrongful death claim to

8  the action.  (*Id.*)  Because plaintiff alleges violations of his own legal rights based on defendants'

9  allegedly unlawful conduct, and because the FAC alleges that plaintiff brings this action in his

10  capacity as successor in interest to his father's estate, plaintiff meets federal standing

11  requirements with respect to his § 1983 claims, and may also properly join these claims with a

12  wrongful death claim.  (*Cf.* Doc. No. 17) (dismissing plaintiff's original complaint because "this

13  Court can find no basis for interpreting the Complaint as alleging that Plaintiff brings the case in

14  his capacity as successor in interest to his father's estate").

15  **II.   Section 1983 claims against individual defendants**

16  Plaintiff has brought this action in federal court pursuant to the Civil Rights Act which

17  provides as follows:

18  
19  
20  

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

21  42 U.S.C. § 1983.  To make out a valid claim under § 1983, a plaintiff must allege and show that

22  (i) the conduct complained of was committed by a person acting under color of state law, and

23  (ii) this conduct deprived a person of constitutional rights.  *See Monell v. Department of Social*

24  *Servs.*, 436 U.S. 658, 690–695 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370–371 (1976); *see also*

25  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "A person 'subjects' another to the

26  deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act,

27  participates in another's affirmative acts or omits to perform an act which he is legally required to

28  do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743

1  (9th Cir. 1978); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012).

2         In moving for summary judgment in their favor with respect to the § 1983 claims brought

3  against them, the individual defendants advance the following arguments:  (i) plaintiff cannot

4  demonstrate a violation of the decedent's Fourteenth Amendment due process rights, because

5  defendants did not act with deliberate indifference to the decedent, (Doc. No. 36-1 at 2);

6  (ii) plaintiff cannot demonstrate a violation of the plaintiff's own Fourteenth Amendment rights to

7  familial association, because defendants did not have the requisite purpose to harm, (Doc. No. 36-

8  1 at 2); and (iii) defendants, in any event, are entitled to qualified immunity,  (*Id.*).

9         **a.   Plaintiff's Constitutional Claim: Eighth or Fourteenth Amendment**

10         Claims that jail officials have violated a pretrial detainee's constitutional rights by failing

11  to address the detainee's medical needs, including those related to suicide prevention, are

12  analyzed under the deliberate indifference standard.  *See Clouthier v. County of County of Contra

13  Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010), *overruled in part by Castro v. County of Los

14  Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc).  A convicted prisoner's claim in this

15  regard arises under the Cruel and Unusual Punishment Clause of the Eighth Amendment.  *Castro*,

16  833 F.3d at 1067; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–244 (1983).  A

17  pretrial detainee's § 1983 claim of deliberate indifference arises instead, however, under the Due

18  Process Clause of the Fourteenth Amendment.  *Castro,* 833 F.3d at 1067-68 (citing *Bell v.

19  Wolfish*, 441 U.S. 520, 535 (1979)); *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017

20  (9th Cir. 2010); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1414 (9th Cir. 1986).

21         As noted above, in alleging his constitutional claim as the surviving heir of the decedent

22  plaintiff's FAC erroneously makes reference to the Fourth, Eighth and Fourteenth Amendments.

23  Indeed, this court previously dismissed the Eighth Amendment claim set forth in plaintiff's

24  original complaint without leave to amend.  (Doc. No. 17 at 3–4.)  Accordingly, plaintiff is

25  precluded from asserting the previously dismissed Eighth Amendment claims in his FAC.  *See

26  Headwaters, Inc. v. U.S. Forest Services*, 388 F.3d 1047, 1055 (9th Cir. 2005).  Rather, plaintiff is

27  proceeding here, pursuant to §1983, on a Due Process Clause claim under the Fourteenth

28  /////

10

1    Amendment.[4]

2         This distinction between deliberate indifference claims brought under the Fourteenth

3    Amendment as opposed to the Eighth Amendment has taken on added significance in light of the

4    relatively recent decisions in *Kinglsey v. Hendrickson*, ___U.S.___, 135 S. Ct. 2466 (2015) and

5    *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).  While at one time

6    perhaps unclear, it is now established that the tests for what constitutes deliberate indifference are

7    different under the two clauses.  *Castro*, 833 F.3d at 1071.  While the test under the Eighth

8    Amendment contains a subjective component (i.e. the defendants acted with "a sufficiently

9    culpable state of mind," that is with "deliberate indifference"), the test under the Fourteenth

10   Amendment is "purely objective."  *Castro*, 833 F.3d at 1071 ("Under *Kingsley*, a pretrial detainee

11   need not prove those subjective elements about the officer's actual awareness of the level of

12   risk."); *see also Kinglsey*, 135 S. Ct. at 2472-73.  In particular, the Ninth Circuit in *Castro* stated

13   that the elements of a pretrial detainee's Fourteenth Amendment claim for deliberate indifference

14   against an individual deputy are:

15   16          (1) The defendant made an intentional decision with respect to the
                 conditions under which the plaintiff was confined;

17              (2) Those conditions put the plaintiff at substantial risk of suffering
                 serious harm;

18   19         (3) The defendant did not take reasonable available measures to
     20         abate that risk, even though a reasonable officer in the
                 circumstances would have appreciated the high degree of risk
                 involved—making the consequences of the defendant's conduct
                 obvious; and

21   22         (4) By not taking such measures, the defendant caused the
                 plaintiff's injuries.

23              With respect to the third element, the defendant's conduct must be
                 objectively unreasonable, a test that will necessarily "turn[ ] on the
     24         'facts and circumstances of each particular case.'"  *Kingsley*, 135 S.
                 Ct. at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.
                 Ct. 1865, 104 L.Ed.2d 443 (1989)); see also Restatement (Second)

25   _____

26   [4]  The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life,
     liberty, or property, without due process of law."  U.S. Const. amend. 14 § 1.  Fourteenth
27   Amendment protections cover a procedural as well as a substantive sphere, such that they bar
     certain government actions regardless of the fairness of the procedures used to implement them.
28   *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).

of Torts § 500 cmt. a (Am. Law Inst. 2016) (recognizing that "reckless disregard" may be shown by an objective standard under which an individual "is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it").

833 F.3d at 1071; *see also Darnell v. Pineiro*, ___F.3d___, 2017 WL 676521, at *14–15 (2d Cir. Feb. 21, 2017) (concluding that "*Kingsley's* broad reasoning extends beyond the excessive force context in which it arose" and announcing "we join the . . . Ninth Circuit, which, . . . likewise interpreted *Kingsley* as standing for the proposition that deliberate indifference for due process purposes should be measured by an objective standard"); *Osegueda v. Stanislaus County Public Safety Center,* No. 1:16-CV-1218-LJO-BAM, 2017 WL 202232, at *5 (E.D. Cal. Jan. 17, 2017); *Carrasquilla v. County of Tulare*, No. 1:15-CV-00740-BAM, 2016 WL 7475702, at *3–4 (E.D. Cal. Dec. 27, 2016); *Weishaar v. County of Napa*, No. 14-cv-01352-LB, 2016 WL 7242122, *7 (N.D. Cal. Dec. 15, 2016).  Under this test, "a pretrial detainee who asserts a due process claim" must "prove more than negligence but less than subjective intent—something akin to reckless disregard."  *Castro*, 833 F.3d at 1071.

Here, the defendants move for summary judgment with respect to plaintiff's Fourteenth Amendment claims, arguing that he has not demonstrated that individual defendants were deliberately indifferent to the decedent's medical needs in violation of decedent's Fourteenth Amendment right to adequate medical care during his detention.  (Doc. No. 36.)  Specifically, defendants argue that plaintiff has not come forward at summary judgment with any evidence showing that defendants Ayala and Bathe possessed a subjective awareness of decedent's serious medical needs.  (Doc. No. 36-1 at 6–7.)  In support of this contention on summary judgment, defendants offer three forms of evidence:  deposition testimony from Deputy Ayala, who explains that he arrived on duty at 7:00 a.m., shortly before Deputy Bathe, and that he only interacted with decedent once during face count before discovering decedent had hung himself, (Doc. No. 36-5 at 22–27); deposition testimony from Deputy Bathe, who explains that he began his shift shortly before being alerted to decedent's suicide and had not interacted with decedent before then, (Doc. No. 36-5 at 62, 69–71); and inmate observation logs for decedent covering August 8, 2013, to August 10, 2013, which support the deputies' deposition testimony, and provide no indication

1   that decedent posed an imminent risk of suicide, (Doc. No. 36-6 at 2–3).  (Doc. No. 36-1 at 7.)

2   Defendants also argue that, regardless of whether plaintiff's evidence supports a subjective

3   awareness of decedent's serious medical needs, plaintiff has not come forward with any evidence

4   that defendants willfully disregarded any such risk.  (Doc. No. 36-1 at 7–8.)  The evidence before

5   relied upon by defendants with respect to the issue of willful disregard, consists of:  Deputy

6   Ayala's deposition testimony explaining that he discovered that the decedent had hung himself

7   only seven minutes after beginning his shift and reacted to the discovery by immediately radioing

8   for a medical priority, (Doc. No. 36-5 at 22–27); Deputy Bathe's deposition testimony,

9   corroborating Deputy Ayala's testimony, and explaining that Bathe began administering CPR on

10  decedent until the nurse's arrival, (Doc. No. 36-5 at 70–71); and inmate observation logs

11  reflecting that decedent had been routinely monitored up until the time of his suicide, (Doc. No.

12  36-6 at 2–3).

13        In opposing defendants' motion for summary judgment, plaintiff contests defendants'

14  arguments concerning deliberate indifference, arguing that both deputies were subjectively aware

15  of decedent's serious mental health needs and that they willfully disregarded those needs.  (Doc.

16  No. 37 at 8–11.)  With respect to the issue of subjective awareness, plaintiff offers the following

17  evidence:  medical records showing that decedent had previously been placed on suicide watch,

18  (Doc. No. 40-10); deposition testimony from Deputy Collier, who was working on B-Deck from

19  11 p.m. on August 9, 2013, to 7 a.m. on August 10, 2013, that he knew decedent had injured

20  himself by hitting his head against cell bar doors before being transferred to cell B4-1 on August

21  10, 2013, (*Id.* at 5); and deposition testimony from Deputy Saldana, who also worked on B-Deck

22  from 11 p.m. on August 9, 2013, to 7 a.m. on August 10, 2013, that he too was aware decedent

23  had engaged in self-harm before being transferred to cell B4-1, (Doc. No. 40-13 at 4–6).  In

24  support of his opposition to summary judgment on the issue of willful disregard, plaintiff points

25  to the Kern County Sheriff's Department incident investigation report, which describes the

26  vertical pole of the fan with the frayed and duct-taped electrical cord that decedent had used to

27  hang himself, as being located only thirty-five inches away from the bars of cell B4-1, (Doc. No.

28  40-2 at 9); the deposition testimony of expert witness Paul Myron, who estimated that the fan was

13

1    located twelve to fifteen feet away from the desk where custodial staff typically remained during

2    their shift, (Doc. No. 40-7 at 6–7); and the deposition testimony of Deputies Ayala and Bathe in

3    which they indicated they were aware an electric fan had been located on the B-Deck in August

4    of 2013, (Doc. No. 36-5 at 20, 56–58).[5]

5            In light of the decisions in *Kingsley* and *Castro* discussed above, the parties' focus on the

6    defendants' subjective awareness of the risk of harm to the decedent is misplaced.  Plaintiff has

7    come forward with evidence on summary judgment indicating that the two defendant deputies

8    were aware of decedent's suicide watch status.  Plaintiff has also pointed to evidence that the

9    deputies were aware of the electric fan being located in the area of the suicide watch cells, where

10   decedent was being detained prior to his suicide.  From this evidence, a reasonable trier of fact

11   could conclude that that these conditions put the decedent at substantial risk of harm, that the

12   defendant officers did not take reasonable available measure to abate the harm even though a

13   reasonable officer under the circumstances would have appreciated the high degree of risk

14   involved, and that by not taking such measures defendants caused the decedent's injuries.  *See*

15   *Castro*, 833 F.3d at 1071.  That is a sufficient showing to defeat summary judgment.

16           Accordingly, the court concludes that defendants are not entitled to summary judgment in

17   their favor on plaintiff's Fourteenth Amendment survivor claims against Deputies Ayala and

18   Bathe.

19           **b.  Fourteenth Amendment Familial Association Claim**

20           The Ninth Circuit recognizes that parents and children may assert a Fourteenth

21   Amendment substantive due process claim if they are deprived of the companionship of their

22   parent through official conduct.  *Lemire v. Cal. Dept. of Corrections and Rehabilitation*, 726 F.3d

23   1062, 1075 (9th Cir. 2013).  However, "only official conduct that 'shocks the conscience' is

24   ─────────────────

25   [5]  The court acknowledges that the case on summary judgment is a somewhat close one.  At oral
     argument, plaintiff's counsel acknowledged that there was, however, no evidence before the court
26   on summary judgment that defendants Ayala and Bathe were personally aware that decedent
     could access the frayed and duct-taped electrical cord of the fan from his cell.  Indeed, plaintiff
27   has come forward with a minimal amount of evidence in support of his claims on summary
     judgment.  Nonetheless, the court concludes that the minimal evidence presented is sufficient to
28   survive defendants' summary judgment in large part.

1    cognizable as a substantive due process violation.  *Cty. of Sacramento v. Lewis*, 523 U.S. 833,

2    847 (1998); *Lemire*, 726 F.3d at 1075; *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

3         Conduct shocks the conscience in circumstances where officers do not have time to

4    deliberate if it involves a "purpose to harm," i.e., a harmful purpose unrelated to legitimate law

5    enforcement objectives.  *Porter v. Osborn*, 546 F.3d 1131, 1137 (2008); *see also A.D. v.*

6    *California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (emphasizing that the "purpose to

7    harm" standard applies to substantive due process claims against officers acting "in circumstances

8    where [they] cannot practically deliberate").  This "purpose to harm" standard establishes a high

9    threshold for plaintiffs to meet in order to establish a Fourteenth Amendment violations, and it

10   acts to prohibit "only the most egregious official conduct."  *Collins v. Harker Heights*, 503 U.S.

11   115, 129 (1992); *see also Finley v. City of Oakland*, No. C 04-5102 MEJ, 2006 WL 269950, at *8

12   (N.D. Cal. Feb. 2, 2006).  Under this standard a plaintiff must do more than show that a

13   government official acted with deliberate indifference.  *Lewis*, 523 U.S. at 849–50.  Moreover,

14   mere negligence is never enough to meet the "purpose to harm" standard.  *Woodrum v.*

15   *Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989); *see also Walsh v. Tehachapi Unified*

16   *School Dist.*, 827 F. Supp. 2d 1107, 1119 (E.D. Cal. 2011).

17        However, an official's deliberately indifferent conduct can also "rise to the conscience-

18   shocking level" sufficient to demonstrate a substantive due process violation, if the official had

19   time to deliberate before acting or failing to act.  *See Tennison v. City and Cty. of San Francisco*,

20   570 F.3d 1078, 1089 (9th Cir. 2009); *Atkinson v. County of Tulare*, 790 F. Supp. 2d 1188, 1208

21   (E.D. Cal. 2011) (noting that "[w]here actual deliberation as to use of force in effecting arrest is

22   practical, an officer's "deliberate indifference" may suffice to shock the conscience); *cf. Cotta v.*

23   *County of Kings*, 79 F. Supp. 3d 1148, 1177 (E.D. Cal. 2015).

24        To evaluate whether or not official conduct rises to a conscience-shocking level, courts

25   look at the totality of the circumstances.  *Porter*, 546 F.3d at 1141; *see also Lewis*, 523 U.S. at

26   850 (observing that "deliberate indifference that shocks in one environment may not be so

27   patently egregious in another, and our concern with preserving the constitutional proportions of

28   substantive due process demands an exact analysis of circumstances before any abuse of power is

1    condemned as conscience shocking").

2        Here, the defendants move for summary judgment with respect to plaintiff's § 1983

3    claims premised on violations of the plaintiff's Fourteenth Amendment rights to familial

4    association, arguing that the plaintiff has not shown that defendants acted with a purpose to harm.

5    In support of this contention, defendants refer back to evidence they offered in arguing for

6    summary judgment with respect to plaintiff's survival claim related to inadequate medical care.

7    (Doc. No. 36-1 at 9)  In his opposition, plaintiff simply does not address defendants' arguments

8    concerning his Fourteenth Amendment claim based on the right to familial association.  (Doc. No.

9    37.)

10        As indicated above, the court has found that triable issues of material fact preclude

11   summary judgment on plaintiff's Fourteenth Amendment survival claim concerning inadequate

12   medical care in the form of suicide prevention.  *See supra* Part II(b).  In light of that conclusion,

13   the court also finds that defendants have failed to establish that they are entitled to summary

14   judgment on the Fourteenth Amendment claim related to violation of the right to familial

15   association.  *See, e.g.*, *Estate of Joshua Claypole v. County of San Mateo*, No. 14-cv-02730-BLF,

16   2016 WL 127450, at *12 (N.D. Cal. Jan. 12, 2016) (denying summary judgment to defendants on

17   plaintiff's Fourteenth Amendment claim based on loss of a parent/child relationship, when triable

18   issues of material fact remained as to plaintiff's deliberate indifference claim) .

19        **c.   Qualified Immunity**

20        Government officials enjoy qualified immunity from civil damages unless their conduct

21   violates clearly established statutory or constitutional rights.  *Jeffers v. Gomez*, 267 F.3d 895, 910

22   (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a court is

23   presented with a qualified immunity defense, the central questions for the court are:  (i) whether

24   the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

25   defendant's conduct violated a statutory or constitutional right; and (ii) whether the right at issue

26   was "clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v.*

27   *Callahan*, 555 U.S. 223, 236 (2009) (holding that the two-part analysis is "often beneficial" but

28   not mandatory).

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 ((2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting *Saucier*, 533 U.S. at 202).  The inquiry must be undertaken in light of the specific context of the particular case. *Saucier*, 533 U.S. at 201.

Plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct.  *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).  If this burden is met by plaintiff, the defendant then bears the burden of establishing that his actions were reasonable, even though they might have violated the plaintiff's federally protected rights.  *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995). "[R]egardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

Defendants Ayala and Bathe argue that they are entitled to qualified immunity with respect to all of plaintiff's claims brought against them under § 1983.  (Doc. No. 36-1 at 10–11). Plaintiff, in opposing summary judgment, contends that defendants are not entitled to qualified immunity, given that "[b]y their actions a reasonable law enforcement officer and department would have known that they were violating . . . constitutional right[s]."  (Doc. No. 37 at 16.)

The court concludes that defendants Ayala and Bathe have failed to establish that they are entitled to summary judgment on qualified immunity grounds as to plaintiff's § 1983 claims.  The court has already found that plaintiffs have presented sufficient evidence upon which a reasonable juror could find that a violation of the decedent and plaintiff's Fourteenth Amendment rights did

1    occur.  *See supra* Part II(b).  Moreover, at the time of decedent's suicide, August 2013, the law

2    regarding the Fourteenth Amendment right to adequate medical care and familial association was

3    clearly established.  *See Estate of Abdollahi v. County of Sacramento*, 405 F. Supp. 2d 1194, 1218

4    (E.D. Cal. 2005) (finding that, in 2003, "the law regarding the fundamental right to be protected

5    from the known risks of suicide in jail and to have serious medical needs attended to were clearly

6    established").  Thus, defendants Ayala and Johnson had "fair warning that their alleged treatment

7    of [decedent] was unconstitutional."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also*

8    *Clouthier*, 591 F.3d at 1254 (finding that "a reasonable official would have known" that acting

9    "deliberately indifferent to a substantial risk of serious harm" to a suicidal decedent "amounted to

10   a constitutional violation").

11          Accordingly, given that there are triable issues of fact as to whether defendants Ayala and

12   Bathe were deliberately indifferent to the serious medical needs of decedent, and because

13   defendants had notice that such alleged conduct was unconstitutional, the court cannot find that

14   these individual defendants are entitled to qualified immunity on summary judgment.

15   **III.    *Monell* Liability**

16          Municipalities and local government units may be sued under § 1983 for violation of

17   one's constitutional rights.  *Monell v. Dep't of Soc. Services. of City of New York*, 436 U.S. 658,

18   690 (1978) (stating that "[mu]nicipalities and other local government units . . . [are] among those

19   persons to whom § 1983 applies").  However, a municipal entity or its departments is liable under

20   § 1983 only if a plaintiff can show that their constitutional injury was caused by employees acting

21   pursuant to the municipality's policy or custom.  *Id*. at 690–694; *Villegas v. Gilroy Garlic*

22   *Festival Association*, 541 F.3d 950, 964 (9th Cir. 2008).[6]

23          A plaintiff can demonstrate the existence of an unlawful municipal policy by presenting

24   evidence of:  (i) a facially unconstitutional government policy, or an unconstitutional,

25   "longstanding practice or custom which constitutes the standard operating procedure of the local

26   government entity"; (ii) a violation caused by an individual with final policy-making authority;

27   _____

28   [6]  Of course, there is no *respondeat superior* liability under § 1983.  *Monell*, 436 U.S. at 691; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

1  (iii) an individual with final policy-making authority ratifying a subordinate's unconstitutional

2  action and the basis for it.  *Gillette v. Delmore*, 979 F.2d 1342, 1346–7 (9th Cir. 1992); *see also*

3  *Monell*, 436 U.S. at 708.  After proving that one of these three circumstances exists, a plaintiff

4  must also present evidence that the circumstance was the direct and proximate cause of the

5  constitutional deprivation.  *City of Canton v. Harris* 489 U.S. 378, 389 (1989); *Trevino v. Gates*,

6  99 F.3d 911, 918 (9th Cir. 1996).

7  　　　　In order for a municipality to be liable under § 1983 for a practice or custom, the custom

8  in question must be so "persistent and widespread" that it constitutes "permanent and well-settled

9  city policy," *Trevino*, 99 F.3d at 918.  Evidence of a single constitutional violation is ordinarily

10  insufficient to establish a longstanding practice or custom.  *Christie v. Lopa*, 176 F.3d 1231, 1235

11  (9th Cir. 1999); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–1234 (9th Cir. 1989); *see also*

12  *Trevino*, 99 F.3d at 918 (explaining that evidence of "sporadic incidents" is insufficient to

13  establish municipal liability under § 1983).  To support a claim of municipal liability under

14  § 1983, the custom must also have been adopted in deliberate indifference to the rights asserted

15  by the plaintiff.  *Bryan County v. Brown*, 520 U.S. 397, 403–404, 407 (1997) (noting that

16  "'deliberate indifference' is a stringent standard of fault).

17  　　　　In limited circumstances, a local government's failure to train or supervise employees may

18  rise to the level of official government policy for purposes of supporting a § 1983 violation.

19  *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (stating that a local governmental entity

20  may violate § 1983 if it has a "policy of inaction and such inaction amounts to a failure to protect

21  constitutional rights"); *cf. Connick v. Thompson*, 53 U.S. 51, 61 (2011) (observing that "[a]

22  municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a

23  failure to train").  A pattern of similar constitutional violations by untrained employees is

24  "ordinarily necessary" to demonstrate a persistent and widespread municipal policy of inadequate

25  training.  *Bryan County*, 520 U.S. at 409.  Furthermore, a municipality can only be liable under

26  § 1983 for a policy of inadequate training when the failure to train is deliberately indifferent, that

27  is, where the failure to train reflects a deliberate or conscious choice.  *City of Canton*, 489 U.S. at

28  389–91, 407 (stating that "when city policymakers are on actual or constructive notice that a

19

1   particular omission in their training program causes city employees to violate citizens'

2   constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose

3   to retain that program"); *see also Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (explaining

4   that a city's policy of inaction in light of notice that its program will cause constitutional

5   violations "is the functional equivalent of a decision by the city itself to violate the Constitution");

6   *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014).

7          Here, defendant Kern County argues that it is entitled to summary judgment because

8   "plaintiffs cannot establish a factual basis, as a matter of law, against the county for *Monell*

9   liability." (Doc. No. 36-1 at 11.) Defendant Kern County first contends that "Plaintiff has no

10   evidence of a long standing pattern or practice." (Doc. No. 36-1 at 13.) Defendants have offered

11   the following evidence in support of this contention on summary judgment: (i) Kern County's

12   policies on the care and monitoring of suicidal detainees and suicide watch protocols, which

13   require specific paper clothing to be worn by suicide watch detainees, and obligate jail officers to

14   remove potentially dangerous objects from cells housing suicide watch detainees, to conduct

15   checks on suicidal detainees twice every thirty minutes, and to keep a log of these observations,

16   (Doc. No. 36-6); (ii) inmate observation logs with respect to decedent from August 8, 2013, to

17   August 10, 2013, indicating that decedent was monitored pursuant to county policy until his

18   suicide, (Doc. No. 36-6 at 2–3); (iii) the deposition testimony of Deputies Collier and Saldana,

19   confirming that they conducted routine checks on decedent until 7 a.m. on August 10, 2013, and

20   noting that they each had received training from Kern County on handling suicidal detainees,

21   (Doc. No. 36-5 at 80–86, 110–112); (iv) the deposition testimony of defendants Ayala and Bathe,

22   explaining that they received training from Kern County on handling suicidal detainees, (Doc.

23   No. 36-5 at 18, 52, 72); (v) a declaration from Kern County civil litigation coordinator, Michael

24   Mahoney, reporting that there had never before been a reported suicide or suicide attempt in cell

25   B4-1 of the Kern County Jail, (Doc. No. 36-6 at 3); (vi) a declaration from Kern County

26   Sherriff's lieutenant Adam Plugge, who was assigned to the Central Receiving Facility,

27   corroborating Mahoney's declaration as to the lack of prior suicide attempts in cell B4-1, (Doc.

28   No. 36-8 at 2); and (vii) a declaration from Kern County claims representative, Tom Newell,

1   reporting that there had never been another claim or lawsuit filed against the county for any

2   suicide by a detainee housed in cell B4-1, (Doc. No. 36-7 at 2).[7]

3          Plaintiff's argument in opposition to summary judgment on his Monell claim is somewhat

4   difficult to decipher.  (Doc. No. 37 at 5-6, 11-15.)  On one hand, it appears plaintiff is basing his

5   *Monell* claim on an alleged long-standing pattern and practice, a "systemic failure by staff in

6   following procedures" concerning suicidal detainees, and a failure to adequately train jail

7   personnel.  (*Id*. at 6, 11.)  On the other hand, plaintiff suggests throughout his opposition to the

8   pending motion that defendant Kern County's adopted policies and the design of its suicide watch

9   cells were deficient, thereby subjecting the county to *Monell* liability.  (Id. at 11-12, 14.)  In any

10  event, plaintiff offers the following evidence in opposition to Kern County's motion for summary

11  judgment: deposition testimony of expert Paul Myron describing the configuration of cell B4-1,

12  and explaining loop cameras monitored suicide watch cells B4-2 and B4-3 but not cell B4-1

13  (Doc. No. 40-7 at 8–9); a Kern County Sheriff's Department incident investigation report

14  prepared following decedent's suicide, which does not specifically state that jail personnel

15  searched cell B4-1 before decedent was placed in the cell, (Doc. No. 40-2 at 9); the deposition

16  testimony of Deputies Bathe, Collier, and Saldana, that the officers were aware that there was an

17  electric fan kept in an area adjacent to cell B4-1, (Doc. No. 36-5 at 56–58, 86–87, 117–118); and

18  Kern County medical records purportedly indicating that decedent was never evaluated by a

19  mental health professional, (Doc. No. 40-10 at 107–108).  Plaintiff also disputes the weight of the

20  evidence presented by defendants concerning the absence of prior suicide attempts by inmates

21  housed in cell B4-1 of the Kern County Jail, arguing that "there is no indication in [the

22  declarations presented] as to what time period the records [they] reviewed comprised," or "when

23  said records began and when they ended and the reasons that records were not reviewed before

24  that start date."  (Doc. No. 38 at 13.)

25  /////

26

27  [7] While it may be reasonably questioned why defendants' evidence on summary judgment was
    limited to cell B4-1 and did not include evidence with respect to the entire suicide watch area of
28  the jail, plaintiff did not come forward with any such evidence in opposing summary judgment.

1   Defendant Kern County has presented evidence on summary judgment that it had policies

2   and training programs in place for the protection of suicidal detainees, and that deputies complied

3   with these policies in monitoring the decedent in this case.  Meanwhile, plaintiff has not come

4   forward with any evidence showing that jail personnel disregarded Kern County policies in this

5   instance, much less any evidence that there was "persistent and widespread" violation of such

6   policies.  *Trevino*, 99 F.3d at 918.  Plaintiff has also failed to identify any specific deficiencies in

7   the training provided to Kern County Sheriff's Deputies with respect to suicidal detainees.  Given

8   the lack of evidence of other suicides or county policy violations, the court cannot conclude that

9   the need for more or different training was so obvious, and the inadequacy so likely to result in a

10   violation of constitutional rights, that the county can be said to have been deliberately indifferent.

11   *City of Canton*, 489 U.S. at 390; *Castro*, 833 F.3d at 1076.  Nor has plaintiff presented evidence

12   on summary judgment that any policy adopted by Kern County was the "moving force" behind a

13   deprivation of the decedent's constitutional rights.  *Anderson v. Warner*, 451 F.3d 1063, 1070

14   (9th Cir. 2006).

15   Accordingly, plaintiff has simply failed to establish a triable issue with respect to his

16   theory of liability as to the county under *Monell*.[8]  Based upon the undisputed evidence before the

17   court, defendant Kern County is entitled to summary judgment in its favor with respect to

18   plaintiff's *Monell* claim.

19   **IV.    Wrongful death claims**

20   Under California's Civil Procedure Code § 377.60, a "cause of action for the death of a

21   person caused by the wrongful act or neglect of another may be asserted by . . . the decedent's

22   surviving spouse, domestic partner, [or] children."  A wrongful death action is intended to

23

---

24   [8]  As previously noted, on summary judgment plaintiff has come forward with minimal evidence
     in support of his claims.  *See supra* n.5.  While it is possible that evidence in support of his
25   *Monell* claim might exist, particularly in light of the design of cell B4-1 and the apparent lack of
     loop cameras monitoring that cell as contrasted with suicide watch cells B4-2 and B4-3 (*see*
26   *Garcia*, 833 F.3d at 1075-77), plaintiff has failed to come forward with such evidence on
     summary judgment.  That lack of evidence is dispositive as to plaintiff's *Monell* claim at this
27   stage of the litigation.  *See Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an
     essential element of the nonmoving party's case necessarily renders all other facts immaterial.").
28

1   compensate a decedent's heirs for the losses they have sustained as a result of the death, such as

2   loss of financial support and society. *Garofalo v. Princess Cruises, Inc.*, 85 Cal. App. 4th 1060,

3   1072 (2000). A plaintiff who makes out a valid wrongful death claim under § 377.60 is entitled

4   to damages that are just "under all the circumstances of the death," not including any damages

5   recoverable under California's survival action, such as punitive or exemplary damages. *See* Cal.

6   Civ. Proc. Code § 377.61; *see also Sposato v. Electronic Data Sys. Corp.*, 188 F. 3d 1146, 1149

7   (9th Cir. 1999) (setting forth types of compensatory damages available under California's

8   wrongful death statute); *Provencio v. Defense Technology, Corp. of Am.*, No. 1:07-cv-0651-AWI-

9   DLB, 2007 WL 2177800 at *5 (E.D. Cal. July 27, 2007).

10      In moving for summary judgment as to plaintiff's wrongful death claims, defendants

11   argue: (i) plaintiff cannot demonstrate wrongful death as a matter of law because he has identified

12   no duty of care owed to decedent, has not provided evidence supporting a negligence claim, and

13   cannot demonstrate causation because decedent's suicide was an intentional, intervening act,

14   (Doc. No. 45 at 3–4); and (ii) liability against the county is also precluded by California

15   Government Code § 844.6(a)(2) and § 845.2, (*Id.* at 3).[9] The court analyzes both of these

16   arguments below.

17          a.  **Negligence**

18      Under California law, a plaintiff may bring a wrongful death action against individual

19   defendants by alleging the following elements: (i) a tort (negligence or other wrongful act),

20   (ii) the resulting death, and (iii) the damages, consisting of the pecuniary loss suffered by the

21   _____

22   [9] Defendants initially argued, in addition, that California's "single judgment rule" precluded
    plaintiff from bringing a wrongful death action because he had not joined all of the decedent's

23   heirs to this action. (Doc. No. 19 at 2.) However, in their reply defendants withdrew this
    argument, noting that "[s]hould the instant motion not be granted on all other grounds, defendants

24   will seek an order abating the action." (Doc. No. 41 at 10.) The withdrawal of this argument by
    defendant appears to be well grounded. *See Soltero v. City of Bakersfield*, No. 1:12-cv-01791-

25   LJO-JLT, 2014 WL 6668799, at *2 (E.D. Cal. Nov. 24, 2014) ("[A]n heir may recover against the
    wrongful death action plaintiffs if he is not properly joined in the action."); *see also A.D. v. Cal.*

26   *Highway Patrol*, No. C-07-5483 SI, 2009 WL 733872, at *4-5 (N.D. Cal. Mar. 17, 2009) (finding

27   that an omitted heir was not an indispensable party to a wrongful death action); *Ruttenberg v.
    Ruttenberg*, 53 Cal. App. 4th 801, 808 (1997) ("[A] non-joined heir is not an 'indispensable

28   party' to a wrongful death action[.]").

1   heirs.  *See Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th 703, 704 (2001) (finding that "a public

2   employee is liable for injury caused by his act or omission to the same extent as a private

3   person"); *Quiroz v. Seventh Ave. Center*, 140 Cal. App. 4th 1256, 1263 (2006); *see also* Cal. Civ.

4   Proc. Code § 377.60.  In any action for wrongful death resulting from negligence, the plaintiff

5   must allege all elements of actionable negligence.  *Jacoves v. United Merchandising Corp.*, 9 Cal.

6   App. 4th 88, 105 (1992).  To proceed on an actionable negligence claim, "a plaintiff must show

7   that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was

8   the proximate or legal cause of the resulting injury."  *Hayes v. Cnty. of San Diego*, 57 Cal. 4th

9   622, 629 (2013); *see also Estate of Duran v. Chavez*, No. 2:14-cv-02048-TLN-CKD, 2015 WL

10  8011685, at *11 (E.D. Cal. Dec. 7, 2015) (quoting *Crabbe v. Rhoades*, 101 Cal. App. 504, 510

11  (1929)) (defining negligence as "the want of such care as a person of ordinary prudence would

12  exercise under the circumstances of the case," which can consist of "heedlessly doing an

13  improper thing or heedlessly refraining from doing a proper thing").

14          A negligent act "is not the proximate cause of [a defendants'] alleged injuries if another

15  cause intervenes and supersedes [their] liability for the subsequent events."  *Conn v. City of Reno*,

16  591 F.3d 1081, 1101 (9th Cir. 2009), *vacated on other grounds by City of Reno. V. Conn*, 563

17  U.S. 915 (2011).  A cause is intervening and superseding if it is unforeseeable.  *See Soto v. City of*

18  *Sacramento*, 567 F. Supp. 662, 688 (E.D. Cal. 1983).  As a general rule, acts of suicide have been

19  found to be unforeseeable events that preclude a finding of causation.  *Walsh v. Tehachapi*

20  *Unified School Dist.*, 997 F. Supp. 2d 1071, 1085 (E.D. Cal. 2014).  However, courts have

21  recognized exceptions to this general rule.  A deputy may be held legally responsible for a

22  detainee's injuries if the deputy's actions or inaction are the moving force behind a series of

23  events that ultimately lead to a foreseeable harm being suffered, even if other intervening causes

24  contribute to the harm.  *See Conn*, 591 F.3d at 1101 (finding that a corrections officer's failure to

25  respond to an inmate's attempt to choke herself and to her suicide threats could be considered a

26  proximate cause of her suicide); *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990) (finding that

27  a corrections officer's decision to forcibly place plaintiff into a cell with a violent inmate could be

28  considered a proximate cause of injuries sustained when plaintiff attempted to run from the

1   violent inmate); *Bock v. County of Sutter*, No. 2:11-cv-00536-MCE-GGH, 2012 WL 3778953, at

2   *9–10 (E.D. Cal. Aug. 31, 2012) (finding that a municipal defendant's allegedly inadequate

3   policies for care of suicidal inmates could be considered a proximate cause of plaintiff's suicide).

4          Defendants argue for summary judgment in their favor as to plaintiff's wrongful death

5   claims on three grounds.  First, defendants contend that plaintiff has "identified no statutory

6   source for the imposition of liability under state law."  (Doc. No. 45 at 3.)  Second, defendants

7   argue that plaintiff has presented no facts supporting a negligence claim, noting that "there is no

8   evidence that [defendants] . . . failed to monitor the decedent twice every minutes," that they "had

9   any opportunity to prevent Campos from obtaining the materials used to fashion the noose," or

10  that they "knew of Campos' suicidal tendencies or history."  (*Id.* at 3–4.)  Finally, defendants

11  contend that plaintiff cannot demonstrate causation because decedent's suicide was an intentional,

12  intervening act, (*Id.* at 3–4.)

13         Plaintiff argues that there is a question of disputed material fact as to whether defendants

14  Ayala and Bathe were negligent in this regard.  Plaintiff points to deposition testimony of the

15  defendants indicating that the deputies were aware that an electric fan was located on the B-Deck,

16  (Doc. No. 36-5 at 20, 56–58).  (Doc. No. 48 at 4–5.)  Plaintiff also references the Kern County

17  Sherriff's Department report issued following decedent's suicide, which described the proximity

18  of the fan to the decedent's cell, (Doc. No. 40-2 at 9).  (*Id.*)

19         The court finds defendants' arguments concerning plaintiff's wrongful death claims

20  against Deputies Ayala and Bathe to be unpersuasive.  As he has done in the FAC, in his

21  opposition to the pending motion for summary judgment, plaintiff identifies a statutory source for

22  his wrongful death claims, California Civil Procedure Code § 377.60.  (Doc. Nos. 19 at 1; 37 at

23  16.)  Plaintiff  has also come forward with evidence on summary judgment that the defendants

24  were aware that an electric fan was placed outside the suicide watch cell in question, providing

25  circumstantial evidence of negligence.  While defendants argue that decedent's suicide should

26  preclude a finding of causation for purposes of plaintiff's wrongful death claim, the court finds

27  that the defendants' leaving of an electric fan with a duct-taped cord near a suicide cell, at least

28  arguably within reach of a suicidal detainee, could be considered by a rational trier of fact to be

1    the "moving force" behind decedent's ultimate suicide.

2          Accordingly, the court concludes that defendants have not met their burden of showing

3    the absence of a genuine material fact with respect to plaintiff's negligence claim and their

4    motion for summary judgment as to that claim will be denied.

5                 c.      **Public entity immunity under state law**

6          As noted, defendant Kern County argues that it is entitled to summary judgment in its

7    favor with respect to plaintiff's state law claims on statutory immunity grounds.  Under California

8    law, "a public entity is not liable for . . . an injury to any prisoner."  Cal. Gov't Code § 844.6(a);

9    *Lugtu v. Cal. Highway Patrol*, 26 Cal. App. 4th 703 (2001).  As used in § 844.6, "injury" includes

10   death.  *Lowman v. County of Los Angeles*, 127 Cal. App. 3d 613, 615–616 (1982).  This statutory

11   immunity broadly applies to public entities, not to public employees, and does not distinguish

12   between discretionary and ministerial acts.  *Savitt v. Jordon*, 142 Cal. App. 3d 820, 822 (1983).  It

13   applies to injuries sustained both by prisoners and pre-trial detainees.  *Reed v. County of Santa*

14   *Cruz*, 37 Cal. App. 4th 1274, 1280 (1995) (stating that "[a] person who is lawfully confined in a

15   correctional facility pursuant to penal processes is a prisoner as a matter of law within the

16   meaning of Government Code section 844.6");  *Sahley v. County of San Diego*, 69 Cal. App. 3d

17   347, 349 (1977) (finding that the plaintiff "was a pre-conviction detainee awaiting trial; he had

18   been booked and arraigned; he was a 'prisoner' for purposes of governmental immunity").

19         However, California Government Code § 844.6 provides exceptions to the immunity it

20   confers for public entities.  In particular, § 844.6(a) specifically excludes any liability imposed

21   under § 845.6 of the California Government Code.  *See* Cal. Gov't Code §844.6(a) (establishing

22   that public entity immunity applies "[n]otwithstanding any other provision of this part, except as

23   provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing

24   with Section 3500) of Part 3 of the Penal Code").  Under § 845.6, both public employees and

25   public entities may be liable when an "employee knows or has reason to know that the prisoner is

26   in need of immediate medical care and he fails to take reasonable action to summon such medical

27   care."  Cal. Gov't Code § 845.6.  Public entity liability under § 845.6 is limited to those situations

28   in which a public entity intentionally or unjustifiably fails to furnish immediate medical care.

1    *Watson v. California*, 21 Cal. App. 4th 836, 841–42 (1993).  Thus, § 845.6 "envisions liability for

2    injury resulting from a failure to treat the physical condition requiring treatment and not some

3    other incidental injury that might have been prevented by the presence of medical personnel."

4    *Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 350 (1976); *see also Castaneda v. Department*

5    *of Corrections and Rehabilitation*, 212 Cal. App. 4th 1051, 1070 (2013) (explaining that "Section

6    845.6 is very narrowly written to authorize a cause of action against a public entity for its

7    employees' failure to summon immediate medical care only, not for certain employee's

8    malpractice in providing that care"); *see also Leonard v. Denny*, No. 2:12-cv-0915 TLN AC P,

9    2016 WL 43550, at *10 (E.D. Cal. Jan. 5, 2016) (noting that liability under § 845.6 does not

10   apply to situations when medical care was provided, but was deficient).

11        In moving for summary judgment, defendants argue that even if defendant Kern County

12   could be found liable under § 1983 for constitutional rights violations, § 844.6(a) provides the

13   county with immunity for any injuries to decedent.  (Doc. No. 36-1 at 16.)  In opposing summary

14   judgment on this basis, plaintiff argues that defendant Kern County is not immune from liability

15   because § 844.6(a) provides an exception to immunity when a public entity has failed to summon

16   medical care within the meaning of § 845.6.  (Doc. No. 37 at 18–19.)  In their reply, defendant

17   Kern County persuasively argues that the § 845.6 exception to public entity immunity is

18   inapplicable under the facts of this case.  (Doc. No. 38 at 24, ¶ 59.)

19        On summary judgment, plaintiff has simply not offered any evidence indicating that there

20   was a failure to furnish decedent immediate medical care in violation of § 845.6.  Accordingly,

21   defendant Kern County enjoys immunity with respect to plaintiff's wrongful death claims under §

22   844.6.  *See, e.g.*, *Servantez v. County of Sacramento*, No. 2:07-cv-0661 FCD JFM, 2009 WL

23   2153812, at *23 (E.D. Cal. July 16, 2009) (finding that § 844.6 immunized a county defendant

24   from liability for detainee's suicide); *Estate of Claypole v. County of San Mateo*, No. 14-cv-

25   02730-BLF, 2014 WL 5100696, at *7–8 (Oct. 9, 2014) (finding that § 844.6 immunized a county

26   defendant from liability for a detainee's suicide, and that the § 845.6 exception to such immunity

27   did not apply, when "the Complaint reveals that medical care in fact was furnished").  Therefore,

28   defendant Kern County is entitled to summary judgment on the issue of plaintiff's wrongful death

1   claim against defendant.[10]

2   <u>CONCLUSION</u>

3   For the reasons stated above, the court grants defendants' motion for summary judgment,

4   (Doc. No. 36), in part and denies it in part.  Specifically:

5       1.   The court grants defendants' motion for summary judgment as to any previously

6           dismissed § 1983 claims brought against individual defendants Ayala and Bathe

7           premised on violations of decedent's Eighth Amendment rights;

8       2.   The court denies defendants' motion for summary judgment as to the § 1983 claims

9           brought against defendants Ayala and Bathe premised on violations of decedent's

10          Fourteenth Amendment rights to adequate medical care;

11      3.   The court denies defendants' motion for summary judgment as to the § 1983 claims

12          against defendants Ayala and Bathe premised on violations of plaintiff's Fourteenth

13          Amendment rights to familial association;

14      4.   The court grants defendants' motion for summary judgment as to plaintiff's § 1983

15          *Monell* claims against defendant Kern County;

16      5.   The court denies defendants' motion for summary judgment with respect to plaintiff's

17          wrongful death claims against individual defendants Ayala and Bathe;

18      6.   The court grants defendants' motion for summary judgment on plaintiff's wrongful

19          death claims against defendant Kern County; and

20  /////

21  /////

22  /////

23  /////

24  /////

---

25  [10] Defendants also argued that the court should find immunity under Cal. Govt. Code § 845.2,

26  which provides immunity from liability for any injuries proximately caused by a failure to
provide "sufficient equipment, personnel or facilities" within a prison, jail, or penal or

27  correctional facility.  Cal. Govt. Code § 845.2.  Because the court has found that Kern County is
immune from liability with respect to plaintiff's wrongful death claims under § 845.6, it need not

28  reach defendants' arguments as to its immunity under California Government Code § 845.2.

7. This action is referred back to the assigned magistrate judge for re-scheduling, including the setting of a mandatory settlement conference, Final Pretrial Conference and jury trial dates.

IT IS SO ORDERED.

Dated:   **March 7, 2017**

UNITED STATES DISTRICT JUDGE