LAW OFFICES OF GREG W. GARROTTO
Greg W. Garrotto, State Bar #89542
1925 Century Park East, Suite 2000
Los Angeles, California 90067
Telephone (310) 229-9200
Fax (310)229-9209
jjggarrotto@msn.com

Attorneys for Plaintiff
Keanu Ethan Campos, a minor

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEANU ETHAN CAMPOS, a minor, by and through his Guardian ad Litem, Deniz Gonzalez | ) ) ) Case No.: 1:14-cv-01099-DAD-JLT |
| | ) ) PRETRIAL STATEMENT OF ) PLAINTIFF, KEANU ETHAN ) CAMPOS |
| Plaintiff, | ) |
| v. | ) Date: July 12, 2017 ) Time: 10:00 a.m. |
| COUNTY OF KERN, a public entity; Deputy Sheriff Jason Ayala, a public employee; Deputy Joshua Bathe, a public employee; and , DOES1-10, Inclusive | ) Courtroom: 5 ) Judge: Hon. Dale A. Drozd, United ) States District Court Judge ) ) ) |
| Defendants | ) ) |

Plaintiff, Keanu Ethan Campos, presents his Pretrial Statement in

conjunction with the Pretrial Conference scheduled for July 12, 2017:

**1.   JURISDICTION AND VENUE**

This Court has jurisdiction of the above matter pursuant to 42 U.S.C. 1983. Venue is appropriate in that the incidents which form the basis of this lawsuit occurred in Bakersfield, California which is within the geographic bounds of the United States District Court for the Eastern District of California.

**2.   JURY TRIAL**

All parties have timely requested a trial by jury.

**3.   UNDISPUTED FACTS**

The Plaintiff believes that the following facts are undisputed:

1.   On August 8, 2013, the Plaintiff's Decedent, Luis Campos was a 35 year old Hispanic male.

2.   Plaintiff's Decedent Luis Campos was the biological father of Plaintiff, Keanu Ethan Campos, whose biological mother was Deniz Gonzales, the duly appointed Guardian ad Litem.

3.   Keanu Ethan Campos was born on _____.

4.   On August 8, 2013, Luis Campos was arrested and subsequently detained in the Central Receiving Facility of the Kern County Jail.

5.   During the morning hours of August 10, 2013, Luis Campos was found hanging in his cell; despite resuscitative measures being taken, he was

PRETRIAL STATEMENT OF PLAINTIFF KEANU
ETHAN CAMPOS

declared dead.

6.    Luis Campos' cause of death was suicide by hanging.

7.    Luis Campos was housed in Cell B-4, a designated suicide watch cell at the time that he hanged himself.

8.    Luis Campos, in order to kill himself, fashioned a noose from an electric cord which he removed from a large floor fan that was placed outside the cell in which he was housed.

9.    At the time that Mr. Campos was found hanging, the Kern County Deputies charged with supervisory/custodial duties on the floor where Luis Campos was housed were Defendants Jason Ayala and Joshua Bathe.

**4.    DISPUTED FACTUAL ISSUES**

The Plaintiff believes that the following facts are disputed:

1.    The Decedent, Luis Campos was able to commit suicide in close proximity of the individual Defendants, Deputy Sheriffs Ayala and Bathe.

2.    Both defendants were very familiar with the Fourth Floor which contained the suicide cells; from the time of their assignment to the Central Receiving Facility (Ayala, from January 2013; Bathe, from February, 2013) they had worked on the fourth floor at least once time a week.   They were aware of the fact that two of the suicide cells, 4B-2 and 4B-3 were continuously monitored by surveillance camera which had monitors on another floor of the jail, and that cell

4B-1 did not have surveillance camera.    They were also very familiar with the

configuration of cell 4B-1, and its "pony" or partial partition wall which separated

the front portion of the cell from that portion which contained the bed and toilet.

They were also aware that when the prisoner was in the rear portion of the cell and

not standing up, it would be difficult to see the prisoner unless one entered the No.

4 Hallway and viewed cell 4B-1 through the bars of the two doors that fronted that

corridor.

        3.    The Defendant Deputies were also aware of the location of the

large floor fan from which Mr. Campos obtained the instrumentality of his self

destruction, the cord, and its close proximity to cell B4-1.    The cord had long had

the crude 'duct tape' repair which would allow a distal portion to be removed from

that portion of the cord which was attached to the body of the fan.

        4.    There are questions as to when the Defendant Deputies arrived

for their shift the day of the incident; one written source indicating that they

arrived at exactly change of shift, 7:00 a.m.; another source indicating that they

arrived as early as 6:45 a.m.    In one statement, both Ayala and Bathe arrive

together; in another, they arrive separately with Deputy Ayala arriving first.

        5.    There is a question of fact as to when the last required (2x every

30 minutes)    observation was made of Mr. Campos; in the records of the

observations made by deputies, the last observation was at 6:52 a.m. and

performed by Deputy Saldana, a night shift employee; in one of Deputy Ayala's

statements, he said that he performed the 6:52 a.m. observation but failed to make any notation of its occurrence.

6.    At the change of shift, there was to be a briefing between the shifts to provide updated information about what had occurred with regard to prisoners and other important information.    On August 10, 2013, between the night shift and the morning shift there was no such briefing; the night shift left as soon as the day shift arrived, without the defendants making any inquiry.    There was no exchange of known information that would have alerted the defendants that Mr. Campos had been actively suicidal and engaged in self harm during the previous shifts.

7.    There are disputed factual issues concerning the behavior of Mr. Campos during these critical minutes before the suicide.    If the night shift deputies are believed, Mr. Campos was up, awake and conversing at 6:52 a.m. (as he had been all night according to the Inmate Observation Log); if we believe Defendant Ayala, only 8 minutes later, at 7:00 a.m.,   he was lying down on his bed asleep.

8.    The suicide and its preparation took place over a period of time in front of the deputies on the floor, who were stationed and would typically remain at a desk 15 feet away and directed at the cell.    Mr. Campos was able to remove the duct tape from the fan cord, unwire one section of the cord from the other section, and then take it to the portion of his cell behind the partition wall and

attach it to the cell door with a series of intricate knots that the defendants were unable to loosen and create a hangmen's noose.   The noose was attached to the door of the cell in such a fashion to be in clear view of the day shift staff as it was above the level of the partition wall which divided the cell.

9.   As to the survivorship cause of action under the 14th Amendment, there are disputed questions of fact as to:

a.   Did the Plaintiff's Decedent face a serious medical need;

b.   Was the Defendant deliberately indifferent to that medical need; that is, did the Defendant know of it and disregard it by failing to take reasonable measures to address it;

c.   Did the Defendant's act or failure to act cause the Plaintiff's Decedent's harm.

10.   As to the Plaintiff's 14th Amendment claim based on the interference with the Parent/Child Relationship, the disputed questions of fact are:

a.   Did the Plaintiff and the Decedent have a Parent/Child Relationship;

b.   Did the Decedent face a serious medical need;

c.   Was the Defendant deliberately indifferent to that medical need; that is, did the Defendant know of it and disregard it by failing to take reasonable measures to address it;

d.   Did the Defendant's act or failure to act cause the Plaintiff's harm.

11.   As to the Plaintiff's Negligence/Wrongful Death Claim, there are disputed questions of fact as to:

    a.   Was the Defendant negligent;

    b.   Was the negligence of Defendant a substantial factor in causing harm to Plaintiff;

    c.   What are the quality and quantity of Plaintiff's damages.

**5.   DISPUTED EVIDENTIARY ISSUES**

At this time, the Plaintiff does not anticipate that there will be any disputed evidentiary issues.

**6.   FACTUAL INFORMATION- TORT ACTION**

A.   The incident that is the subject of this lawsuit occurred on August 10, 2013 on the B deck of the Central Receiving Facility, a correctional facility that is part of the Kern County Jail.   The incident in question is the suicide death of Luis Campos, a pretrial detainee arrested on August 8, 2013.   Mr. Campos was able to kill himself using a portion of an electrical cord that he had removed from a large electrical floor fan which was placed immediately adjacent and within reach to his cell,4 B-1, which was one of three suicide watch cells on the B-Deck.   The custodial officers on duty at the time were Defendants Jason Ayala and Joshua Bathe.   The Plaintiff contends that the Defendants were aware of the fact that the Decedent was

actively suicidal and faced a substantial risk of serious harm, that the Defendants were deliberately indifferent to that risk, and disregarded it by failing to take reasonable measures to address it; which caused harm to the Plaintiff. Alternatively, the Defendants were negligent in failing to take reasonable measures to protect Mr. Campos from committing suicide when they knew that there was a substantial risk that he would take his own life.

B.   The Plaintiff is Keanu Ethan Campos the biological son of Luis Campos. He was born on _____.   He sustained damages consisting of the loss of the love, society, companionship and financial support of his father.   The Decedent Mr. Campos was 35 years of age and had a employment history which related to his being a journeyman electrician for which he earned up to $42.00 per hour.   The Plaintiff would be entitled to recover economic damages associated with the loss of support while he is a minor as well a non-economic damages associated with the loss of the love, society and companionship of his father.

The Decedent had two additional older children from a prior marriage which ended in divorce, but dispute efforts by Plaintiff counsel to obtain contact information, the Decedent's family has refused to provide that information.   The fact that all 'heirs' are not joined in this action does not preclude Plaintiff from pursuit of this action; at worse, it would mean that 'heirs' not joined could assert a claim from the proceeds of the case (by settlement or judgment), against the Plaintiff.

PRETRIAL STATEMENT OF PLAINTIFF KEANU
ETHAN CAMPOS

## 7.  RELIEF SOUGHT

The Plaintiff seeks monetary compensation for the loss of the society, love, companionship of his father as well as for the loss of financial support.   The Plaintiff also seeks punitive damages against the individual defendants based on their violations of Plaintiff's and Plaintiff's Decedent's civil rights.

## 8.  POINTS OF LAW

The Courts have long analyzed claims that correctional facility officials violated pretrial detainee's constitutional rights by failing to address their medical needs, including suicide prevention, under a "deliberate indifference" standard. Clouthier v County of Contra Costa (2010 9th Cir.) 591 F.3d 1232 at 1243-1244. A prison official cannot be liable for deliberate indifference unless he or she knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw that inference.   Farmer v Brennan (1994) 511 U.S. 825.   The Plaintiff must show that the official was subjectively aware of the serious medical need and failed adequately to respond. Conn v City of Reno (2010 9th Cir.) 591 F.3d 1081.        A heightened suicide risk can present a serious medical need.   Conn, supra, 591 F.3d at 1095.

The elements of a claim for the violation of civil rights based on medical

care are:

1.    The pre-trial detainee faced a serious medical need;

2.    The Defendant was deliberately indifferent to the medical need; that is, the Defendant knew of it and disregarded it by failing to take reasonable measures to address it;

3.    The act and or failure to act of the defendant caused harm to the plaintiff.

(9th Circuit Civil Model Jury Instruction, 9.27; Farmer v Brennan (1994) 511 U.S. 825, 832)

Children including adult children, may assert a 14th Amendment claim based on the deprivation of their liberty interest arising out of their relationship with their parent.   Moreland v Las Vegas Metropolitan Police Department (9th Cir. 1998) 159 F3d. 365, 371, 9th Circuit Civil Model Jury Instructions, 9.32 (Comment) The deliberate indifference standard governs cases when the accused official has the luxury to make unhurried judgments and "the chance for repeated reflection, largely uncomplicated by the pull of competing obligations.   City of Sacramento v Lewis (1998) 523 U.S. 833, 853.

In the case of the state claim for wrongful death, 'negligence' is the standard of conduct upon which the actor must be judged.    'Negligence is the failure to use reasonable care to prevent harm to oneself and others.    A person can be negligent by acting or by failing to act.    A person is negligent if he or she does something

that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation. Application of due care is inherently situational and the amount of care deemed reasonable in any particular case will vary, while at the same time the standard of conduct itself remains constant, i.e., due care commensurate with the risk posed by the conduct taking into consideration all relevant circumstances.   Flowers v Torrance Memorial Hospital Medical Center (1994) 8 Cal.4th 992, 997; Ramirez v Plough, Inc. (1993) 6 Cal. 4th 539, 546.

## 9.   ABANDONED ISSUES

The Plaintiff is not abandoning any issues.

## 10.   WITNESSES

The Plaintiff may call the following persons as witnesses at the trial of the above matter.   The persons who may possibly be called as witnesses depending on the course of trial are marked with an asterix:

1.   Deniz Gonzales,7000 Auburn St., #F-8, Bakersfield, CA 93306

2.   Keanu Ethan Campos, 7000 Auburn St., #F-8, Bakersfield, CA 93306

3.   Deputy Sean Collier, Kern County Sheriffs Department

4.   Deputy Christopher Saldana, Kern County Sheriffs Department

5.   Deputy Joshua Bathe, Kern County Sheriffs Department

6.    Deputy    Jason Ayala, Kern County Sheriffs Department

7.    Zuzet Medina, Investigating Deputy Coroner,    Kern County Sheriff/ Coroner

8.    Robert Whitmore M.D., Forensic Pathologist, Kern County Sheriff/Coroner

9. *Adam Rickles (#202565), Kern County Sheriffs Department, Technical Investigator

10. *M. Riehle (#200639), Kern County Sheriffs Department, Technical Investigator

11. *Lieutenant Voth, (#200830), Kern County Sheriffs Department

12. *Lieutenant Bishop, (#200992), Kern County Sheriffs Department

13. *Sergeant Lomera (#201099), Kern County Sheriffs Department

14. *Sergeant Nord (#201093), Kern County Sheriffs Department

15. * Detective Michael Dorkin (#201547), Kern County Sheriffs Department

16. * Detective Jeff Colbert (#201110), Kern County Sheriffs Department

17. * Detective Grantham (#201110), Kern County Sheriffs Department

18. *David Hubbard (#201784), Kern County Sheriffs Department

19. * Davinder Randhawa, Nurse, Kern County Sheriffs Department

20. *Jeff Tolle (Booking Number 2038537), 1825 Harrington St., Bodfishc, CA 93205

21.    Cynthia Morgan, Nurse, Kern County Sheriffs Department

22. *Custodian of Records of Grimmway Enterprises, Inc., 14141 Digiorgio Road, Arvin, CA 93203

23. * Deputy Loera (#202492), Kern County Sheriffs Department

24. *A. Fullerton (#200471), Kern County Sheriffs Department

25. * Deputy Gosal (#202556), Kern County Sheriffs Department

26. *Deputy Driskill (#202376), Kern County Sheriffs Department

27. *Deputy Ronfeldt (#202553), Kern County Sheriffs Department

28. * Deputy Boyles, Kern County Sheriffs Department

29. *Deputy Jacob Martinez, Kern County Sheriffs Department

30. * Paul Myron, Defendants' Expert Witness

The Plaintiff reserves the right to augment this witness list according to the provisions of the Local Rules, Federal Rules of Civil Procedure and or any Pretrial Conference Order.


**11.    EXHIBITS-SCHEDULES AND SUMMARIES**

The Plaintiff may seek to admit into evidence the following documents and other tangible things:

1.    Employment Records of Luis Campos from Grimmway Enterprises, Inc.- W-2 Statement for year 2012 (66 pages)

2.    Kern County Sheriff/Coroner Report No. C01472-13 and records

relating to Luis Campos

3. Kern County Sheriffs Department Incident/Investigation Reports for Case No. SR13-22293

4. Kern County Sheriffs Department Crime Scene Access Log for Case No. SR13-22293

5. Inmate Observation Log for Luis Campos for August 8, 2013 through August 10, 2013

6. Log Book, Central Receiving Facility, Kern County Jail

7. Jason Ayala, Recorded Interview, August 10, 2013

8. Jeff Tolle, Recorded Interview, August 10, 2013

9. Cynthia Morgan, R.N., Recorded Interview, August 10, 2013

10. Christopher Saldana, Recorded Interview, August 11, 2013

11. Sean Collier, Recorded Interview, August 10, 2013

12. Evidence and Photographic Report for Case No. SR13-22293

13. Photographs taken during investigation for Case No. SR13-22293

14. Electronic Records from Kern County Sheriffs Department

15. Kern County Correctional Facilities Medical Record

16. Kern County Sheriffs Department, Policies and Procedures, Lerdo Pre-Trial Section, Use of Safety Cell, C-135

17. Kern County Sheriffs Department, Policies and Procedures, Lerdo Pre-Trial Section, Suicide Watch, C-243

18. Kern County Sheriffs Department, Policies and Procedures, Maximum-Medium Facility, Use of Safety Cell, C-100

19. Kern County Sheriffs Department, Policies and Procedures, Maximum-Medium Facility, Suicidal Inmates, C-200

20.   Lerdo Minimum Detention Facility Policies and Procedures, Suicidal and Mentally Disordered Inmates, No. F-115

21.   Kern County Sheriffs Department, Policies and Procedures, Central Receiving Facility, Suicide Watch, D-400

22.   California Lease Agreement Re: Summerst Apartment Homes 6/28/2011

23.   Mead Composition Book of Luis Campos

24.   Family Photographs

Plaintiff reserves the right with Court authorization to augment this exhibit list.

## 12.   DISCOVERY DOCUMENTS

At this time, the Plaintiff does not expect to offer any discovery documents unless they are used for impeachment purposes.

**13.   FURTHER DISCOVERY OR MOTIONS**

The Plaintiff does not make any requests for further discovery and or

motions at this time.

**14.   STIPULATIONS**

No stipulations are offered by Plaintiff at this time.

**15.   AMENDMENTS/DISMISSALS**

The Plaintiff has no requested amendments/dismissals at this time.

**16.   SETTLEMENT NEGOTIATIONS**

The parties have participated in a settlement conference before Magistrate

Judge Thurston.    The Plaintiff is willing to discuss settlement but at this point,

Plaintiff's counsel believes that any further settlement negotiations will be

conducted between counsel of the parties.

**17.   AGREED STATEMENTS**

Plaintiff does not believe that the use of Agreed Statements is feasible in this

case.

**18.   SEPARATE TRIAL OF ISSUES**

Plaintiff does not believe that a separate trial of issues will increase judicial economy in this action.

**19.   IMPARTIAL EXPERTS/LIMITATIONS OF EXPERTS**

Plaintiff does not believe that this is applicable in this case.

**20.   ATTORNEY FEES**

The Plaintiff will be requesting attorney fees under 42 U.S.C. 1988.

**21.   TRIAL EXHIBITS**

The Plaintiff believes that the trial exhibits should be returned to one of the parties' counsel for safekeeping pending appeal.

**22.   TRIAL PROTECTIVE ORDER**

A trial protective order is not sought.

PRETRIAL STATEMENT OF PLAINTIFF KEANU
ETHAN CAMPOS

**23.   MISCELLANEOUS**

Plaintiff has no miscellaneous matters at this time.


DATED: 6/28/2017                    LAW OFFICES OF GREG W. GARROTTO

                                     /s/ Greg W. Garrotto
                                     GREG W. GARROTTO