LAW OFFICES OF GREG W. GARROTTO
Greg W. Garrotto, State Bar #89542
1925 Century Park East, Suite 2000
Los Angeles, California 90067
Telephone (310) 229-9200
Fax (310)229-9209
jjggarrotto@msn.com

Attorneys for Plaintiff
KEC, a minor, by his GAL
Deniz Gonzalez

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEC, a minor, by and through his Guardian ad Litem, Deniz Gonzalez | Case No.: 1:14-cv-01099-DAD-JLT |
| Plaintiff, | NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR NEW TRIAL; AND/OR TO ALTER OR AMEND JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GREG W. GARROTTO |
| v. | |
| COUNTY OF KERN, a public entity; et. al. Deputy Sheriff Jason Ayala, a public employee; Deputy Joshua Bathe, a public employee; and , DOES1-10, Inclusive | Date: December 5, 2017 Time: 9:30 a.m. Courtroom: 5 Judge: Honorable Dale A. Drozd, United States District Judge |

TO THE HONORABLE COURT AND ALL PARTIES AND THEIR COUNSEL

OF RECORD:

Please take notice that on December 5, 2017 at 9:30 a.m. or as soon as after

as may be heard, in Courtroom 5 of the United States District Court located at 2500 Tulare St., Fresno, CA 93721, the Plaintiff KEC, a minor by his Guardian ad Litem, Deniz Gonzalez will move the Court for a New Trial and or to Amend or Alter the Judgment.  Said motion will be based on <u>Federal Rule of Civil Procedure</u> 59.

This motion is grounded on the following:

1.  The refusal to excuse Juror #3 after being challenged for cause by Counsel for Plaintiff, was error which substantially prejudiced the Plaintiff;

2.  The verdict of the jury was against the clear weight of the evidence;

3. The Court should, pursuant to FRCP 59(e),  reconsider its ruling granting summary judgment in favor of the Defendant County of Kern on the cause of action under 42 <u>U.S.C.</u> Section 1983 in light of <u>Castro v County of Los Angeles</u> (9th Cir. 2016) 833 <u>F3d.</u> 1060.

The present motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Greg W. Garrotto, the accompanying Request for Judicial Notice under <u>Federal Rule of Evidence</u> 201 as well as the minutes and proceedings of the case as set forth in the docket and the trial which occurred from October 3-6, 2017.

Dated: 10/25/2017          LAW OFFICES OF GREG W. GARROTTO

/s/ Greg W. Garrotto
GREG W. GARROTTO

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT

# TABLE OF CONTENTS

Notice of Motion................................................................................1

Memorandum of Points and Authorities.................................................6

   1.  Factual Introduction..................................................................6

   2.  Statutory Basis for This Motion................................................8

   3.  The Court Erred When It Denied Plaintiff's Challenge for
      Cause of Juror #3...................................................................9

   4.  The Verdict as to Defendants Deputy Ayala and Deputy Bathe
      Was Against the Clear Weight of the Evidence...................................14

   5.  The Court Should, Pursuant to FRCP 59(e), Reconsider its Ruling
      Granting Summary Judgment in Favor of Defendant County of
      Kern on the Cause of Action under 42 U.S.C. Section 1983
      of Castro v County of Los Angeles  (9th Cir. 2016)
      833 F3d. 1060.......................................................................22

   6.  Conclusion...........................................................................26

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT

# TABLE OF AUTHORITIES

**Federal Case Law**

Aetna Casualty & Surety Co. v Yeatts (4th Cir. 1941) 122 F2d. 350.........14, 15, 16

All Hawaii Tours, Corp. v Polynesian Cultural Center (1987)
116 F.R.D. 645 ...........................................................................................23

Castro v County of Los Angeles (9th Cir. 2016)
833 F3d. 1060.........................................................2, 8, 23, 24, 25, 26, 27

Fairmont Glass Works v Cub Fork Coal Co. (1933) 287 U.S. 474........................17

Fount-Wip,Inc. v Reddi-Wip, Inc. (9th Cir. 1978) 568 F2d. 1296.........................17

Gill v Rollins Protective Services Co. (4th Cir. 1985) 773 F2d 592.........................9

Kern-Tulare Water District v City of Bakersfield (E.D. Cal. 1986)
634 F.Supp. 656...........................................................................................23

Landes Construction Co. v Royal Bank of Canada (9th Cir. 1987)
833 F2d. 1365...............................................................................................18

Molski v M.J. Cable, Inc. (9th Cir. 2007) 481 F3d. 724.....................................9, 18

Monell v Department of Social Services (1978) 436 U.S. 658.........................7, 22

Montgomery Ward & Co. v. Duncan (1940) 311 U.S. 243....................................17

Murphy v City of Long Beach (1990) 914 F2d. 183...............................................18

Ruvalcaba v City of Los Angeles (9th Cir. 1995) 64 F3d 1323...............................9

School Dist. 1J, Multnomah County Or. v AcandS. Inc.
(9th Cir. 1993) 5 F3d 1255.......................................................................9, 22

United States v Torres (2nd Cir. 1997) 128 F3d 38...........................................11, 12

**Federal Statutes**

American With Disabilities Act........................................................................18, 19

Rule of Civil Procedure 59......................................................................................2, 8

Rule of Civil Procedure 59(e)............................................................................2, 8, 9

Rule of Evidence 201.................................................................................................2

42 U.S.C. 1983....................................................................................................2, 7

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

## MOTION

### 1.  Factual Introduction

On August 10, 2013, Luis Campos, the father of Plaintiff KEC, a pretrial detainee in the Kern County Central Receiving Facility of the Kern County Jail committed suicide in Cell B4-1, a suicide watch cell.  He hanged himself, using a portion of a previously repaired electrical cord from a large floor fan which was within his reach through the cell bars.  He was able to take apart the repaired cord, fashion the distal length of it into a hangmen's noose and hang himself.

The floor fan had been in the location from which the Decedent was able to take apart the cord for as long as anyone could remember.  It was plugged into an electrical outlet that was in a 'pipechase' or maintenance access area that was between Cell B4-1 and Cell B3-1.  It was the practice of jail custodial staff to open the door of the pipechase and operate the fan from its long time position so that 'cool' air from the pipechase could be circulated on the B Deck where there was either no or inefficient air-conditioning.

Cell B4-1 was one of three suicide watch cells.  The other two cells, B4-2 and B4-3 were simple rectangular cells with monitoring video cameras that provided continuous surveillance.  Cell B4-1, where the Decedent was housed, was a much larger cell with a partition wall splitting the cell in half, with the front

open area adjacent to central areas where the two assigned correctional officers worked, and the rear area containing a wall mounted metal shelve which served as a bed and a toilet.  The rear area was not completely visible from the central area of the B Deck but could only be viewed in its entirety by standing in Hallway 4.

The Plaintiff, on his own behalf and as Successor in Interest of his father filed the present action predicated on constitutional violations under 42 U.S.C. 1983 and state wrongful death laws against the County of Kern as well as the two custodial deputy sheriffs who were on duty at the time, Jason Ayala and Joshua Bathe.

On March 7, 2017, the Court granted in part the Motion for Summary Judgment that had been filed on behalf of Defendants.  Insofar as it is relevant to this motion the Court granted summary judgment for Defendant County of Kern on the 42 U.S.C. Section 1983 cause of action based on Monell v Department of Social Services (1978) 436 U.S. 658.   The motion was denied as to the individual defendants.  The Order partially granting and denying the Motion for Summary Judgment was entered on Court's docket on March 7, 2017 (Docket 66).

On October 3, 2017, the case proceeded to trial against the individual defendants.  On October 6, 2017, the jury of eight persons returned a unanimous verdict in favor of the individual Defendants and against the Plaintiff.  Judgment was entered in favor of all Defendants on October 6, 2017 (Docket 122 & 124)

The Plaintiff now moves pursuant to Federal Rule of Civil Procedure 59 for

alternatively, for a new trial and or to amend or alter the judgment on the

following basis:

1.  The Court committed prejudicial error when it refused to excuse Juror

#3, after he was timely challenged for cause by Counsel for Plaintiff;

2.  The verdict of the jury was against the clear weight of the evidence;

3.  Pursuant to FRCP 59(e), the Court should reconsider its ruling granting

the County of Kern summary judgment on the Monell cause of action in light of

the 9th Circuit Court of Appeal's decision in Castro v County of Los Angeles (9th

Cir. 2016) 833 F3d. 1060.

**2.  Statutory Basis For This Motion**

Federal Rule of Civil Procedure 59 states in pertinent part:

"(a) In General

(1) Grounds for New Trial.  The court may, on

motion, grant a new trial on all or some of the issues– and to

any party as follows:

(A) after a jury trial, for any reason for which

a new trial has heretofore been granted in an action at law in

federal court;..."

"...(e) Motion to Alter or Amend a Judgment.  A motion

to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."

A new trial motion can be granted on the ground of error of law occurring during the trial if the erroneous ruling 'substantially prejudiced' a party. <u>Ruvalcaba v City of Los Angeles</u> (9th Cir. 1995) 64 <u>F3d</u> 1323, 1328.

A motion for new trial may also be granted when the verdict is against the clear weight of the evidence.  <u>Molski v M.J. Cable, Inc.</u> (9th Cir. 2007) 481 <u>F3d.</u> 724, 729; <u>Gill v Rollins Protective Services Co.</u> (4th Cir. 1985) 773 <u>F2d.</u> 592, 594.

A <u>Rule 59(e)</u> motion is a proper vehicle to seek reconsideration of a summary judgment.  <u>School Dist. No 1J, Multnomah County Or. v AcandS. Inc.</u> (9th Cir. 1993) 5 <u>F3d</u> 1255, 1262.

**3.  The Court Erred When It Denied Plaintiff's Challenge for Cause of Juror #3**

 An eight person jury was selected on October 3, 2017.  A jury of eight was selected so that if two jurors failed to complete trial, an appropriately sized jury of six persons could still render a verdict.   Extensive voir dire inquiry was made by the Court as well as counsel.  Because of the nature of the case, the questioning included numerous questions about the prospective jurors feelings and attitudes relating to law enforcement personnel and law enforcement activities including those occurring in jail facilities.

Juror #3, a restauranteur with a luncheon eatery in downtown Fresno, within walking distance of Fresno Police Department and the Fresno County Jail, was present during the entirety of the voir dire proceedings and indicated in response to questioning that his father had killed his mother in Lebanon, the country of his origin, and had been imprisoned.  Said prospective juror indicated that he did not believe in long sentences for persons convicted of crimes.  He did not bring any information to the attention of the Court or counsel in response to the many questions posed by Court or counsel including those that related to law enforcement.  Rather he answered affirmatively that he could be fair and impartial when he was asked questions as part of the group.

At the close of voir dire on October 3, 2017, challenges for cause as well as peremptory challenges were made (the parties using all of their peremptory challenges) and a jury of eight persons was impaneled.

At the start of court proceedings on October 4, 2017, the Court presented a note (Docket 114) to counsel that had been submitted that morning by Juror #3.  That note set forth the following information:

1.  He, his wife and eight other friends attended the Officer Scanlan Support Dinner and through his business was a contributor to the event;

2.  He liked and enjoyed talking to "some of the law enforcement agents" who patronize his restaurant and... "appreciates anyone who is polite, kind, and

still manages a sincere smile after dealing with disturbing situations on a regular basis";

3.  He has friends and acquaintances who are lawyers and judges.

The "Officer Scanlan" that is referred to in the note is a correctional officer of the Fresno Sheriffs Department who was assigned to the Fresno County Jail and who was shot and seriously injured by an armed convicted felon in September, 2016.  (See Request for Judicial Notice filed concurrently with this motion).

The Court questioned Juror #3 who affirmed after all questioning that he could be fair and impartial.  After questioning, Plaintiff's counsel asked that Juror #3 be excused for cause on the basis of implied bias.  The Court denied Plaintiff's counsel request and trial proceeded.

On October 6, 2017, after argument, the jury was instructed and began deliberations.  Approximately 1 ½ hours after deliberations began (lunch being served during that period of time) the jury returned a unanimous verdict in favor of Defendants.  Juror #3 was the foreperson of the jury.

Presumed bias or implied bias is conclusively established as a matter of law. It is attributed to a prospective juror regardless of actual partiality.  United States v Torres (2nd Cir. 1997) 128 F3d 38, 45.  The issue in determining presumed or implied bias is whether an average person in the juror's position would be prejudiced.  In the determination of whether a prospective juror is impliedly

biased, "his statements upon voir dire about his ability to be impartial are totally

irrelevant." United States v Torres, 128 F3d 38 at 45   The Court states at 128 F3d

at 47:

> "...Just as the trial court's finding of actual bias
>
> must derive from voir dire questioning so the court is
>
> allowed to dismiss a juror on the ground of inferable
>
> bias only after having received responses from the juror
>
> that would permit an inference that a juror in question
>
> would not be able to decide the matter objectively.
>
> In other words, the judge's determination must be granted
>
> in facts developed at voir dire.  And this is even so
>
> even though the juror need not be asked the specific
>
> question of whether he or she could decide the case
>
> impartiality.  Moreover, once facts are elicited that
>
> permit a finding of inferable bias, the juror's statements
>
> as to his or her ability to be impartial become irrelevant."

It is curious at the very least, that after all of the voir dire questioning about

the prospective jurors connections with, and feelings and opinions about law

enforcement on October 3, 2017, that Juror #3 did not disclose his feelings about,

interactions with and sympathies for law enforcement on that date.  Juror #3 was

present during the jury selection process and even though a layperson, would have had at the very least a rudimentary understanding that jurors were being excused for cause or on the basis of peremptory challenges, where the attorneys were excusing persons who they deemed might not be favorable to their case. The withholding of this information on October 3, 2017 is striking and should have been considered in the determination of whether Juror #3 exhibited implied bias for which he should have been excused for cause.

On October 4, 2017, after jurors had been challenged for cause and peremptory challenges used and exhausted and a jury impaneled, he submitted Docket 114.  In that note he indicated that he, through the business that he and his wife owned contributed to a benefit for a Fresno County Sheriffs Department Correctional Officer who had been seriously injured one year before, that he was of the opinion that law enforcement officers deal with "disturbing situations on a regular basis", and knew lawyers and judges associated with law enforcement.

While not evidencing a contractual, monetary or employment relationship with law enforcement, it does show that he was very sympathetic and had a natural affinity towards law enforcement and their 'difficult job', especially custodial correctional officers.  The information gained as a result of Docket 114 is very different than the fact that Juror #3 owns a restaurant where law enforcement, because of its close proximity might eat.  The very fact that he did not disclose it

on October 3, and only disclosed it after he was impaneled shows that Juror #3 was concerned that he was biased and did not want it to come into the public light. The fact that this disclosure was made only after he was impaneled and could not be removed by peremptory challenge in itself would allow a reasonable person to conclude that implied bias was present.

The failure to excuse Juror #3 was error.  It might be argued that the Plaintiff upon the denial of the motion to excuse Juror #3 for cause, should have moved for a mistrial on the basis that the Plaintiff was prejudiced in that had Juror #3 disclosed the information contained in Docket 114, peremptory challenges would have been used differently.  This would have been a futile act in that based on the failure of the Court to excuse Juror #3, it would have certainly denied the Motion for Mistrial in that the only measure that might have been taken to avoid mistrial would be to in fact remove Juror #3.

While one cannot properly comment on the deliberations of the jury in this matter, it must be pointed out that the deliberations were brief and Juror #3 was foreperson.  The Plaintiff would ask that this Court grant a new trial on issues as Juror #3 should have been removed for cause on the basis of implied bias.

## 4.  The Verdict as to Defendants Deputy Ayala and Deputy Bathe Was Against The Clear Weight of the Evidence

In Aetna Casualty & Surety Co. v Yeatts (4th Cir. 1941) 122 F2d. 350, a

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT

seminal case discussing a motion for new trial on the ground that the verdict was against the clear weight of the evidence, the Court stated at 122 F2d. at 353 a proposition that stands today:

> "The motion to set aside the verdict and grant a new trial was a matter of federal procedure, governed by Rule of Civil Procedure 59 and not subject in any way to the rules of state practice.  On such a motion, it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.  The exercise of this power is not in derogation of the right of a trial by jury but is one of the historic safeguards of that right....It is a power to examine the whole case on the law and the evidence, with a view to securing a result, not merely legal, but also not manifestly against justice, ----a power exercised in pursuance of a sound judicial discretion, without which the jury system would be a capricious and intolerable

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT

tyranny, which no people could long endure.  This court

has had occasion more than once recently to say that it was

a power that courts ought to exercise unflinchingly."

The <u>Aetna</u> Court  continues and further explains the integral part of the

Court in ensuring that justice is done:

> "...When a verdict is rendered by the jury, it is to the court
>
> of which they are a part.  It is recorded upon the minutes of the
>
> court, and becomes a part of the record of the trial; but it does
>
> not thereby become a judgment of the court, unless the judge
>
> is satisfied with it, and specifically or by general order or rule
>
> so directs.  He has a responsibility for the result no less
>
> than the jury, for it is his duty to see that right and justice are
>
> done, so far as this may be practicable in the particular case.
>
> If he is not satisfied with the verdict, it is his duty to set it aside
>
> and grant a new trial before another jury."

The trial judge may set aside a verdict, even one based on substantial

evidence and is sufficient to defeat the direction of a verdict where in his opinion

it is contrary to the clear weight of the evidence and when failure to do so would

cause a miscarriage of justice.  And the discretion of the trial judge is wide, in that

it is not reviewable on appeal save in the most exceptional circumstances.  122

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
      ALTER OR AMEND THE JUDGMENT

F2d. at 354. (citing <u>Montgomery Ward & Co. v Duncan</u> (1940) 311 <u>U.S.</u> 243;

<u>Fairmont Glass Works v Cub Fork Coal Co.</u> (1933) 287 <u>U.S.</u> 474)

The law has accorded the trial judge with the power of being the final

arbiter of the evidence presented at the proceeding.  The fact that the power of the

trial judge extends to weighing and considering the credibility of the evidence,

both testimony and documents and other tangible materials, means that there is

great regard for the measured consideration of the trial court and the court's ability

to "make things right" and dispense justice, if the jury does not.  This is further

supported by the fact that on appeal, that Court is concerned with "abuse of

discretion", questions of law and "substantial evidence".

The Trial Court then is the buffer against a miscarriage of justice by a jury,

the Court having the ability to consider the credibility of witnesses and the weight

of the evidence.  <u>Fount-Wip, Inc. v Reddi-Wip, Inc.</u> ( 9th Cir. 1978) 568 <u>F2d</u> 1296

at 1302.  In <u>Fount-Wip</u>, an anti-trust case, the Appellate Court upheld the trial

court's ruling granting a new trial for defendants after careful review of the

evidence and determination that the Plaintiffs proposed a very narrow definition of

the 'relevant market' which was premised on unsupported assumptions.  The trial

court had the authority to review the evidence, consider and weigh the evidence

supporting the Plaintiff's proposed narrow definition of 'market' and weigh it

against the evidence proposed by defendants that supported a much wider

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT

definition of market.  568 F2d. at 1302.

In accord with the wide discretion of the trial judge to weigh the evidence and credibility of witnesses in a motion for new trial is Murphy v City of Long Beach (1990) 914 F2d. 183 at 186-187.  In this case, the Appellate Court let stand a granting of a new trial in a police shooting case where the facts denoted a quickly evolving encounter resulting in the death of the Plaintiffs' Decedent; said analysis of the Trial Court clearly involving a close review and reweighing of the evidence.

The trial judge on a motion for new trial need not view the evidence from the perspective most favorable to the prevailing party.  Landes Construction Co. v Royal Bank of Canada (9th Cir. 1987) 833 F2d. 1365, 1371.  It is clear that the trial judge can consider the jury verdict and review the evidence and make the determination of whether it was unreasonable for the jury to make factual conclusions and believe certain witnesses.  833 F2d. at 1372.

Molski v M.J.  Cable, Inc. (9th Cir. 2007) 481 F3d 724, addresses the question of the extent of a trial court's power to grant a new trial in the context of a American With Disabilities Act action.   The Appellate Court reversed the trial court's order denying a motion for new trial where reasonable reconsideration of the evidence would have led to the conclusion that (1) the defendant had failed to identify and remove architectural barriers at a restaurant; and (2) the Plaintiff was

an individual under the <u>American With Disabilities Act</u> and therefore able to recover under the Act.  The Appellate Court came to the conclusion in this instance the trial court abused its discretion by apparently not conducting an independent review of the evidence, finding that there was no evidence in support of the jury's verdict.  481 <u>F.3d</u> at 732.

The Trial Court cannot affirm the judgment of the jury until it is assured on its own independent review that the verdict was supported by the evidence.  It must consider the evidence presented, its weight, and the credibility of witnesses without entering in to the process with a presumption of the correctness of the verdict.  The Court and the measured discretion of the Judge on a Motion for New Trial is the conduit by which justice is guaranteed.

The defense in this case was predicated on the position that the two individual defendants arrived on the B-Deck at the beginning of their shift at 7:00 a.m. and that the discovery of Mr. Campos occurred a mere 7 minutes later; not sufficient time under any reasonable analysis for the Defendants to do anything that might have prevented Mr. Campos death.  That defense was destroyed by evidence that originated from the Kern County Sheriff's Department and was based on evidence gathered within hours of the event by Kern County Sheriffs' Department investigators.

The uncontradicted evidence indicated that Deputy Ayala arrived at some

time before 6:45 a.m.; Deputy Bathe arrived at 6:50 a.m.  The night shift deputies,

Collier and Saldana left the floor at 6:45 a.m.  While the Suicide Watch Inmate

Observation Log (Exhibit JX-2, Page 10) has an entry timed at 6:52 a.m. and

'signed' by Deputy Saldana, he left the deck at 6:45 a.m. and could not have

conducted the required observation.  It is uncontradicted that the 6:52 a.m. entry is

false.  The previous entry is timed at 6:40 a.m. and signed by Deputy Collier.  This

would have meant that there was only one observation rather than the two required

during the 30 minute period between 6:30 a.m. and 7:00 a.m.  The evidence shows

that the B-Deck had no supervisory staff from 6:45 a.m. to 7:00 a.m. (Deputy

Ayala going into the kitchen to eat breakfast from the time he arrived until 7:00

a.m. when he started card count and Deputy Bathe being in the bathroom from the

time he arrived at 6:50 a.m. until Ayala reported a medical alert at or about 7:07

a.m.)

Both Defendants had been trained that hanging was the primary manner in

which a suicidal patient might try to kill himself.  They were aware that one of the

goals of placement of a suicidal inmate in a suicide watch cell was to prevent the

inmate from obtaining any instrumentality that might be used for self harm, hence

the cell search prior to placement, the paper clothing and the thin foam 'mattress'.

The Defendants had knowledge, even without consideration of the fact that at least

Deputy Ayala had prior knowledge of Mr. Campos self destructive tendencies,

that because Mr. Campos was in the suicide watch cell, he was at risk for self harm.

That evidence coupled with the fact that the fan, for all institutional memory of the Sheriffs Department and the Defendants: 1) had been in close proximity and readily accessible from Cell B4-1; 2) had a crudely repaired cord which any reasonably trained officer would have realized at the time was a hazard; and 3) could be easily unplugged because it was the custom and practice to keep the pipechase door open with the fan in front of it so that the 'cooler' air could be circulated toward the desk where the Deck custodial staff would spend their time. These undisputed facts along with the fact that Cell B4-1 was configured so as to allow an occupant to avoid view from the desk of B-Deck was uncontradicted evidence that the Defendants were deliberately indifferent to the fact of Mr. Campos serious medical need.

The jury chose to ignore the fact that the Defendants were on the floor for a substantial time prior to the discovery of the suicide.  The defendants did not ensure that mandates relating to the observation of suicide watch inmates were met and knowingly let exist conditions that almost invited an inmate of B4-1 to take his own life.  The jury did not fulfil its responsibility in this case.

The verdict was against the clear weight of the evidence.  It is important to note that 'dead men tell no tales', in other words, Mr. Campos could not tell us

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT

what happened.  Rather, what evidence there was in the case necessarily came

from the Sheriffs Department and it squarely proved that Mr. Campos had a

serious medical need which both Defendants knew of and which they disregarded

by failing to take simple reasonable measures to address it.  The evidence clearly

showed that the defendants, rather than take reasonable measures, chose to not

address the serious medical need and maintain the fan in its accustomed location

for their own comfort.

**5.  The Court should, pursuant to FRCP 59(e),  reconsider its ruling granting**

**summary judgment in favor of the Defendant County of Kern on the cause of**

**action under 42 U.S.C. Section 1983 in light of Castro v County of Los**

**Angeles (9th Cir. 2016) 833 F3d. 1060.**

The Trial Court granted the County of Kern summary judgment on the

Monell claim. (Docket 65, P. 18-22).  Under Federal Rule of Civil Procedure

59(e), reconsideration is appropriate if the district court (1)is presented with newly

discovered evidence, (2) committed clear error or the initial decision was

manifestly unjust, or (3) if there is an intervening change in controlling law.

School District No. 1J, Multnomah County, Or v ACandS, Inc. (9th Cir. 1993)

5 F3d 1255, 1263.  A motion under FRCP 59(e) must do two things. First it must

demonstrate some reason why the court should reconsider it prior decision.

Secondly, it must set for forth facts or law of a strongly convincing nature to

induce the court to reverse its prior decision.  <u>All Hawaii Tours, Corp. v</u>
<u>Polynesian Cultural Center </u>(1987) 116 <u>F.R.D.</u> 645; <u>Kern-Tulare Water District v</u>
<u>City of Bakersfield </u>(E.D. Cal. 1986) 634 <u>F.Supp. </u>656, 665.

In Plaintiff's Memorandum of Points and Authorities filed opposition to the
Motion for Summary Judgment of Defendants (Docket 37, P. 11-15), Plaintiff
argued <u>Monell</u> liability on the part of the County of Kern based on the following
factors: 1) the physical configuration of the cell B4-1; 2) the long time location of
the fan which provided a suicidal inmate with access to the tools of self
destruction; 3) a failure of training of the jail staff to follow procedures regarding
having a inmate evaluated by a mental health professional when he was actively
suicidal.

Insofar as the first two bases for <u>Monell</u> liability, the configuration of the
cell and the location (and condition) of the fan, moving party believes that the
Court's decision should be reconsidered in light of the Ninth Circuit case of
<u>Castro v County of Los Angeles </u>(9th Cir. August 15, 2016) 833 <u>F3d. </u>1060, which
opinion was issued after the motion had been briefed by both sides, argued and
submitted.   This case involved an detainee versus detainee assault in a sobering
cell in the West Hollywood Sheriffs Station.  The Court found that the design and
configuration of the cell were an integral component in resulting in a
constitutional violation which was a cause of the claimant's injury.  The Court

states at 833 F3d 1060 at 1076-77:

> "Here substantial evidence supported the jury's
>
> finding that the County knew that its cell design might
>
> lead to a constitutional violation among its inhabitants..."

The Court found that the Board of Supervisors affirmative adoption of regulations aimed at mitigating the risk of serious injury to individuals housed in sobering cells and a statement to the same effect in the station's manual conclusively proved that the County knew of the risk of the very type of harm that befell the injured detainee.  A municipality's policies that explicitly acknowledge that substantial risks of serious harm exist demonstrate municipal knowledge of that risk for the purposes of a 14th Amendment failure to protect claim.  833 F.3d at 1077.

Likewise, all of the policies and procedures of the Kern County Sheriffs' Department related to inmates in suicide watch cells indicated the County's recognition that the major risk was the prevention of hangings or self asphyxiation.  That is the reason for the paper clothes, the sandals, the thin foam mattress, the required two times per 30 minutes observation and the continuous video surveillance of the other two suicide watch cells.

The County by virtue of their procedures knew that the long time location of the fan and the configuration of the cell constituted a substantial risk to persons

detained in Suicide Watch Cell B4-1.

While the Court in Castro explicitly states that it is not specifically deciding whether "architecture" of the sobering cell in and of itself is a "policy, custom or practice", (833 F.3d at 1075) the design and configuration of said cell, along with policies and procedures attendant to said cell, was a constitutional violation and caused the injury in that case.

The Court states at 833 F3d at 1075-76:

"The entity defendants' custom or policy

caused Castro's injury.  Had the entity defendants

provided consistent monitoring, or had the entity

defendants required Castro and his attacker to be

housed in different locations, which were available

Gonzalez attack on Castro could have been averted.

The stated purpose of the sobering cell is the housing

of prisoners who are a threat to their own safety.  But the

absence of frequent visual checks and the lack of

audio monitoring clearly made the risk of serious

harm to such prisoners substantial.  The jury found

that LASD's and the County's custom or practice

caused Castro's injury.  Substantial evidence supports

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT

the jury's findings."

Under Castro, the configuration of the cell is an integral part of the constitutional violation.  Using the 9th Circuit's analysis, in the present case, the configuration of the cell, the failure of continuous monitoring, the location of the fan, which is a fixture or design feature because of its longstanding presence immediately adjacent to Cell B4-1 and the County's procedures give recognition to the fact that the County was aware of the substantial risk of serious harm to occupants of Cell B4-1 and were deliberately indifferent to that risk.

**6.  Conclusion**

Justice was not served in this case.  Mr. Campos had a known serious medical need.  He was at risk of committing suicide from the time he was arrested in August, 2013.  He had a known history of being a suicide risk when he was in the custody of the County of Kern.  He was able to commit suicide by taking a crudely repaired fan cord from the floor fan which was a fixture within reach of his cell.  The fan had been allowed to remain there in a condition such that it was reasonably foreseeable to custody officers, who knew that the primary manner in which suicides would be accomplished was asphyxiation with a ligature of some type, would access the cord.  The fan was placed in this location to provide comfort to the custodial officers; it was placed to circulate the cooler air from the pipechase.  Furthermore, it was placed next to a cell where the custodial officers

knew that they could not view the entirety of the cell; a significant difference from the other suicide watch cells, B4-2 and B4-3, where constant video surveillance occurred.  The Defendants knowingly handed Mr. Campos the instrumentalities of suicide.

A new trial should be granted on all issues.  Juror #3 should have been excused for cause; it can be reasonably inferred that the information provided on October 3 was purposefully withheld from the Court and counsel, and only after he found himself to be a sworn juror, did he decide to disclose it.  This evidences a deviousness, not just a momentary lapse of memory.  From the information and the timing of disclosure, one can reasonably infer bias for which he should have been excused.   Furthermore, the jury apparently chose to ignore the evidence that was based on statements and evidence procured only hours after the death that showed that the two deputies were not performing their duty.  They chose to ignore the evidence.  Finally, Castro v County of Los Angeles holds that a cell design or configuration maintained by a public entity can be an integral component of a policy and or procedure or a custom and practice which is a constitutional violation.  In this case County of Kern, maintained a physical plant, which in conjunction with the customary actions of custodial staff encouraged and or at the very least facilitated persons with suicidal ideation, i.e. with a serious medical

need, to successfully complete their plan.

Dated: 10/25/2017            LAW OFFICES OF GREG W. GARROTTO

                             /s/ Greg W. Garrotto
                             GREG W. GARROTTO

PLAINTIFF'S MOTION FOR NEW TRIAL OR TO
ALTER OR AMEND THE JUDGMENT