UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.E.C., a minor, by and through his guardian ad litem, Deniz Gonzalez<br><br>Plaintiff,<br><br>v.<br><br>DEPUTY JASON AYALA, a public employee and DEPUTY JOSHUA BATHE, a public employee,<br><br>Defendants. | No.: 1:14-cv-01099-DAD-JLT<br><br>ORDER DENYING MOTION FOR A NEW TRIAL AND/OR TO ALTER OR AMEND JUDGMENT<br><br>(Doc. No. 126.) |

Plaintiff K.E.C., a minor appearing by and through his guardian ad litem Deniz Gonzalez ("plaintiff"), moves for a new trial on his claims brought against Kern County Sheriff Deputies Jason Ayala and Joshua Bathe ("defendants"). (Doc. No. 126.) The trial in this action commenced on October 3, 2017, and on October 6, 2017, the jury returned a unanimous verdict in favor of the defendants. (Doc. No. 118.) Judgment was entered that same day. (Doc. Nos. 122, 124.)

On October 25, 2017, plaintiff moved for a new trial or to amend or alter the judgment on various grounds. (Doc. No. 126.) Defendants filed an opposition to that motion on November 21, 2017. (Doc. No. 132.) Plaintiff submitted a reply on November 27, 2017. (Doc. No. 133.) A hearing on the motion was held on December 5, 2017. Attorney Greg W. Garrotto appeared at the hearing on behalf of plaintiff, and Deputy County Counsel Marshall S. Fontes appeared

telephonically on behalf of defendants. For the reasons set forth below, the court will deny plaintiff's motion.

**BACKGROUND**

The facts of this case are well-known to the court and the parties, and therefore will be summarized only briefly here. On August 8, 2013, Luis Campos, the decedent, was arrested and subsequently detained at the Central Receiving Facility of the Kern County Jail. (Doc. No. 87 at 1.) The decedent had a history of mental illness and suicidal behavior. (*Id.*) He was placed on suicide watch and housed on the B-deck of the jail on August 10, 2013. (*Id.*) The Kern County Jail has three suicide watch cells. (*Id.*) Of those cells, cells B4-2 and B4-3 are monitored by a surveillance camera. (*Id.*) Cell B4-1, where decedent was housed, was not monitored by a surveillance camera. (*Id.*)

On the morning of August 10, 2013, defendants, who are both deputies with the Kern County Sheriff's Department, were on duty at the jail and scheduled to work the shift beginning at 7:00 A.M. (*Id.*) Shortly after beginning his shift, defendant Ayala found the decedent with one end of an electrical cord fastened around his neck and the other end tied to the cell bars. (*Id.* at 1–2.) It was apparent, and undisputed, that the decedent had fashioned a noose using a taped together section of the crudely repaired electrical cord of a fan located in the hallway outside of his suicide watch cell. (*Id.* at 1–2.) Upon discovering the decedent, defendant Ayala immediately called a medical priority. (*Id.* at 1–2.) Together with defendant Bathe, the two deputies unfastened the electrical cord from the decedent's neck and lowered him to the floor. (*Id.* at 1–2.) Defendant Bathe began administering CPR until a jail nurse arrived. (*Id.* at 1–2.) The nurse was unable to resuscitate the decedent, who was declared dead at 7:43 A.M. (*Id.* at 1–2.)

Plaintiff originally brought claims against Kern County and the individual defendants, alleging violations of both decedent and plaintiff's constitutional rights under § 1983 as well as a wrongful death claim. (Doc. No. 19.) Prior to trial, the court granted defendants' motion for summary judgment as to plaintiff's § 1983 *Monell* claims and wrongful death claims brought against defendant Kern County. (Doc. No. 65.)

/////

2

On October 3, 2017, the case proceeded to trial against the remaining defendants. (Doc. No. 111.) At the conclusion of a half day of jury selection, a panel of eight jurors was selected and sworn. (*Id.*) The following morning, before the jury was called into the courtroom, one of the jurors delivered a note to the court to provide "a few answers for some of your questions that have skipped my mind yesterday" during voir dire. (Doc. No. 114.) After discussing the note received from the juror with all counsel, the juror ("juror #3") was summoned to the courtroom for further questioning by both the court and counsel with respect to the note in order to determine whether the juror could be fair and impartial or if he should be excused. (Doc. No. 113.) The court and counsel for both sides questioned juror #3. (*See* Doc. No. 130.) After questioning, plaintiff's counsel asked that the juror be excused for cause. (*Id.* at 20-21.) The court denied counsel's challenge for cause and the trial proceeded. (*Id.*) After hearing all the evidence and the arguments of counsel over the course of three days, the jury[1] returned a unanimous verdict in favor of the individual defendants. (Doc. Nos. 118, 119.)

## LEGAL STANDARD

Rule 59 of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion, grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Rather than specify the grounds on which a motion for a new trial may be granted, Rule 59 states that courts are bound by historically recognized grounds, which include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007); *see also Shimko v. Guenther*, 505 F.3d 987, 992 (9th Cir. 2007) ("The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.") (citations omitted). The district court may correct manifest errors of law or fact, but the burden of showing that harmful error exists falls on the party seeking the new trial. *Malhiot v. Southern Cal. Retail Clerks Union*, 735 F.2d 1133 (9th

---

[1] Juror #3 was selected as the jury foreperson.

3

Cir. 1984); *see also* 11 Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d § 2803 (1995). When a party claims that a verdict is against the clear weight of the evidence, the court should give full respect to the jury's findings and only grant a new trial if it "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987). "While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990), *opinion amended on denial of reh'g*, 920 F.2d 618 (9th Cir. 1990); *see also Silver Sage Partners, Ltd. V. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) ("[A] district court may not grant a new trial simply because it would have arrived at a different verdict."). The authority to grant a new trial under Rule 59 is left almost entirely to the discretion of the trial court. *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980).

## ANALYSIS

Here, plaintiff moves for a new trial on three grounds. First, plaintiff argues that the court committed prejudicial error when it did not excuse juror #3 for cause following his post-jury selection submission of a note addressing topics arguably addressed during voir dire. Second, plaintiff contends that the verdict of the jury was against the clear weight of the evidence introduced at trial. Finally, plaintiff argues that the court should reconsider its ruling granting summary judgment in favor of defendant Kern County on plaintiff's *Monell* claim in light of the decision in *Castro v. County of Los Angles*, 833 F.3d. 1060 (9th Cir. 2016) (en banc). Below, the court considers the arguments advanced by plaintiff.

**A.     Juror #3**

Plaintiff first argues that the court erred in failing to excuse juror #3 for cause. The precise basis of this contention is somewhat difficult to discern. Plaintiff first suggests that implied bias on the part of the juror was established by the juror's note and the subsequent questioning by the court and counsel. (Doc. No. 126 at 14.) Later, plaintiff appears to argue that juror #3 intentionally did not answer questions posed during voir dire in order to hide his actual

4

bias. (Doc. No. 133 at 2, 4-5.) In any event, whether based upon a claim of bias in fact or implied bias on the part of the juror, plaintiff has fallen far short of the showing required for the granting of a motion for a new trial.

As indicated above, juror #3 submitted a note (Doc. No. 114) to the court on the morning after the jury was sworn and before opening statements were given. The note began by stating that there were a few answers to questions posed the day before during jury selection[2] that had "skipped" the juror's mind[3] and then related: (1) he, his wife and some friends had attended a fundraising event a few weeks earlier for a Fresno County Deputy Sheriff who had been shot and seriously injured by a visitor to the Fresno County Jail;[4] (2) his family restaurant was a contributor to that event; (3) his feelings about law enforcement officers who frequented his family's restaurant, stating: "I do not think favorably of all the law enforcement agents, but I do appreciate anyone who is polite, kind, and still manages a sincere smile after dealing with disturbing situations on [sic] regular basis"; (4) he and his wife had friends and acquaintances who are judges and lawyers; and (5) "If this were a criminal case, it would have been very difficult for me to come up with a judgment, and I would have asked to be excused." (Doc. No. 114 at 1-2.) The juror's note concluded that he hoped the information presented would not, in the court's view, prevent him from serving as a juror and stated that "I always try my best to be fair with everyone, and with every situation I deal with." (*Id.* at 2.)

After conferring with counsel for both parties, the court brought juror #3 into the courtroom alone to be questioned in order to clarify the thoughts expressed in his note. First, the

---

[2] Prospective jurors had been questioned on a number of topics, including whether they had family or friends employed in the legal field or as law enforcement officers, or if they had any notably positive or negative experiences with law enforcement officers. (Doc. No. 129 at 34-35, 41, 44-45, & 49.)

[3] During voir dire, juror #3 disclosed a family tragedy that brought him in contact with the criminal justice system of another country, as a result of which he testified in court proceedings and visited an imprisoned family member. (Doc. No. 129 at 37–38, 46.) He also provided that he helped manage a family restaurant in downtown Fresno. (*Id*. at 64.)

[4] On September 3, 2016, two Fresno County correctional officers were shot by a visitor inside the downtown Fresno County Jail, initially leaving them in critical condition. (Doc. 127-1 at 2, 4.)

juror explained that his family restaurant, located in downtown Fresno, did not cater specifically to law enforcement, as it had a diverse set of clientele, most of whom came from the nearby medical center. (Doc. No. 130 at 9-10.) Regarding the fundraising event, he recounted that the restaurant was approached by a female deputy who frequented their restaurant about participating as a sponsor of the event. (*Id*. at 11-12.) Twelve businesses were listed as sponsors of the event, and their restaurant was listed as number ten in the program. (*Id.*) Further, up to three thousand people had attended the event. When asked whether there was any concern as a result that he might favor law enforcement in some way, the juror responded that was not what he was attempting to convey in his note. (*Id*. at 15.) Further, he stated that he had no friends who worked in law enforcement and no close connections to law enforcement. (*Id.*) The juror also explained that he and his wife were long-time friends of a local family whose members included criminal defense attorneys and judges. (*Id*. at 12-13, 15.) When asked to explain the statement in his note that he would have asked to be excused as a juror if this were a criminal case, juror #3 explained that he did not believe in "putting people away" for a very long time but rather believed "in giving people another chance," thereby making it difficult for him to serve as a juror in a criminal case. (*Id.* at 15.) Finally, juror #3 stated that none of the thoughts expressed in his note would in any way prevent him from serving as a fair and unbiased juror, and that if he thought any of what he expressed in his note would affect his judgment as a juror, he would have mentioned it during voir dire. (*Id.* at 16-17.)[5]

The Supreme Court long ago established that in order to obtain a new trial based upon a juror's failure to truthfully provide information during jury selection,

> a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

---

[5] Rather, the juror indicated that he remembered attending the fundraising event after court recessed the previous day and thought he should mention it even though it did not impact his confidence in his ability to be fair and impartial. (Doc. No. 130 at 17.).

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *see also Coughlin v. Tailhook As'n,* 112 F.3d 1052, 1061 (9th Cir. 1997); *Hard v. Burlington Northern R. Co.*, 870 F.2d 1454, 1459–1460 (9th Cir. 1989) (finding that even if prospective juror was being untruthful in failing to disclose that he had worked for the defendant's predecessor company many years earlier, the new trial motion was properly denied because disclosure of the information would not have required excusing the juror for cause). The Ninth Circuit has rejected the notion that a prospective juror's "simple forgetfulness fell within the scope of dishonesty as defined by *McDonough*." *Coughlin*, 112 F.3d at 1061 (quoting *United States v. Edmond*, 43 F.3d 472, 474 (9th Cir. 1994). In this context, actual bias is "bias in fact" – an inability to act impartially which is typically found "when a prospective juror states that he cannot be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view." *Fields v. Brown,* 503 F.3d 755, 769 (9th Cir. 2007).

There is nothing in this record even vaguely suggesting that juror #3 suffered from any actual bias toward either party. Indeed, the court has absolutely no basis upon which to question the juror's explanation that he wrote his note, essentially out of an abundance of caution, because he remembered the fundraising event the evening after the jury was selected and thought he should mention it. The fact that the juror himself offered the information, albeit belatedly, strongly suggests there was no intention to mislead on his part but rather the exact opposite. Finally, the juror's answers to the questions posed to him about his note reflected a very real possibility that he might have sympathy toward one in the decedent's position. Accordingly, plaintiff has failed to establish any basis for the granting of a new trial on the grounds of actual bias on the part of juror #3.

This leaves only plaintiff's apparent contention that a new trial should be granted due to the juror's implied bias. "Even where a juror's answers are entirely honest, however, a new trial may be warranted under an 'implied bias' theory." *Coughlin*, 112 F.3d at 1062 (quoting *McDonough*, 464 U.S. at 556–57 (Blackmun, J., concurring)). As the Ninth Circuit has explained:

/////

> In *Tinsley v. Borg*, 895 F.2d 520 (9th Cir. 1990), we discussed four general fact situations where bias might be presumed or implied: (1) "where the juror is apprised of such prejudicial information about the defendant that the court deems it highly unlikely that he can exercise independent judgment even if the juror states he will," *id*. at 528; (2) "[t]he existence of certain relationships between the juror and the defendant," *id*.; (3) "where a juror or his close relatives have been personally involved in a situation involving a similar fact pattern," *id*.; and (4) "where it is revealed 'that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial ... or that the juror was a witness or somehow involved in the [underlying] transaction,' " *id*. (quoting *Phillips*, 455 U.S. at 222, 102 S. Ct. at 948 (O'Connor, J., concurring)). Although bias may be presumed or implied in other factual contexts as well, these general categories are "instructive." *Id*.

*Coughlin*, 112 F.3d at 1062; *see also United States v. Olsen,* 704 F.3d 1172, 1191 (9th Cir. 2013) ("Bias should be presumed only in 'extreme' or 'extraordinary' cases."); *Fields*, 503 F.3d at 767 ("[W]e have implied bias in those extreme situations 'where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances[.]'") (quoting *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000)).

Once again, nothing in the record in this case suggests the applicability of any of the four recognized fact situations in which implied bias might be found, nor in any way implicates "extreme or extraordinary" circumstances. Assessed holistically, juror #3's note and his explanation regarding the thoughts expressed therein in no way create an inference of implied bias on his part toward either party, and particularly not toward plaintiff here.[6]

Accordingly, plaintiff's motion for a new trial based upon the court's failure to excuse juror #3 for cause will be denied.

**B.     Evidence at Trial**

Plaintiff also moves for a new trial on the basis that the jury's verdict was contrary to the clear weight of the evidence introduced at trial. (Doc. No. 126 at 14-22.) To make this

---

[6] Plaintiff's reliance on the decision in *United States v. Torres*, 128 F.3d 38 (2d Cir. 1997) in this regard is misplaced. (Doc. No. 126 at 11.) Here, there was absolutely no connection between the juror and the subject matter of the trial, unlike in *Torres*, where a prospective juror admitted to engaging in the same activity with which the defendant was charged. *Torres*, 128 F.3d at 41.

8

determination, a district court must reweigh the evidence but can only "set aside the verdict of the jury, even though supported by substantial evidence, where, in [the judge's] conscientious opinion, the verdict is contrary to the clear weight of the evidence, or . . . to prevent . . . a miscarriage of justice." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990); *see also DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) ("A jury verdict should be set aside only when 'the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'") (quoting *Josephs v. Pac. Bell,* 443 F.3d 1050, 1062 (9th Cir. 2006)); *Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075, 1087 (9th Cir. 2009). Again, the burden of establishing such circumstances falls on the party seeking the new trial. *Malhiot*, 735 F.2d at 1133.

Plaintiff's counsel cites what he characterizes as "uncontradicted evidence" that defendants were deliberately indifferent to the decedent's serious medical need. (Doc. No. 126 at 19–20.) The court disagrees with this characterization. All of the evidence and testimony referred to by plaintiff in this regard, as well as the inferences to be drawn therefrom, were in dispute throughout the trial. Each party had the opportunity to present evidence in support of its position. After hearing the evidence, the jury reached a unanimous verdict in favor of the defendants on all of plaintiff's remaining claims. (Doc. No. 119.) The court does not find that the jury's verdict was contrary to the clear weight of the evidence. Therefore, plaintiff's motion for a new trial on this ground will also be denied.

C.  ***Monell* Liability**

Finally, plaintiff seeks a new trial on the grounds that the court erred in granting summary judgment in favor of Kern County on plaintiff's *Monell* claim in light of the Ninth Circuit's decision in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).[7] In moving for a new trial, plaintiff now argues that the decision in *Castro*, which was issued after defendants' motion for summary judgment had been submitted for decision, represents an intervening change in controlling law that requires reconsideration. (Doc. No. 126 at 22.)

---

7  Plaintiff requests that the court alter or amend the judgment in this regard pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

Specifically, plaintiff argues that in *Castro* the Ninth Circuit stated that "substantial evidence supported the jury's finding that the County knew that its cell design might lead to a constitutional violation among its inhabitants…" (Doc. No. 126 at 24) and that evidence of a public entity's knowledge of both a deficient cell and of a custom and practice of using a deficient cell as well as insufficient surveillance was sufficient to support a *Monell* claim. (Doc. No. 133 at 5-10.) Plaintiff concludes that application of these principles to this case calls for the reversal of summary judgment in favor of Kern County with respect to the *Monell* claim. Plaintiff's arguments miss the mark and are therefore unpersuasive.

Under Rule 59(e) of the Federal Rules of Civil Procedure, "reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). However, the Ninth Circuit's en banc decision in *Castro* was issued while defendants' motion for summary judgment in this case was under submission, and in its order granting summary judgment in favor of Kern County, this court considered and addressed the decision. (*See* Doc. No. 65 at 22.) In *Castro*, the Ninth Circuit declined to decide whether the architecture of a police station's sobering cell could be a policy, custom, or practice in determining *Monell* liability because that was not plaintiff's allegation, nor was it the issue submitted to the jury for decision in that case. *Castro,* 833 F.3d at 1075. Instead, the court reviewed the evidence presented and found that it was sufficient to establish that the defendant public entities had made deliberate choices in light of what they knew to be deficiencies in the cell design and that those choices among alternatives constituted a custom or policy that caused the plaintiff's injury. *Id.*

Here, although it was plaintiff's burden to do so on summary judgment, plaintiff simply failed to come forward with any such evidence supporting the *Monell* claim. Kern County moved for summary judgment on the grounds that plaintiff had presented no evidentiary basis in support of the claim, including no evidence of a pattern or practice on the part of the municipality. (Doc. No. 36-1 at 11, 13.) In support of its motion, Kern County presented evidence that it had policies and training programs in place to protect detainees at risk for suicide and that its deputies

complied with these policies in monitoring the decedent.  (Doc. No. 65 at 22.)  In opposition to summary judgment on the *Monell* claim, plaintiff failed to come forward with evidence that jail personnel ignored policies or that there was persistent and widespread violation of Kern County's policies.  (*Id.* at 21–22.)  In opposing summary judgment, plaintiff appeared to focus on a claimed lack of training but also failed to present evidence of any specific deficiencies in the training that Kern County provided regarding suicidal detainees.  (*Id.*)  Accordingly, the court found that there was a complete failure of proof on plaintiff's part so that no rational trier of fact could find that the county was deliberately indifferent or acted as the "moving force" behind a deprivation of the decedent's constitutional rights.  (*Id.* at 22) (citing *City of Canton v. Harris,* 489 U.S. 378, 389 (1989); *Castro*, 833 F.3d at 1076; *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006)).[8]

The court fully considered the *Castro* decision on summary judgment.  As explained above, that decision presents no basis upon which to reconsider the granting of summary judgment in favor of Kern County based upon the evidence presented in connection with that motion.

## CONCLUSION

For all of the reasons set forth above, plaintiff's motion for a new trial (Doc. No. 126) is denied.

IT IS SO ORDERED.

Dated: **February 15, 2018**

UNITED STATES DISTRICT JUDGE

---

[8] Indeed, the court specifically noted that "[w]hile it is possible that evidence in support of [plaintiff's] *Monell* claim might exist, particularly in light of the design of cell B4-1 and the apparent lack of loop cameras monitoring that cell as contrasted with suicide watch cells B4-2 and B4-3 (*see Garcia*, 833 F.3d at 1075-77), plaintiff has failed to come forward with such evidence on summary judgment" and therefore judgment in favor of the municipality was mandated in light of plaintiff's complete failure of proof.  (Doc. No. 65 at 22, n.8.)

11