UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

```
K.E.C., a minor, by and      )
through his Guardian ad       )
Litem, Deniz Gonzalez,        )
                              )
            Plaintiff,        )   No. 14-CV-1099-DAD
                              )
vs.                           )   MOTION FOR NEW TRIAL
                              )
DEPUTY JASON AYALA, a public  )
Employee and DEPUTY JOSHUA    )
BATHE, a public employee,     )
                              )
            Defendants.       )
_____)
```

Fresno, California                    Tuesday, December 5, 2017


REPORTER'S TRANSCRIPT OF PROCEEDINGS


KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiff:	**GREG W. GARROTTO**
	Attorney at Law
	1925 Century Park E
	Suite 2000
	Los Angeles, California 90067

For the Defendants:	Office of County Counsel
	County of Kern
	BY:  **MARSHALL FONTES**
	1115 Truxtun Avenue
	Fourth Floor
	Bakersfield, California 93301

|   |   |
|---|---|
| 1 | Tuesday, December 5, 2017                              Fresno, California |
| 2 | 9:54 a.m. |

     THE CLERK:  14-CV-01099, K.E.C., a minor by and through his guardian ad litem, Deniz Gonzales versus Jason Ayala, et al.  Motion for new trial.

     MR. GARROTTO:  Good morning, Your Honor, Greg Garrotto.  I represent the plaintiff and the moving party.

     MR. FONTES:  Good morning, Your Honor, Marshall Fontes on behalf of the defendants.

     THE COURT:  Good morning.  I've read the papers.  Mr. Garrotto, I think you definitely have the laboring oar.

     MR. GARROTTO:  Is there any particular point you would like me to address?

     THE COURT:  Not really.  I think I disagree with you about all three of them.  Not -- it was a pleasure to have you here trying the case, but I think with respect to juror number three, the juror mulled over the questions after voir dire, after jury selection, out of an abundance of caution thought that he should indicate -- that he should report that he had been involved in a -- as a response or to a fundraising event for a Fresno County Deputy who had been shot.

     Also indicated in that note, as I recall, that if it was a criminal case, that he would have difficulty serving as a juror and would have to request to be excused.  But that because it was a civil case, he didn't feel so compelled.

1  That piqued my interest. I had concerns about that response.
2  And that's why we subjected him individually to supplemental
3  questioning after jury selection after that note came in.
4      And as it turned out, what he actually was conveying
5  to us was that the reason that he would have difficulty
6  serving as a juror in a criminal case was that his father had
7  been imprisoned in Lebanon for, I believe, killing his mother
8  and that he was morally opposed to lengthy prison sentences.
9  And that was why he would have difficulty serving as a juror
10 in a criminal case. Nothing to do with favoritism towards law
11 enforcement at all. In fact, to some extent, some I think
12 would argue exactly the contrary.
13     As far as his relationships with law enforcement,
14 some good, some bad. Just thought he should disclose that
15 he -- you know, he remembered, "Oh, you know, even though I
16 don't identify with law enforcement, I did serve as a
17 co-sponsor for this fundraising event for someone who had been
18 killed." Had good reactions and bad ones with law
19 enforcement. They came into his restaurant sometimes. He
20 likes some of them, some of them weren't so nice.
21     There was absolutely nothing about that exchange that
22 would have, in my mind, required me to excuse that juror. In
23 fact, I expressed some surprise that, after hearing his
24 answers, that you thought that he should be excused. Because,
25 frankly, I thought he, based upon his responses, potentially

1   could be a juror that a plaintiff in this case would have
2   wanted.  You viewed it differently.  But there was no basis to
3   excuse him.
4           As far as the clear weight of authority.  Almost
5   everything that you cite as being undisputed, I think was, in
6   fact, disputed at trial.  There was one fact that wasn't
7   disputed.  The plaintiff -- or the decedent in this case
8   committed suicide with a part of a cord from a fan that was
9   located outside the cell in which he was housed in the jail.
10  Somehow.  No one knew how.  He got ahold of the cord and
11  committed suicide.  That's what was undisputed.
12          Based upon those facts, plaintiff's case survived
13  summary judgment.  Barely, I might add.  Because there was no
14  other evidence essentially.  The jury had evidence in front of
15  it from which it could reasonably conclude that the two named
16  officers, Deputy Ayala and Deputy Bathe, were neither
17  deliberately indifferent to the decedent's serious medical
18  needs and were not negligent.  There was considerable dispute
19  at trial over exactly when they had arrived on duty.  I think
20  even under your version of the events, no more than 20, 25
21  minutes absolute maximum had they arrived on duty before the
22  decedent was found hanged.  And there were certainly facts
23  from which a jury could have concluded that the amount of time
24  that passed was significantly less than that.  But all those
25  facts, all the inferences to be drawn, every single one of

1  them I think was disputed.
2              And finally, with respect to reconsidering the motion
3  for summary judgment in light of the Ninth Circuit's decision
4  in Castro on the *Monell* liability claim, what I -- I was fully
5  aware of Castro.  I was the one, I think, that brought it to
6  the parties' attention.  So I think if I recall correctly, or
7  accurately, the motion for summary judgment was either briefed
8  before or right about the time that *Castro* came out.
9              In any event, I -- in the summary judgment order
10 itself, I focused on the *Castro* decision.  So I was very well
11 aware of it.  I addressed it.  The problem with the *Monell*
12 liability claim of plaintiff, in my view, and what I ruled at
13 the time in the summary judgment order was plaintiff came
14 forward with no evidence on summary judgment.  And at that
15 point, it was plaintiff's burden to come forward with evidence
16 in support of its -- of the *Monell* claim and there was simply
17 no evidence presented in support of that claim at that point.
18 And that's what I ruled.
19             I still believe that to be the case.  I was a bit
20 surprised there wasn't more evidence introduced at the summary
21 judgment stage with respect to cell design and
22 constitutionality of the standards, et cetera.  But it wasn't.
23 Just no evidence.  I had no choice but to grant summary
24 judgment.  That was my view.
25             So anyway, that's why I think I disagree with you on

1   all three counts.
2           MR. GARROTTO:  Well, that's what trials are all
3   about.  And that's your function to rule.  And I couldn't
4   disagree with the Court more on -- I mean,
5   the -- whether -- on the second ground, whether or not you
6   should overturn it because basically the evidence didn't
7   support the verdict.  Now, that's the closest call I think
8   there is, because -- but the point of the matter is that my
9   version or plaintiff's version was that adduced from the Kern
10  County Sheriff's Department documents that were
11  prepared -- were prepared and based upon investigation that
12  was done within hours of the event occurring.  And I think a
13  reasonable trier of fact could conclude is the most accurate
14  version of what occurred.  Okay?  So -- but that's -- I
15  understand what the burden is on that.  And that's probably
16  the hardest argument for me to make in this motion.
17          I think juror number three, I think that's clear.  I
18  mean, it --
19          THE COURT:  I don't know why you say that.  I have no
20  idea why you say that.
21          MR. GARROTTO:  Okay.  Because had that juror come out
22  on October 3rd stating everything he did in his note and then
23  in your examination of him on the morning of October 4th, I
24  would have used my peremptories differently.  And I think the
25  fact -- and he had -- I mean, not only --

1               THE COURT:  He had absolutely --
2               MR. GARROTTO:  When I did --
3               THE COURT:  He didn't just deny -- didn't just say he
4     could be fair, he didn't -- he revealed nothing that indicated
5     any reason to believe that he was biased in favor of law
6     enforcement.  Nothing.
7               MR. GARROTTO:  Well, I totally disagree with Your
8     Honor on that point.  Because, number one, having somebody
9     sponsor an event for a seriously injured correctional officer
10    I think indicates some affinity towards law enforcement.
11              Secondly, I think that when he says in his statement,
12    "Well, I can always appreciate somebody comes in" -- you know,
13    I'm paraphrasing -- "with a smile or in a good mood when
14    they've just handled something that's very distasteful."  I
15    mean, I -- that's not a quote, it's sort of a paraphrase.
16              THE COURT:  I agree.
17              MR. GARROTTO:  And what struck me after I read the
18    transcript of the voir dire, which the defense got and I
19    alluded to in my reply, is the fact that juror number three,
20    my goodness, he had every opportunity to bring this out on
21    October 3rd.  And I mean, he saw folks, you know, basically,
22    you know, unprompted coming forth with information to make
23    sure that they were disclosing everything.  I mean, I think we
24    had, you know, a prospective jury here that wanted to do their
25    duty as jurors and wanted to make sure that we knew everything

1  so that we could determine -- the attorneys could determine
2  whether they were suitable jurors for this particular case.
3        I mean, I -- you know what, I understand what the
4  burden of proof is going to be on appeal on this. It's abuse
5  of discretion on this issue. Okay? But the point of the
6  matter is that it would -- with him being foreperson, and I
7  know you're probably going to say, you're just speculating,
8  Mr. Garrotto. The conversation in the jury room would have
9  been much different. It just would have been much different,
10 Your Honor. Based upon -- based upon the constituency of what
11 we had of the eight. I bet you it would have been. And
12 you're saying, okay, that's my opinion. After -- you know,
13 after years of trying cases. Okay. And you're saying, well,
14 that's your opinion, Mr. Garrotto.
15       And then as far as the *Castro* case and the summary
16 judgment. I believe that there was sufficient evidence in
17 terms of the way B4-1 was set up in relationship to B4-2 and
18 B4-3. The fan and the location of the fan being there for all
19 memory and the fact that the jurors -- I mean, the deputies
20 were basically -- the danger that they were trained about in
21 terms of preventing suicide was that people would hang
22 themselves. And they had somebody -- and they had a fan there
23 with a repaired cord in close proximity. And I think that
24 that combination indicates and supports a 1983 claim against
25 the entity. And that's -- I mean, we will -- it was a

```
1   pleasure trying the case in front of you because I think
2   you're a very good jurist.  And I --
3              THE COURT:  But I got this one wrong.
4              MR. GARROTTO:  Well, you know, you're human.
5              THE COURT:  I'm just kidding.  I'm just kidding.
6              MR. GARROTTO:  And I don't say that lightly because I
7   try a lot of cases and I've come out of cases thinking, "My
8   God, how did that guy ever get to the bench?"  But you were an
9   excellent jurist to try this case before.  And trials end up
10  in disagreements even after they're adjudicated.  And that's
11  what we have here.  I mean, I just -- when I look at it, at
12  the end of the day, I don't think justice was served for my
13  clients in this case.
14             THE COURT:  All right.
15             MR. GARROTTO:  So --
16             THE COURT:  Mr. Fontes, you've heard Mr. Garrotto and
17  I have a discussion about the motion for a new trial.  Is
18  there anything that you want to add?
19             MR. FONTES:  No, Your Honor.  I don't think there's
20  anything I can add that wasn't already in the briefings.
21             THE COURT:  All right.  The motion will be taken
22  under submission.  A written order will issue.
23             MR. GARROTTO:  Thank you very much, Your Honor.
24             THE COURT:  Thank you.
25             MR. FONTES:  Thank you, Your Honor.
```

1       (The proceedings were concluded at 10:09 a.m.)

2

3       I, KAREN HOOVEN, Official Reporter, do hereby certify

4  that the foregoing transcript as true and correct.

5

6  DATED:   17th of April, 2018        /s/   Karen Hooven
                                       KAREN HOOVEN, RMR-CRR
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25